IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE STEPHEN A. VADEN, JUDGE

| | | |
|---|---|---|
| BONNEY FORGE CORPORATION, and<br>UNITED STEEL, PAPER AND FORESTRY,<br>RUBBER, MANUFACTURING, ENERGY,<br>ALLIED INDUSTRIAL AND SERVICE<br>WORKERS INTERNATIONAL UNION, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | **PUBLIC<br>VERSION** |
| v. | ) ) | Court No. 20-03837 |
| UNITED STATES, | ) ) | |
| Defendant, | ) ) | |
| and | ) ) ) | |
| SHAKTI FORGE INDUSTRIES PVT. LTD, | ) ) | |
| Defendant-Intervenor. | ) ) | |

## DEFENDANT'S RESPONSE TO PLANTIFFS' MOTION FOR JUDGMENT ON THE AGENCY RECORD

BRIAN M. BOYNTON
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

CLAUDIA BURKE
Assistant Director

OF COUNSEL:
JONZACHARY FORBES
U.S. Department of Commerce
Office of Chief Counsel for
Trade Enforcement and Compliance
1401 Constitution Avenue, N.W.
Washington, DC  20230-0001
Telephone: (240) 449-5906

KARA M. WESTERCAMP
Trial Attorney
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480, Ben Franklin Station
Washington, DC 20044

Facsimile: (202) 482-8184
Email: JonZachary.Forbes@trade.gov

Telephone: (202) 305-7571
Fax:         (202) 514-8624
Email:       Kara.M.Westercamp@usdoj.gov

July 2, 2021

*Attorneys for Defendant*

**TABLE OF CONTENTS**

**PAGES**

STATEMENT PURSUANT TO RULE 56.2 ................................................................2

    I.    The Administrative Determination Under Review.......................................2

    II.    Statement Of Issues .......................................................................................2

STATEMENT OF FACTS ....................................................................................2

SUMMARY OF THE ARGUMENT ...................................................................6

ARGUMENT .........................................................................................................6

    I.    Standard Of Review.......................................................................................6

    II.    Commerce's Determination That It Was Unable To Conduct Verification And That It Would Rely On Facts Otherwise Available Is Supported By Substantial Evidence And In Accordance With Law ...................................9

    III.    Commerce's Determination To Rely On Shakti's Revised Processing Costs Databases Is Supported By Substantial Evidence...........................15

CONCLUSION.....................................................................................................20

# TABLE OF AUTHORITIES

<u>**CASES**</u>                                                                     <u>**PAGES**</u>

*Atl. Sugar Ltd. v. United States,*
    744 F.2d. 1556 (Fed. Cir. 1984) ..........................................................................7

*Am. Alloys, Inc. v. United States,*
    30 F.3d 1469 (Fed. Cir. 1994) ............................................................................8

*Bowles v. Seminole Rock & Sand Co.,*
    325 U.S. 410 (1945) ............................................................................................8

*Burlington Truck Lines, Inc. v. United States,*
    371 U.S. 156 (1962) ............................................................................................7

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,*
    467 U.S. 837 (1984) ......................................................................................8, 11

*Clearon Corp. v. United States,*
    800 F. Supp. 2d 1355 Ct. Int'l Trade 2011) .....................................................10

*Consol. Edison Co. v. NLRB,*
    305 U.S. 197 (1938) ............................................................................................7

*Consolo v. Fed. Mar. Comm'n,*
    383 U.S. 607 (1966) ............................................................................................7

*Corus Staal BV v. United States,*
    395 F.3d 1343 (Fed. Cir. 2005) .........................................................................6

*Corus Staal B.V. v. United States,*
    502 F.3d 1370 (Fed. Cir. 2007) .......................................................................10

*Food and Drug Administration v. Brown & Williamson Tobacco Corp.,*
    529 U.S. 120 (2000) ..........................................................................................11

*Goldlink Indus. Co. v. United States,*
    431 F. Supp. 2d 1323 (Ct. Int'l Trade 2006) ......................................................7

*Hynix Semiconductor, Inc. v. United States,*
    425 F. Supp. 2d 1287 (Ct. Int'l Trade 2006) ......................................................7

*Industrial Quimica Del Nalon, S.A. v. United States,*
    729 F. Supp. 103, 109 (Ct. Int'l Trade 1989) ...................................................11

*Kerr–McGee Chem. Corp. v. United States*,
  739 F. Supp. 613 (Fed. Cir. 1990)........................................................................8

*Micron Tech., Inc. v. United States*,
  117 F.3d 1386 (Fed. Cir. 1997) ....................................................................8, 13

*New American Keg, d/b/a/ American Keg Company v. United States*,
  No. 20-00008, 2021 WL 1206153, at *16 (Ct. Int'l Trade Mar. 23, 2021) .........12

*Nippon Steel Corp. v. United States*,
  458 F.3d. 1345 (Fed. Cir. 2006) ..........................................................................7

*Pesquera Mares Australes Ltda. v. United States*,
  266 F.3d 1372 (Fed. Cir. 2001) ..........................................................................8

*Smith Corona Corp. v. United States*,
  771 F. Supp. 389 (Ct. Int'l Trade 1991) ............................................................11

*Suramerica de Aleaciones Laminadas, C.A. v. United States*,
  966 F.2d 660 (Fed. Cir. 1992) ............................................................................8

*Timex V.I., Inc. v. United States*,
  157 F.3d 874 (Fed. Cir. 1998) ............................................................................8

