**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: THE HONORABLE STEPHEN A. VADEN, JUDGE**

| | |
|---|---|
| BONNEY FORGE CORPORATION, and UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant, and<br><br>SHAKTI FORGE INDUSTRIES PVT. LTD,<br><br>Defendant-Intervenor.<br>. | Ct. No. 20-03837 |

## PLAINTIFFS' RESPONSE TO DEFENDANT'S RESPONSE TO THE QUESTION OF VOLUNTARY REMAND

Plaintiffs Bonney Forge Corporation ("Bonney Forge") and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union ("USW") (collectively, the "Plaintiffs") provide their reply to the response of Defendant United States Commerce Department ("Commerce") to the question of voluntary remand, "Defendant's Response to the Question of Voluntary Remand," ECF No. 52 (Nov. 17, 2021) ("*Commerce Response*"). Bonney Forge and the USW provide this reply per the Court's Minute Order, ECF No. 50 (Nov. 5, 2021).

In its response, Commerce asserts that the facts of the present case ("*Bonney Forge*") are distinguishable from those in *Ellwood City Forge Co. v. United States,* No. 21-cv-0007 (Ct. Int'l

1

Trade) ("*Ellwood City*") such that it has chosen not to request a voluntary remand. *Commerce Response* at 1. As we review below, Commerce has not identified any substantive difference between the significant facts of the present case and *Ellwood City*. As Commerce has chosen not to request a voluntary remand, Bonney Forge and the USW reiterate their request that this Court order a remand on this issue with instructions to Commerce to make a determination that conforms to the statute, its regulations, and its practice and is supported by substantial evidence.

Plaintiffs first demonstrate that all of the reasons identified by Commerce as grounds for its request for a voluntary remand in *Ellwood City* apply equally to this case. Plaintiffs then demonstrate that the alleged "differences" identified by Commerce are non-existent or not relevant to the issue of whether a remand is called for, voluntary or otherwise.

## I. COMMERCE'S REASONS FOR REQUESTING A VOLUNTARY REMAND IN *ELLWOOD CITY* ARE EQUALLY APPLICABLE TO THE PRESENT CASE.

Without confessing error, Commerce requested a voluntary remand in *Ellwood City* "to reconsider its position on the questionnaire in lieu of on-site verification and subsequent application of facts available." "Defendant's Response to Plaintiffs' Motion for Judgment on the Agency Record and Defendant's Motion for Voluntary Remand," ECF no. 20 (Oct. 18, 2021), *Ellwood City* ("*Ellwood City Motion*"). In its Motion, Commerce identified the grounds for its request for a voluntary remand, per the requirements identified in *Baroque Timber Industries (Zhongshan) Co. v. United States*, 925 F. Supp. 2d 1332, 1339 (Ct. Int'l Trade 2013):[1]

> 1. The government had compelling reasons for its request because it wished "to further consider the procedures that were followed during the investigation in relation to the requirements of 19 U.S.C. § 1677m(i), in light of its experience

---

[1] A remand is appropriate where "(1) Commerce supports its request with a compelling justification, (2) the need for finality does not outweigh the justification, and (3) the scope of the request is appropriate."

conducting verification while operating under pandemic restrictions." *Ellwood City Motion* at 6.

2. Commerce also asserted that the need for finality did not outweigh the justification: "{a} remand to Commerce to further evaluate the procedures followed during the investigation is the relief plaintiffs requested in their pending motion and would receive were they to prevail." *Id.*

3. The scope of the request was appropriate because "Commerce's determination to issue a questionnaire in lieu of on-site verification and subsequently rely on facts otherwise available" would be relevant to the other issues raised by the plaintiffs. *Id.*

Each of these factors is present in this case. First, to the extent that Commerce needed to reconsider its approach to the procedures for verification in a proceeding that followed the present proceeding (final determination issued December 2020, *Forged Steel Fluid End Blocks from India*, 85 Fed. Reg. 80,003 (Dep't of Commerce Dec. 11, 2020) (final neg. determination)) , there is even more reason to reconsider its approach to procedures in a slightly earlier proceeding (final determination issued October 2020, *Forged Steel Fittings from India,* 85 Fed. Reg. 66,306 (Dep't Commerce Oct. 19, 2020) (final aff. deter. LTFV sales)), as there had been no substantive change in those procedures.