*Timken Co. v. United States*,
  201 F. Supp. 2d 1316 (Ct. Int'l Trade 2002) .....................................................10

*Timken v. United States*,
  354 F.3d 1334 (Fed. Cir. 2004) ..........................................................................8

*Timken v. United States*,
  699 F. Supp. 2d 300 (Ct. Int'l Trade 1988) .........................................................7

*United States v. Eurodif S.A.*,
  555 U.S. 305 (2009) ............................................................................................7

*Universal Camera Corp. v. Nat'l Labor Relations Bd.*,
  340 U.S. 474 (1951) ............................................................................................7

*U.S. Steel Corp. v. United States*,
  953 F. Supp. 2d 1332 (Ct. Int'l Trade 2013) .....................................................13

*Zhejiang Sanhua Co. Ltd. v. United States*,
  61 F. Supp. 3d 1350 (Ct. Int'l Trade 2015) .......................................................13

## STATUTES

19 U.S.C. § 1561a(b)(1)(B)(i) ....................................................................6

19 U.S.C. § 1677b(f)(1)(A) .......................................................................15

19 U.S.C. § 1677e(a)(2)(D) .....................................2, 4, 9, 10, 11, 13, 14, 15

19 U.S.C. § 1677m(i)(1) ...........................................................2, 4, 9, 10, 11

## REGULATIONS

19 C.F.R. § 351.309(c)(2) ..........................................................................9

## ADMINISTRATIVE DETERMINATIONS

*Forged Steel Fittings From India,*
        85 Fed. Reg. 66,306 (Dep't of Commerce Oct. 19, 2020) ......................................2

*Forged Steel Fittings From India,*
        85 Fed. Reg. 66,307 (Dep't of Commerce Oct. 19, 2020) ......................................6

*Forged Steel Fittings From India and the Republic of Korea,*
        84 Fed. Reg. 64,265 (Dep't of Commerce Nov. 21, 2019) ....................................2

## MISCELLANEOUS AUTHORITIES

Cancellation of Verification and Briefing Schedule (Dep't of Commerce Aug. 4, 2020) ..4

Statement of Administrative Action, H.R. Rep. No. 103–316, vol. 1 at 869 (1994).........12

Selection of Respondents for Individual Examination
(Dep't of Commerce Jan. 2, 2020).........................................................................3

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE:  THE HONORABLE STEPHEN A. VADEN, JUDGE**
_____
                                                         )
**BONNEY FORGE CORPORATION, and**                        )
**UNITED STEEL, PAPER AND FORESTRY,**                    )
**RUBBER, MANUFACTURING, ENERGY,**                       )
**ALLIED INDUSTRIAL AND SERVICE**                        )
**WORKERS INTERNATIONAL UNION,**                         )
                                                         )        **PUBLIC**
                    **Plaintiffs,**                      )        **VERSION**
                                                         )
            **v.**                                       )        **Court No. 20-03837**
                                                         )
**UNITED STATES,**                                       )
                                                         )
                    **Defendant,**                       )
                                                         )
            **and**                                      )
                                                         )
**SHAKTI FORGE INDUSTRIES PVT. LTD,**                    )
                                                         )
                **Defendant-Intervenor.**                )
_____          )

**DEFENDANT'S RESPONSE TO PLAINTIFFS'**
**MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Defendant, the United States, respectfully submits this response to the motion for

judgment on the agency record filed by the plaintiffs, Bonney Forge Corporation (Bonney Forge)

and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and

Service Workers International Union (USW), ECF No. 23, challenging certain aspects of the

United States Department of Commerce's final determination in the less-than-fair value

investigation of forged steel fittings from India.  As we demonstrate below, Commerce's final

determination is supported by substantial evidence and is otherwise in accordance with law.

## STATEMENT PURSUANT TO RULE 56.2

**I.**    **Administrative Determination Under Review**

The administrative determination under review is *Forged Steel Fittings From India*, 85 Fed. Reg. 66,306 (Dep't of Commerce Oct. 19, 2020) (final LTFV determ.) (APPX14186-14189), and accompanying Issues and Decisions Memorandum (Dep't of Commerce Oct. 13, 2020) (IDM) (APPX14126-14148).  The period of investigation is October 1, 2018, to September 30, 2019.

**II.**    **Statement Of Issues**

1.    Whether Commerce's decision to forgo verification during a Global Level 4 Travel Advisory and instead rely on facts available pursuant to 19 U.S.C. § 1677e(a)(2)(D), is supported by substantial evidence and in accordance with law.

2.    Whether plaintiffs failed to exhaust their argument that Commerce was required to conduct verification pursuant to 19 U.S.C. § 1677m(i)(1).

3.    Whether Commerce's reliance on Shakti's reported processing costs is supported by substantial evidence and in accordance with law.

## STATEMENT OF FACTS

On October 23, 2019, Bonney Forge and the USW, plaintiffs here, are domestic producers of forged steel fittings, filed a petition alleging that forged steel fittings from India had been sold or offered for sale in the United States at less than fair value.  *See* IDM at 1 (APPX14126).  On November 12, 2020, Commerce initiated the less than fair value investigation on forged steel fittings from India.  *See Forged Steel Fittings From India and the Republic of Korea*, 84 Fed. Reg. 64,265 (Dep't of Commerce Nov. 21, 2019) (noting applicability starting November 12, 2019).