Second, a remand for Commerce to conform its procedures to the statutes, regulations, and practice is what Plaintiffs seek here. Third, the results of any form of verification would be relevant to the other issues raised by Plaintiffs.

## II.   COMMERCE HAS NOT DISTINGUISHED THIS PROCEEDING FROM *ELLWOOD CITY* IN ANY SUBSTANTIAL WAY.

Commerce begins its attempt to distinguish this case from *Ellwood City* by explaining that travel restrictions that precluded travel to India were in place at the time of both investigations. *Commerce Response* at 5. Commerce's first point of actual distinction is that, although it asked for additional information in both cases, it identified its request in *Ellwood City* as "in lieu of verification" but did not so identify its request in this case. Yet Commerce itself

asserted in its issues and decision memorandum during the investigation underlying this case that its questionnaires were in "lieu of verification."  As it said in its response brief in this case:

> Commerce explicitly stated in the final determination that the questionnaires were issued "{i}n lieu of verification" and that it would be relying on facts available pursuant to 19 U.S.C.§ 1677e(a)(2)(D). IDM at 2 (APPX14127).

Commerce Response Brief at 13, ECF No. 36 (referring to its Issues and Decision Memo in this investigation).

While Petitioners do not agree with the post-hoc characterization of Commerce's supplemental questionnaires in the issue and decision memorandum in this case, Commerce cannot have it both ways. If its supplemental questionnaires here were not "in lieu of verification," Commerce cannot reasonably claim it conducted any verification in this case. Alternatively, if Commerce's characterization of those questionnaires is correct, there is no substantive difference between Commerce's supplemental questionnaires in this case and its "in lieu of verification" questionnaires in *Ellwood City.*

Commerce then makes a startling admission:

> In fact, it makes sense that Commerce would have refined its approach over time, to conclude that virtual verifications might be feasible. That this administrative record does not fully explain why Commerce had not come to that refined conclusion in this proceeding merely reflects the realities of contemporaneous decision-making.

*Commerce Response* at 6.  Commerce admits that a virtual verification is possible.  However, it implies in this response that it came to this conclusion in *Ellwood City* during the investigation at Commerce.   So far as Plaintiffs can discern, there was no mention during the investigation that Commerce could perform a virtual verification.  Moreover, in its Motion for a Voluntary Remand in *Ellwood City* Commerce nowhere refers to a virtual verification. Rather, it asks for a remand so that it may have "the opportunity to reconsider its position in this investigation on the in lieu of on-site verification questionnaire and subsequent reliance on facts available in its final

determination." *Ellwood City Motion* at 1. Thus, so far as these documents indicate, Commerce appears to have decided that it could perform a virtual verification at or around the time that it filed its response on a voluntary remand in this case, November 17, 2021. Moreover, there are little temporal differences between the cases: as noted above, the final in *Ellwood City* was issued only two months after the final in the investigation underlying this case.

Commerce asserts that there are differences between the two cases other than temporal differences. It states that it did not perform an "on-site" verification in *Ellwood City* whereas in the underlying investigation here, it cancelled verification. *Commerce Response* at 6. The net effect of both of these was that verification should have occurred but did not, as argued in Plaintiffs' 56.2 brief at 8-13, ECF No. 25 (April 27, 2021) and in the *Ellwood City* Plaintiffs' 56.2 Brief at 17-23, *Ellwood City,* ECF 23 (July 20, 2021).

Commerce then asserts that in the underlying investigation here it issued a Cancellation of Verification Memo and provided notice of intent to use facts available, but issued no such notice and provided no notice that it was planning to use facts available in *Ellwood City. Commerce Response* at 6-7. Again, these alleged distinctions are without substance. Commerce did not verify in either investigation. If the agency was not going to rely on facts available in the record including its "in lieu of verification" questionnaire in *Ellwood City,* what was it going to rely on? Were it to rely on any information other than that in the record, it would have been making determinations that were not supported by substantial evidence.