Shakti Forge Industries PVT Ltd (Shakti) was the only company Commerce selected as a mandatory respondent to investigate that did not withdraw from the proceeding.  *See* Selection of Respondents for Individual Examination (Dep't of Commerce Jan. 2, 2020) (APPX2900-2905). During the investigation, Commerce sent an original and six supplemental questionnaires to Shakti.  Four of the six, including the original, were pre-preliminary determination questionnaires dated:  January 2, 2020 (APPX2906), March 2, 2020 (APPX6022), March 27, 2020 (APPX6051), and April 10, 2020 (APPX8108).  Shakti's responses to those questionnaires, including its revisions to its cost database, as discussed in more detail below, are relevant to the issue of the allocation of processing costs.  The two questionnaires Commerce issued after the preliminary determination requested information that Commerce would normally examine at verification.  *See* Shakti 5th Supplemental Questionnaire (Dep't of Commerce June 15, 2020) (APPX89114-89118); Shakti 6th Supplemental Questionnaire (Dep't of Commerce July 2, 2020) (APPX11816-11819).  Specifically, the final two questionnaires included a request for 10 complete sales traces (*i.e.*, all documentation generated between the receipt of an order and the shipment of the product), corroborating information from Shakti's earlier responses, numerous requests for clarification and supporting documentation suggested by the petitioners in post-preliminary determination comments, and questions concerning Shakti's cost allocation methodology.  *See* IDM at 2 (APPX14127).  Commerce also requested complete source documentation for each product Shakti sold in the U.S. and home markets, to corroborate the accuracy of its reported theoretical weights.  *Id.*

In its timely responses to the post-preliminary determination questionnaires, Shakti provided 1,998 pages of information and documentation, most of which consisted of the type of corroborating documentation from Shakti's normal books and records that Commerce typically

examines at verification (*e.g.*, ledgers, invoices, mechanical drawings and specifications, *etc*.).
*See id.*

On August 4, 2020, after receiving Shakti's responses to the two post-preliminary
determination questionnaires, Commerce notified the parties that, as a result of the ongoing
Global Level 4 Travel Advisory preventing Commerce personnel from traveling, it would be
unable to conduct verification pursuant to 19 U.S.C. § 1677m(i)(1). *See* Cancellation of
Verification and Briefing Schedule (Dep't of Commerce Aug. 4, 2020) (APPX13906-13909)
(Cancellation of Verification Memo). Commerce explained that, pursuant to 19 U.S.C.
§ 1677e(a)(2)(D), because information was provided that could not be verified as provided under
section 1677m(i), it would use "facts otherwise available" in reaching its determination, relying
on record information. *Id.* (APPX13906-13907). In the final determination, Commerce
confirmed that it did not conduct verification as a result of the travel restrictions. *See* IDM at 2
(APPX14127).

In plaintiffs' administrative case brief, they urged the agency to conduct a remote
verification and challenged Shakti's allocation of processing costs. Petitioners' Administrative
Case Br. (Aug. 11, 2020) (APPX91570-91589). They acknowledged that Commerce had
"collected extensive information from {Shakti}" and also had "explained why it cannot at this
time engage in a normal verification of {its} data." *Id.* at 19 (APPX91588).

In the final determination, with respect to petitioners' allegations that Shakti's processing
time was not accurately reported, Commerce explained that "Shakti did not use the standard time
to determine the actual cost, but rather used the actual labor and power cost and allocated the
cost to each product produced using the product-specific relative standard cycle times. IDM at
19 (APPX14144). Commerce also disagreed that Shakti's "processing costs were inaccurately

reported when taken against narrative descriptions made in the responses." *Id.* Commerce explained that Shakti had "revised or corrected" the referenced "statements in subsequent filings which petitioners did not take into account." *Id.*

Further, Commerce explained that it "agreed with Shakti that some of the unfinished products that were sold to traders in the home market were found to have no processing costs." *Id.* For example, Shakti "explained that the cases where it was mentioned that several steps are not undertaken for sales to home market distributors" pertain "only to unfinished forged fittings," which require fewer steps. *Id.* Finished fittings that require additional steps have control numbers (CONNUMs) "that start with '1,'" "hence processing costs were assigned to those CONNUMs sold in the home market." *Id.* Commerce explained that the products petitioners had included in their "exception report" were products that had been "sold to traders in the home market that were found to have processing costs" because they were finished fittings that "are expected to have finishing costs." *Id.*

And regarding "products sold to end users in the home market and for export found to be without processing costs," Commerce explained that it confirmed "the processing costs are allocated under either one of the three processing steps/costs the product went through for finishing." *Id.* Commerce accepted Shakti's explanation that "{a}n item can undergo any of the three processes or in combination of {the} three processes, depending upon the market (domestic or export) where the product is sold and depending upon the availability of machines where the product is produced as per the actual experience of Shakti." *Id.*

In the final determination, Commerce explained that it used the same methodology used in the preliminary determination, except for three differences:  (1) Commerce "relied on Shakti's revised sales and cost databases"; (2) Commerce "removed the SAS programming that deleted

certain observations for products with a description containing the term 'forge' that were coded as 'finished'"; and (3) Commerce "adjusted Shakti's reported scrap to align to the annual rate of scrap to total consumption for the first half of the {period of investigation}." IDM at 8 (APPX14133). After these various adjustments, Commerce determined that Shakti's level of dumping was *de minimis* and, therefore, determined that the estimated weighted-average dumping margin for Shakti was zero. *See Forged Steel Fittings From India*, 85 Fed. Reg. at 66,307 (APPX14187).