Commerce's next attempt to distinguish the cases arises from the fact that it used partial adverse facts available in *Ellwood City* but not in *Bonney Forge. Commerce Response* at 7-8. It is, of course, Plaintiffs' position that Commerce should have used adverse facts available in the *Bonney Forge* investigation. Petitioners' Case Brief at 2 (Aug. 11, 2020) (APPX 13946).

Regardless, the statutory provisions do not distinguish between co-operative and non-co-operative respondents other than to permit the use of adverse facts available if a respondent refuses to allow verification. *See* 19 U.S.C. 1677m(i) generally and Statement of Administrative Action Accompanying the Uruguay Round Agreements Act, H.R. 103-316, Vol. 1 at 868 (1994). As there was no refusal by respondents to allow verification in either case, the non-refusal condition is not relevant; nor is any distinction between an investigation in which Commerce chooses to rely on partial facts available and one where it does not.

Commerce's final assertion is that, even though Plaintiffs requested that Commerce conduct a virtual verification, they did not challenge Commerce's "decision to forego or cancel verification." *Commerce Response* at 8. Commerce attempts to buttress its representation that it had no idea that it was being asked to verify by asserting that Plaintiffs provided no citations to the statute or its regulations. *Commerce Response* at 8-9. Commerce, of course, is presumed to be the master of the antidumping law.[2] Consequently, Plaintiffs requested in their case brief that Commerce verify (Petitioners' Case Brief at 19-20 (Aug. 11, 2020) (APPX13963-13964), and Petitioners reasonably relied on Commerce's understanding of its obligations.

III.   **THIS COURT SHOULD REMAND WITH (A) INSTRUCTIONS TO COMMERCE TO RECONSIDER ITS OBLIGATION TO VERIFY AND ALL THAT MAY ENSUE THEREFROM ALONG WITH (B) INSTRUCTIONS TO COMMERCE TO RECONSIDER ITS ACCEPTANCE OF SFIPL'S COST REPORTING.**

Commerce has admitted that it could undertake a virtual verification. Commerce Response at 6. Plaintiffs have provided their arguments as to why Commerce should have undertaken some form of verification, including necessary analysis and the preparation of a

---

[2] The Federal Circuit has "repeatedly held that Commerce's special expertise makes it the 'master' of the anti-dumping law." *F.LLI De Cecco Di Filippo Fara S. Martino S.p.A. v. United States*, 216 F.3d 1027, 1032, (2000), *citing Micron Tech., Inc. v. United States,* 117 F.3d 1386, 1394 (Fed.Cir.1997); *Torrington Co. v. United States,* 68 F.3d 1347, 1351 (Fed.Cir.1995).

verification report, in their 56.2 brief at 8-13, ECF No. 25 (April 27, 2021) and their reply brief at 1-12, ECF No. 42 (July 26, 2021). This Court should remand this case to Commerce for re-consideration of its approach to verification and any changes that may result therefrom.  As Plaintiffs have also requested, the Court should find that Commerce's acceptance of SFIPL's cost reporting on the grounds that it was properly explained by SFIPL was not supported by substantial evidence and so also warrants remand for reconsideration of that determination.   See Plaintiffs' 56.2 brief at 13-25, ECF No. 25 (April 27, 2021) and their reply brief at 13-23, ECF No. 42 (July 26, 2021).

Respectfully submitted,

Roger B. Schagrin
Elizabeth J. Drake
William A. Fennell
SCHAGRIN ASSOCIATES
900 Seventh Street NW
Washington, D.C. 20001
(202) 223-1700

*Counsel for Bonney Forge Corporation
and the United Steel, Paper and Forestry,
Rubber, Manufacturing, Energy, Allied
Industrial and Service Workers
International Union*

Dated:  December 1, 2021