### SUMMARY OF ARGUMENT

Substantial evidence supports Commerce's application of facts otherwise available because it was unable to conduct verification due to an unprecedented global pandemic. To compensate for the lack of verification, Commerce issued extensive supplemental questionnaires and asked for, among other things, ten complete sales traces (*i.e.*, all documentation generated between the receipt of an order and the shipment of the product). Also, although plaintiffs argue that Commerce was statutorily required to conduct verification, plaintiffs failed to exhaust their administrative remedies because they did not raise this argument before Commerce. In addition, Commerce's reliance on Shakti's reported processing costs, and Shakti's resulting explanation and correction for apparent discrepancies, is reasonable and supported by substantial evidence.

### ARGUMENT

I.      **Standard Of Review**

The Court must uphold any determination, finding, or conclusion by Commerce unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i); *Corus Staal BV v. United States*, 395 F.3d 1343, 1346 (Fed. Cir. 2005); *see also United States v. Eurodif S.A.*, 555 U.S. 305, 316 n.6 (2009). "Substantial

evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474, 477 (1951) (citation omitted).  Even if two inconsistent conclusions may be drawn from record evidence, it does not mean that Commerce's findings are not supported by substantial evidence. *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966).  When reviewing two plausible interpretations of record evidence, "the Court must defer to the interpretation made by Commerce as the agency expert." *Hynix Semiconductor, Inc. v. United States*, 425 F. Supp. 2d 1287, 1303 (Ct. Int'l Trade 2006) (citing *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 167 (1962)).

Moreover, "the court may not substitute its judgment for that of the {agency} when the choice is between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo*." *Goldlink Indus. Co. v. United States*, 431 F. Supp. 2d 1323, 1326 (Ct. Int'l Trade 2006) (citation and quotation marks omitted); *see also Timken Co. v. United States*, 699 F. Supp. 300, 306 (Ct. Int'l Trade 1988) (stating that it is "not within the Court's domain either to weigh the adequate quality or quantity of the evidence for sufficiency or to reject a finding on grounds of a differing interpretation of the record"). Accordingly, a party challenging Commerce's determination under the substantial evidence standard "has chosen a course with a high barrier to reversal." *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1352 (Fed. Cir. 2006), and the Court will sustain Commerce's factual determinations as long as they are reasonable and supported by the record as a whole, even if some evidence detracts from them. *See Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984).

In its determination of the lawfulness of an agency's construction of a statute, the Court is guided by *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837

(1984).  *Chevron* dictates that the Court "must first carefully investigate the matter to determine whether Congress's purpose and intent on the question at issue is judicially ascertainable." *Timex V.I., Inc. v. United States*, 157 F.3d 874, 881 (Fed. Cir. 1998) (*citing Chevron*, 467 U.S. at 842-42 & n.9).  If the statute is silent or ambiguous with respect to the specific issue, the Court determines whether Commerce's interpretation is based upon a reasonable construction of the statute.  *Chevron*, 467 U.S. at 843.  "{S}tatutory interpretations articulated by Commerce during its antidumping proceedings are entitled to judicial deference under *Chevron*."  *Pesquera Mares Australes Ltda. v. United States*, 266 F.3d 1372, 1382 (Fed. Cir. 2001); *see also Timken v. United States*, 354 F.3d 1334, 1342 (Fed. Cir. 2004).  Further, an agency's interpretation of an ambiguous term in its regulation "becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation."  *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945).  It is not the Court's duty to weigh the wisdom of Commerce's legitimate policy choices. *Suramerica de Aleaciones Laminadas, C.A. v. United States*, 966 F.2d 660, 665 (Fed. Cir. 1992).

Finally, verification procedures employed by Commerce in an investigation are reviewed under an abuse of discretion standard.  *See Micron Tech., Inc. v. United States*, 117 F.3d 1386, 1396 (Fed. Cir. 1997) (citing *Am. Alloys, Inc. v. United States*, 30 F.3d 1469, 1475 (Fed. Cir. 1994) (noting that "the statute gives Commerce wide latitude in its verification procedures"); *Kerr–McGee Chem. Corp. v. United States*, 739 F. Supp. 613, 628 (Fed. Cir. 1990) ("Congress intended that ITA have latitude in its verification procedures and that it not be required to comply with all requests for specific types of investigation.")).

**II.     Commerce's Determination That It Was Unable To Conduct Verification And That It Would Rely On Facts Otherwise Available Is Supported By Substantial Evidence And In Accordance With Law**

As a result of the pandemic and Global Level 4 Travel Advisory, Commerce reasonably determined that it was unable to conduct verification under 19 U.S.C. § 1677m(i)(1), and instead, would rely on facts otherwise available pursuant to 19 U.S.C. § 1677e(a)(2)(D) because Shakti had submitted information that could not be verified.  *See* IDM at 2 (APPX14127); Cancellation of Verification Memo (APPX13906-13911).  Plaintiffs argue that Commerce's failure to conduct verification pursuant to 19 U.S.C. § 1677m(i)(1) was contrary to law and that "{t}here is no ambiguity in this statutory command."  Plaintiffs' Br. at 8-13.  Plaintiffs also argue that "Commerce's attempt to retroactively characterize certain supplemental questions" as "verification" was an insufficient substitute for verification.  *Id.* at 12.  Plaintiffs' arguments are without merit.

As an initial matter, plaintiffs failed to raise this argument before Commerce, *see* Petitioners' Case Br. at 19-20 (APPX91588-91589), and the Court should decline to address it. Indeed, although plaintiffs "urged Commerce to undertake a virtual verification of {Shakti}" in their administrative case brief, Plaintiffs' Br. at 12, plaintiffs did not raise *any* challenge to Commerce's decision to forgo verification under 19 U.S.C. § 1677m(i)(1) in the underlying administrative proceeding.  Rather, plaintiffs conceded that "Commerce has explained why it cannot at this time engage in a normal verification of {Shakti's} data."  Petitioners' Case Br. at 19 (APPX91588).

Case briefs must "present all arguments that continue in the submitter's view to be relevant to {Commerce's}. . . final results, including any arguments presented before the date of publication of the . . . preliminary results."  19 C.F.R. § 351.309(c)(2).  Here, plaintiffs were

notified that Commerce would not conduct verification and had an opportunity to raise

arguments specifically addressing 19 U.S.C. § 1677m(i)(1), or Commerce's use of facts

otherwise available pursuant to 19 U.S.C. § 1677e(a)(2)(D) where the record information could

not be verified.  *See* Cancellation of Verification Memo (APPX13906-13909).  In other words,

plaintiffs had an opportunity to challenge Commerce's decision not to conduct verification

because of the Global Level 4 Travel Advisory as contrary to law in their administrative case

briefs, yet they failed to do so.  Merely arguing that Commerce should do a "virtual verification"

did not put Commerce on sufficient notice of this particular argument.  *See Timken Co. v. United

States*, 201 F. Supp. 2d 1316, 1340–41 (Ct. Int'l Trade 2002) (explaining exhaustion requirement

not met "by merely mentioning a broad issue without raising a particular argument{; however,}

plaintiff's brief statement of the argument is sufficient if it alerts the agency to the argument with

reasonable clarity and avails the agency with an opportunity to address it.").  The Court should

take "a 'strict view' of the requirement that parties exhaust their administrative remedies before

{Commerce} in trade cases," *Corus Staal B.V. v. United States*, 502 F.3d 1370, 1379 (Fed. Cir.

2007); *accord Clearon Corp. v. United States*, 800 F. Supp. 2d 1355, 1362 (Ct. Int'l Trade

2011), and decline to consider this argument.

        In any event, the Court should reject plaintiffs' argument that section 1677m(i)(1) always

*requires* verification because Commerce reasonably determined that the global pandemic and

Travel Advisory precluded verification, and instead, used its discretion to rely on facts otherwise

available.  *See* IDM at 2-3 (APPX14127-14128).  Pursuant to 19 U.S.C. § 1677m(i), Commerce

"shall verify all information relied upon in making – (1) a final determination in an

investigation."  But there is an exception for when information cannot be verified provided under

19 U.S.C. § 1677e(a)(2)(D), which states that if an interested party "provides such information

but the information cannot be verified as provided in section 1677m(i) of this title," then

Commerce shall "use the facts otherwise available in reaching the applicable determination

under this title."

Significantly, section 1677e(a)(2)(D) does not exclude investigations in terms of its

applicability, to the contrary, it specifically references verification under 1677m(i).  *Id.*  And one

such verification under 1677m(i) is that of information relied on in final determinations in

investigations.  Pursuant to *Chevron*, "Congress has directly spoken to the precise question at

issue," and consequently, the agency and Court must comply with the clear intent of Congress.

*Chevron*, 467 U.S. at 842-43.  Congress both directed Commerce to conduct verification in

investigations and recognized that circumstances might exist where information cannot be

verified and facts available should be used.[1]  *See* 19 U.S.C. §§ 1677e(a)(2)(D), 1677m(i)(1).

It is well-recognized that if a statute can be read harmoniously, it should be.  *See Food*

*and Drug Administration v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 121 (2000) ("In

determining whether Congress has specifically addressed the question at issue, the court should

not confine itself to examining a particular statutory provision in isolation.  Rather, it must place

the provision in context, interpreting the statute to create a symmetrical and coherent regulatory

scheme.").  It is plain that sections 1677e(a)(2)(D) and 1677m(i)(1) do not conflict and so they

can, and should, be read harmoniously.

Plaintiffs rely upon *Smith Corona Corp. v. United States*, 771 F. Supp. 389, 399 (Ct. Int'l

Trade 1991), and *Industrial Quimica Del Nalon, S.A. v. United States*, 729 F. Supp. 103, 109 (Ct.

---

[1]  The statute is silent as to whether the fact that information cannot be verified must arise
as a result of action or inaction by the interested party or the agency.  19 U.S.C.
§ 1677e(a)(2)(D).  But the Court need not reach that question because plaintiffs only argue that
verification *must* be done.  *See* Plaintiffs' Br. at 8-13.

Int'l Trade 1989), for the proposition that "Commerce has a statutory duty to verify the information which it relies upon in a proceeding." Plaintiffs' Br. at 9. Notably, *both* of these cases pre-date the enactment of section 1677e, providing for determination on the basis of facts available. *See* Statement of Administrative Action, H.R. Rep. No. 103–316, vol. 1 at 869 (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040, 4198 (SAA). Indeed, even prior to the enactment of section 1677e in 1994, the Court in *Industrial* held that, "{i}f the administering authority is unable to verify the accuracy of the information submitted, it shall use the *best information available to it* as the basis for its determination{.}" 729 F. Supp. at 106 n.4 (emphasis added).

Moreover, *New American Keg, d/b/a/ American Keg Company v. United States*, No. 20-00008, 2021 WL 1206153, at *16 (Ct. Int'l Trade Mar. 23, 2021), is also distinguishable because while the Court "remanded an investigation to Commerce where verification was conducted," Plaintiffs' Br. at 10, the Court held that Commerce abused its discretion because the mandatory respondent tendered corrections to material inputs "*after* Commerce's preliminary decision" and "Commerce unreasonably failed to verify those corrections." *New American Keg*, 2021 WL 1206153, at *16 (emphasis in original). Although the respondent had characterized the corrections as minor, the corrections were "dispositive to the outcome of Commerce's final decision," and the Court held that "{a} respondent that waits until after Commerce issues a preliminary decision has the opportunity and the motive to engage in informed gamesmanship in response to that decision." *Id. New American Keg* is also distinguishable because Commerce did not apply facts otherwise available. *See generally id.* at *5.

It is true that Commerce normally conducts verification, but the unprecedented global conditions and travel restrictions caused by the pandemic was a valid basis for forgoing verification here. *See* IDM at 2-3 (APPX14127-14128). Under the unique circumstances of this

investigation, Commerce determined that the inability of its personnel to travel to conduct verification precluded achieving the goals of verification. *See id.*; Cancellation of Verification Memo (APPX13906-13909). Commerce is afforded wide latitude in determining the parameters of verification and whether they can be achieved under the current circumstances in person or otherwise, and it is not required to comply with a request for a specific type of verification process. *See Micron Tech.*, 117 F.3d at 1396; *U.S. Steel Corp. v. United States*, 953 F. Supp. 2d 1332, 1348 (Ct. Int'l Trade 2013) ("Commerce has latitude in how it conducts verification, and there is no requirement to verify all information submitted by a respondent."). Here Commerce's reasonable determination not to conduct verification was within its discretion and was supported by substantial evidence, due to drastic disruptions in global travel. *See* IDM at 2-3 (APPX14127-14128); Cancellation of Verification Memo (APPX13906-13909). Consequently, Commerce determined to apply facts available, as authorized by 19 U.S.C. § 1677e(a)(2)(D). IDM at 2-3 (APPX14127-14128)."

Contrary to plaintiffs' argument that Commerce "attempted to retroactively characterize" its two post-preliminary questionnaires to Shakti as "verification," Plaintiffs' Br. at 12, Commerce explicitly stated in the final determination that the questionnaires were issued "{i}n lieu of verification" and that it would be relying on facts available pursuant to 19 U.S.C. § 1677e(a)(2)(D). IDM at 2 (APPX14127). Plaintiffs also contend that Commerce did not obtain information necessary to confirm the accuracy of the information that it on relied for its final determination, *see* Plaintiffs' Br. at 12, but Commerce analyzed each claim by plaintiffs in the underlying proceeding and provided a reasoned explanation why record evidence supported its final determination. *See* IDM at 18-20 (APPX14143-14145).

Further, although Commerce could not conduct verification, through the use of the post-preliminary questionnaires, the goals cited by plaintiffs, such as testing for accuracy and completeness and providing basic fairness through opportunity to review and comment on responses, *see* Plaintiffs' Br. at 10-11, was provided to the best of Commerce's ability considering the circumstances.  This was achieved through the inclusion of a request for ten complete sales traces (*i.e.*, all documentation generated between the receipt of an order and the shipment of the product) corroborating information from Shakti's earlier responses, numerous requests for clarifications and supporting documentation suggested by the plaintiffs in post-preliminary comments, and questions concerning Shakti's cost allocation methodology.  *See* IDM at 2, 18-20 (APPX14127, APPX14143-14145).  Commerce also requested complete source documentation for each product Shakti sold in the U.S. and home markets, to corroborate the accuracy of its reported theoretical weights.  *Id.* at 2-3 (APPX14127-14128).  In its timely responses to the post-preliminary questionnaires, Shakti provided 1,998 pages of information and documentation, most of which consisted of the type of corroborating documentation from Shakti's normal books and records that Commerce typically examines at verification (*e.g.*, ledgers, invoices, mechanical drawings and specifications, *etc.*).  *Id.* at 2 (APPX14127).  Indeed, plaintiffs themselves acknowledged that Commerce "collected extensive information from {Shakti}."  Petitioners' Administrative Case Br. at 19 (APPX91588).

Thus, due to the Global Level 4 Travel Advisory preventing verification, the decision by Commerce to forgo verification and rely on facts available under 19 U.S.C. § 1677e(a)(2)(D), while issuing extensive supplemental questionnaires and soliciting responses to plaintiffs' comments concerning Shakti's cost allocation methodology throughout the investigation, is supported by substantial evidence and in accordance with law.

III.    **Commerce's Determination To Rely on Shakti's Revised Processing Costs Databases Is Supported By Substantial Evidence**

In this investigation, Shakti allocated its costs to specific products (which were then assigned control numbers (CONNUMs)) for reporting to Commerce because it maintained only aggregate cost information, and because it does not maintain any pre-calculated standard costs for pre-defined products that are then used as a basis for management reporting, financial reporting, or any other type of analysis.  *See* Shakti Section D Questionnaire Response at D-3-4 7 (APPX4492-4493).  Regardless of its origin, cost reporting must "reasonably reflect the costs associated with the production and sale of the merchandise."  19 U.S.C. § 1677b(f)(1)(A).  In this investigation, Commerce determined that the processing cost allocation database Shakti provided, after certain revisions, reasonably reflected these costs.  *See* IDM at 18-20 (APPX14143-14145).

In its initial cost questionnaire response, Shakti reported that it sold its fittings in the home market to two different kinds of customers: (1) traders or distributors; and (2) end users (including original equipment manufacturers).  *See* Shakti Section A Questionnaire Response at A-16 (APPX3431).  The former were identified in Shakti's home market sales database as sales at a level of trade coded as "1"; the latter as sales at a level of trade coded as "2".  *See* Shakti Section B & C Questionnaire Response at B-21; B-32 (APPX3726, APPX3737).  All export sales to the U.S. were identified as sales to distributors.  *Id.* at C-30 (APPX4009).

In that same initial questionnaire response, Shakti provided an extensive description of the two-part processing it performed to produce its fittings.  It identified the first stage as the "FORGING PROCESS."  This stage included: (1) the purchase of raw material, (2) testing, (3) cutting, (4) heating, (5) forging, (6) trimming, (7) heat treatment, (8) physical test, and (9) surface finishing.  *See* Shakti Section A Questionnaire Response at Exhibit A-10(a) (APPX3635-

3639).  Shakti identified the second stage to transform forged unfinished fittings into finished

fittings as "MACHINING PROCESS & PACKING."  This stage included: (1) drilling, (2)

boring and end connection preparation, (3) galvanizing/zinc plating, (4) marking, (5) cleaning

and rust prevention, (6) final inspection, and (7) packing.  *Id*.

 Plaintiffs argue that Shakti misallocated processing costs for different customers in

different markets, based on Shakti reporting that in the machining process there is generally a

difference in orders for domestic traders/distributors and export orders.  *See* Plaintiffs' Br. at 17-

23.  But as Commerce explained in the final determination, "Shakti correctly point{ed} out that

it revised or corrected {its initial} statements in subsequent filings, which petitioners did not take

into account."  IDM at 19 (APPX14144).

 For domestic orders, fittings are not bored after drilling and socket preparation is done

on conventional lathes.  Shakti Section A Questionnaire Response at Exhibit A-10(a)

(APPX3638).  For export orders, fittings are bored and end preparation is done with computer

numerical control (CNC) machines.[2]  *Id.*  Additionally, as part of its cost reporting for power,

Shakti reported three processes for finishing and the relevant columns of its power worksheet:

- Process 1: Roughing – (see column 't' of Exhibit S2-16(b) Part-2) (APPX09685)
- Process 2: Final Machining/Roughing-2 (see column 'w' of Exhibit S2-16(b) Part-2) (APPX09685)
- Process 3: Roughing + Final Machining (See column 'y' of Exhibit S2-16(b) Part-2) (APPX09685)

As Shakti explained in its rebuttal comments:

> Process-1 refers to machining time for conventional & high speed
> drilling machines on which drilling process and threading machine
> on which occasionally threading process is performed.  Process 2
> refer to machining time for conventional lathe machines on which

---

[2] Electro-mechanical devices that manipulate machine shop tools using computer
programming inputs.

finishing operations such as drilling, turning, threading, etc. is performed.  Process 3 refers to machines time of CNC machines on which all the operations (Drilling, Turning, Threading, etc.) is performed.  Thus with the actual experience Shakti has calculated the different time required for each product.  *Thus an item can undergo in either any of above three process or in combination of above three process depending upon the market (domestic or export) where the product is sold and depending upon the availability of machines where the product is produced as per the actual experience of the Shakti.*

Shakti Rebuttal Comment on Petitioner Second and Third Post Preliminary Comment at 8-9 (July 13, 2020) (APPX12136-12137) (emphasis added).

Plaintiffs claim that the two reported narratives above "indicate{} that different processing was performed on finished fittings for domestic trader's orders and finished fittings for export: the latter are not bored and the socket preparation performed on them is done on conventional lathes while the boring and end preparation for export fittings is done entirely on CNC machines."  Plaintiffs' Br. at 22.  Based on this interpretation, plaintiffs contend that it was unreasonable for Commerce to accept ██████████████████████████████ ██████] and [██████████████████████████████████].  *See id.* at 23.

However, Commerce determined that for those "products sold to end users in the home market and for export found to be without processing costs, and those products that were produced in-house, but found to be without power costs, . . .  {Commerce was} able to confirm that, as {Shakti} explained, the processing costs are allocated under either one of the three processing steps/costs the product went through for finishing."  IDM at 19 (APPX14144).  "An item can undergo any of the three processes *or in combination of {sic} above three processes*, depending upon the market (domestic or export) where the product is sold and *depending upon the availability of machines where the product is produced as per the actual experience of*

*{Shakti}*." *Id.* (emphasis added).   Shakti explained that it is possible for a product to undergo a *combination* of the three finishing processes and that the process is also dependent upon availability of the machines (lathes vs. CNC machines), and both of these factors refute the presumptive binary that the plaintiffs propose.  *See id.*  Plaintiffs also present no evidence refuting Shakti's explanation of its processing, and Commerce confirmed that the processing costs were satisfactorily allocated under the three processing costs for finishing.  *See id.*  Therefore, substantial evidence supports Commerce's determination that Shakti had adequately explained the cost allocations Shaki provided in its power worksheet.  *See id.*

Moreover, although plaintiffs focus extensively on the effect of a clarification made by Shakti regarding cost reporting of finished and unfinished fittings, with respect to the processing on lathes versus CNC machines, *see* Plaintiffs' Br. at 17-23, in its Fourth Supplemental Questionnaire, Commerce sought to clarify that apparent discrepancy.  For example, Shakti had indicated that products sold in the home market to [⬛⬛⬛⬛⬛⬛⬛⬛] yet it had [⬛⬛⬛⬛ ⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛] in the appropriate field in its home market sales databases. *See* Fourth Supplemental Questionnaire Response at 1-2 (APPX8822-8823, APPX85790-85791). In its response, Shakti explained that due to a manual error in copying and pasting in the relevant excel spreadsheet, it had erroneously reported [⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛], and provided a sufficiently revised home market database and cost database reflecting the correction.  *See id.*; *id.* at 2 ("Although {Shakti} has correctly marked such fittings as "Forged" (which meant un-finished in its backup working, however while reporting the value under filed FINISHH/U for all such unfinished fitting {Shakti} erroneously coded as "1" (i.e. finished) due to abrupt drag & copy function of excel for all line items irrespective whether its finished or unfinished fitting. This drag and copy error occurred because entire process of CONNUM buildup is manually

completed in excel spreadsheet.") (APPX8823, APPX85791).  Shakti also noted that where it

had mentioned several steps not taken in the production process for sale to home market

distributors in Exhibit A-10(a) of its previous Section A Questionnaire Response, it had meant to

say that this only applied to unfinished forged fittings.  *See id.* at 1 (APPX8822, APPX85790).

As a threshold matter, plaintiffs did not address Shakti's clarification in their

administrative brief before Commerce in the underlying proceeding.  *See generally* Petitioners'

Administrative Case Br.  As Commerce explained in the final determination, "concerning

petitioners' argument that processing costs were inaccurately reported when taken against

narrative descriptions made in the responses, {Commerce} disagree{d}."  IDM at 19

(APPX14144).  Commerce explained that "{t}he petitioners provided an analysis of the reported

costs that was based on initial statements made by the respondent," but that petitioners did not

take into account that Shakti "revised or corrected these statements in subsequent filings{.}"  *Id.*

Indeed, Shakti explained that the discrepancy in Shakti's reported costs was caused by manual

error, but corrected this error in later filings.  *Id.*

Simply put, plaintiffs conflate the finished versus unfinished processing into a discussion

of cost reporting for different markets and different customers.  *See* Plaintiffs' Br. at 17-23.  But

plaintiffs fundamentally misunderstand Commerce's findings.  Commerce considered the

entirety of the substantial body of record evidence collected through numerous supplemental

questionnaires and solicitation of comments to address plaintiffs' concerns, and thus, substantial

evidence supports Commerce's determination to accept the cost databases of Shakti, subject to

certain adjustments.  *See* IDM at 2 (explaining that Commerce made "numerous requests for

clarifications and supporting documentation suggested by the petitioners in post-preliminary

comments, and questions concerning Shakti's cost allocation methodology") (APPX14127), *id.*

at 8 (explaining adjustments Commerce made) (APPX14133), *id.* at 19 (confirming Commerce was "able to confirm that, as Shakti explained, the processing costs are allocated under either one of the three processing steps/costs the product went through for finishing") (APPX14144).

## **CONCLUSION**

For these reasons, we respectfully request that the Court deny plaintiffs' motion for judgment on the agency record and enter judgment for the United States.

Respectfully Submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/ Claudia Burke
CLAUDIA BURKE
Assistant Director

OF COUNSEL:                                              /s/ Kara M. Westercamp
JONZACHARY FORBES                                KARA M. WESTERCAMP
U.S. Department of Commerce                       Trial Attorney
Office of Chief Counsel for                            U.S. Department of Justice
Trade Enforcement and Compliance             Civil Division
1401 Constitution Avenue, NW.                    Commercial Litigation Branch
Washington, DC 20230-0001                        P.O. Box 480, Ben Franklin Station
Telephone: (240) 449-5906                           Washington, DC 20044
Facsimile: (202) 482-8184                            Telephone: (202) 305-7571
Email: JonZachary.Forbes@trade.gov          Fax:         (202) 514-8624
                                                                       Email:      Kara.M.Westercamp@usdoj.gov

July 2, 2021                                                     *Attorneys for Defendant*

# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE:  THE HONORABLE STEPHEN A. VADEN, JUDGE

_____
                                                                    )
**BONNEY FORGE CORPORATION, and**                )
**UNITED STEEL, PAPER AND FORESTRY,**             )
**RUBBER, MANUFACTURING, ENERGY,**               )
**ALLIED INDUSTRIAL AND SERVICE**                )
**WORKERS INTERNATIONAL UNION**,                  )
                                                                    )      **CONFIDENTIAL**
                           **Plaintiffs,**                            )      **VERSION**
                                                                    )
                   **v.**                                            )      **Court No. 20-03837**
                                                                    )
**UNITED STATES,**                                    )
                                                                    )
                           **Defendant,**                           )
                                                                    )
                   **and**                                           )
                                                                    )
**SHAKTI FORGE INDUSTRIES PVT. LTD,**             )
                                                                    )
                   **Defendant-Intervenor.**                      )
_____    )

## PROPOSED ORDER

Upon consideration of plaintiffs' motion for judgment upon the administrative record, defendant's and defendant-intervenor's responses thereto, replies, and all other pertinent papers, it is hereby

ORDERED that plaintiffs' motion is denied, and it is further

ORDERED that the Department of Commerce determination at issue in this action is sustained; and it is further

ORDERED that judgment shall enter in favor of the United States.


Dated: _____, 2021              _____

        New York, New York                                        JUDGE

21

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that this brief complies with the word limitation of Court of International Trade Standard Chambers Procedures § 2(B)(1) and contains approximately 5,460 words, excluding the parts of the brief exempted from the word limitation.  In preparing this certificate of compliance, I have relied upon the word count function of the word processing system used to prepare the brief.


<u>/s/ Kara M. Westercamp</u>