Slip Op. No. 22-8

## UNITED STATES COURT OF INTERNATIONAL TRADE

BONNEY FORGE CORPORATION and
UNITED STEEL, PAPER AND
FORESTRY, RUBBER,
MANUFACTURING AND SERVICE
WORKERS INTERNATIONAL
UNION,

$\qquad$ *Plaintiffs*,

v.

UNITED STATES,

$\qquad$ *Defendant*,

$\qquad$ and

SHAKTI FORGE INDUSTRIES PVT.
LTD.,

$\qquad$ *Defendant-Intervenor*.

Before: Stephen Alexander Vaden,
Judge

Court No. 1:20-cv-03837

## **OPINION**

[Granting Plaintiffs' Motion for Judgment on the Agency Record and remanding to
Commerce with instructions to perform verification or respond on the record to
Plaintiffs' argument.]

Dated: February 2, 2022

William Fennell, Schagrin Associates, of Washington, D.C., for Plaintiffs. With him
on the brief was Roger B. Schagrin.

Kara M. Westercamp, Trial Attorney, Commercial Litigation Branch, Civil Division,
U.S. Department of Justice, of Washington, D.C., for Defendant United States. With
her on the brief were Brian M. Boynton, Acting Assistant Attorney General, Jeanne
E. Davidson, Director, Commercial Litigation Branch, Claudia Burke, Assistant

Director, Commercial Litigation Branch, and <u>Jon</u><u>Zachary Forbes</u>, Office of Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce.

<u>Matthew T. McGrath</u>, Barnes Richardson & Colburn LLP, of Washington, D.C., for Defendant-Intervenor.

**Vaden, Judge:** This is not a case about the Government's ability to respond with agility to the unique circumstances caused by the COVID-19 pandemic. It is instead a case about the requirement that the Government respond to all arguments made in good faith by the contending parties before it and place those responses in the record to allow for meaningful judicial review. COVID did not suspend the general principles of administrative law. *Cf. Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 68 (2020) (per curiam) ("[E]ven in a pandemic, the Constitution cannot be put away and forgotten."). Plaintiffs Bonney Forge Corporation (Bonney Forge) and United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union (USW) asked the Government to conduct a virtual verification of the information submitted by foreign respondent and Defendant-Intervenor Shakti Forge Industries PVT. Ltd. (Shakti). The Government candidly admits it provided no response in the record to Bonney Forge's written request. It also candidly admits that the Department of Commerce (Commerce) is currently still not conducting verification visits – virtual or otherwise – to India despite several senior political appointees' having recently traveled to the subcontinent. Because the Government failed to provide any evidence in the record to support its decision to deny Bonney Forge's request for virtual verification, the

Court **GRANTS** Plaintiffs' Motion for Judgment on the Agency Record and **REMANDS** this matter to Commerce with instructions.  Should the Government maintain its position that verification remains impossible, the Government can explain in the record why it is safe for senior Department of Justice and Cabinet officials to travel to India in person on discretionary trips but not safe for civil servants with statutory responsibilities to perform to do the same, even if only virtually.

## BACKGROUND

The products at issue in this case are forged steel fittings produced in India for importation into the United States.  A "fitting" is "a small often standardized part (as a coupling, valve, gauge) entering into the construction of a boiler, steam, water, or gas supply installation or other apparatus."  *Fitting*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (3d ed. 1986).  The International Trade Administration described the types of steel fittings included in the scope of the investigation when it issued its final determination:

> The merchandise covered by this investigation is carbon and alloy forged steel fittings, whether unfinished (commonly known as blanks or rough forgings) or finished. Such fittings are made in a variety of shapes including, but not limited to, elbows, tees, crosses, laterals, couplings, reducers, caps, plugs, bushings, unions (including hammer unions), and outlets.  Forged steel fittings are covered regardless of end finish, whether threaded, socket-weld or other end connections.  The scope includes integrally reinforced forged branch outlet fittings, regardless of whether they have one or more ends that is a socket

welding, threaded, butt welding end, or other end connections.

*Forged Steel Fittings from India: Final Affirmative Determination of Sales at Less Than Fair Value* (*Final Determination*), 85 Fed. Reg. 66,306, 66,308 (Oct. 19, 2020), Joint Appendix (J.A.) at 14,188, ECF No. 46.

## I.      The Antidumping Investigation

The investigation *sub judice* began on October 23, 2019, when Bonney Forge, a U.S. producer of forged steel fittings, and USW, a union whose members include workers at facilities where domestic steel fittings are produced, filed a petition alleging that steel fittings from India were being sold at less than fair market value in the United States. *See* Decision Memorandum for the Final Determination in the Less-Than-Fair-Value Investigation of Forged Steel Fittings from India (Final IDM) at 1, J.A. at 14,126, ECF No. 46. Commerce initiated an investigation on November 12, 2019, and published its Respondent Selection Memorandum identifying mandatory respondents on January 2, 2020. *Forged Steel Fittings from India and the Republic of Korea: Initiation of Less-Than-Fair-Value Investigations*, 84 Fed. Reg. 64,265 (Nov. 21, 2019); Decision Memorandum for the Preliminary Determination in the Less-Than-Fair-Value Investigation of Forged Steel Fittings from India (PDM) at 2–3, J.A. at 11,666–67 ECF No. 46. Shakti was the only mandatory respondent selected by Commerce that did not withdraw from the investigation. *See* Antidumping Duty Investigation of Forged Steel Fittings from India: Selection of Respondents for Individual Examination, J.A. at 2,900–05, ECF No. 45. Commerce

sent Shakti a standard initial questionnaire on January 2, 2020, requesting information about Shakti's sales in the United States, sales in its home market, and its costs of production. Request for Information, J.A. at 2,909, ECF No. 45. Shakti cooperated fully with Commerce throughout the proceeding, submitting responses to the initial questionnaire on February 5, February 24, and March 2, 2020. J.A. at 3,411–5,748, ECF No. 45.

Just over a week after Commerce received Shakti's final response to the initial questionnaire, the World Health Organization officially classified COVID-19 as a pandemic. *WHO Director-General's opening remarks at the media briefing on COVID-19 - 11 March 2020*, WORLD HEALTH ORGANIZATION (Mar. 11, 2020) https://www.who.int/director-general/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020. On March 15, 2020, the Department of Commerce issued an agency-wide memo prohibiting all travel not "mission-critical and pre-approved by senior bureau leadership." DEP'T OF COMMERCE, *All Hands: Coronavirus Update (3-16-2020)* https://www.commerce.gov/sites/default/files/2020-03/AllHandsCoronavirusUpdate 3-16-20.pdf. The CDC issued a Level 4 travel advisory, urging all U.S. citizens to avoid international travel on March 31, 2020. CENTER FOR DISEASE CONTROL, Global Level 4 Health Advisory: Do Not Travel (Mar. 31, 2020); J.A. at 13,909, ECF No. 46.

Amidst the unfolding pandemic and the resulting transition to "teleworking," Commerce continued its investigation of steel fittings from India, sending Shakti four

additional supplemental questionnaires on March 20, March 27, April 10, and April 16, 2020. J.A. at 6,022, 6,051, 8,108, 8,183, ECF No. 46. Shakti timely responded to those questionnaires on April 27 and May 4, 2020. J.A. at 8,817, 9,548, 9,557, ECF No. 46. Based on the initial information it had gathered from Shakti, Commerce issued a Preliminary Affirmative Determination of Sales at Less Than Fair Value (SLTFV) and Postponement of Final Determination, with those preliminary results indicating that Shakti was not selling its steel fittings in the United States at below fair market value.[1] J.A. at 11,746, ECF No. 46. Thereafter, Commerce sent Shakti two additional supplemental questionnaires on June 15 and July 2, 2020, to which Shakti fully replied on July 6 and July 23, 2020. J.A. at 11,761, 11,816, 11,871, 12,146, ECF No. 46.

Though Commerce "normally conducts verification" after having gathered relevant information from respondents, in light of the uncertain risks of and continuing restrictions on travel during the summer of 2020, Commerce instead issued a memo cancelling verification and setting forth the briefing schedule for the parties.[2] Def.'s Resp. to Pls.' Mot. for J. on the Agency R. (Def.'s Resp.) at 12–13, ECF

---

[1] Though Commerce "preliminarily determined that the estimated weighted-average dumping margin for Shakti is zero," Commerce also "preliminarily determined the estimated weighted-average dumping margins for [non-compliant selected respondents] entirely on the basis of facts otherwise available (*i.e.*, 293.40 percent)." Thus, the overall preliminary determination still found that sales were being made at less than fair value from some Indian exporters despite Commerce's not finding evidence that Shakti had engaged in dumping. *Forged Steel Fittings from India: Preliminary Affirmative Determination of Sales at Less Than Fair Value, Postponement of Final Determination, and Extension of Provisional Measures*, 85 Fed. Reg. 32,007, 32,008 (May 28, 2020), J.A. at 11,746 ECF No. 46.

[2] Verification is the process by which Commerce probes the information it collects in its investigations. It is "like an audit, the purpose of which is to test information provided by a party for accuracy and

No. 35; J.A. at 13,906 (memo cancelling verification), ECF No. 46.  Plaintiffs Bonney Forge and USW timely submitted an administrative brief opposing Commerce's decision not to verify on the basis that there were discrepancies in Shakti's reported data that made the data unreliable absent verification.  J.A. at 91,588, ECF No. 45.  Plaintiffs "urge[d] Commerce to engage in virtual verification" or else rely on other facts available with adverse inferences rather than accept Shakti's data without substantiation.  J.A. at 91,588–89, ECF No. 45.  Shakti submitted a rebuttal case brief, affirming the accuracy of the data it had provided and asserting that Commerce had all the information it needed to rely on Shakti's reporting. J.A. at 91,766, ECF No. 45.

Commerce concluded that the information it had collected from Shakti was reliable without any verification, categorized the information it had collected as "facts available," and issued its final determination in the investigation on October 13, 2020.  Final IDM, J.A. at 14,126, 14,127, ECF No. 46.  Commerce published its Final Affirmative Determination on October 19, 2020.  *Id.*; *Final Determination*, J.A. at 14,186–89, ECF No. 46.  Commerce failed to consider or even acknowledge Plaintiffs' request for a virtual verification, providing no explanation for choosing to rely solely on post-preliminary questionnaires instead of entertaining the possibility of a virtual

---

completeness." *Bomont Indus. v. United States*, 733 F.Supp. 1507, 1508 (CIT 1990).  Commerce generally undertakes "on site verifications," but it is also entitled to "latitude to derive verification procedures."  *Id.* (referencing Commerce's explanation of its on site verification); *see Micron Tech., Inc. v. United States*, 117 F.3d 1386, 1396 (Fed. Cir. 1997).

verification.  Final IDM, J.A. at 14,126–48, ECF No. 46; Oral Arg. Tr.  25:7–8, ECF

No. 53 ("There is no discussion [in the record] about why a virtual verification would

not have been feasible.").

   In the final determination, Shakti received a dumping margin of zero percent.

*Final Determination*, J.A. at 14,187, ECF No. 46.  By contrast, Commerce calculated

an All-Others dumping margin rate of 195.6% and used adverse inferences to

calculate a rate of 293.4% for the non-cooperative respondents in the investigation.

*Id*.  Plaintiffs timely filed a Summons with this Court on November 17, 2020,

initiating the current case.

## II.    The Present Dispute

   Plaintiffs  sued  the  Department  of  Commerce,  challenging  its  final

determination with regard to Shakti.  Compl., ECF No. 9.  Shakti moved to intervene

on January 14, 2021.  ECF No. 12.  Plaintiffs filed their Motion for Judgment on the

Agency Record on April 26, 2021.  Pls.' Mot., ECF No. 23.  It asks this Court to reverse

Commerce's final determination on the bases that (1) Commerce's failure to verify

Shakti's information was contrary to law, and (2) Commerce's reliance on Shakti's

reporting of processing costs was not supported by substantial evidence.  Pls.' Mot. at

8–25, ECF No. 23.

   Commerce filed its response on July 2, 2021, asserting that (1) Plaintiffs

waived their verification argument by failing to describe it with sufficient specificity

in  the  administrative  proceeding;  (2)  reliance  on  facts  otherwise  available  was  a

suitable alternative to verification given the worldwide pandemic; and (3) Shakti's revised processing costs were consistent, and Commerce's reliance on them was thus supported by substantial evidence.  Def.'s Resp. at 9–20, ECF No. 35.  Defendant-Intervenor Shakti's July 2, 2021 response argued that (1) the extensive information gathered through the questionnaire process satisfied the statutory verification requirement, and (2) an examination of the entire record shows the consistency of Shakti's reported processing costs.  Resp. Br. of Shakti Forge Industries PVT. Ltd. to Pls.' Rule 56.2 Mot. for J. on the Agency R. (Def. Intervenor's Resp.) at 1–22, ECF No. 37.  Plaintiffs filed their reply brief on July 26, 2021.  Pls.' Reply Br. in Supp. of Rule 56.2 Mot. for J. on the Agency R. (Pls.' Reply), ECF No. 41.

The Court held oral argument on November 5, 2021.  ECF No. 51.  In response to questions from the Court, counsel for Commerce acknowledged that nowhere in the record did Commerce address Plaintiffs' clear, written request for virtual verification, nor did it offer any reason why such a virtual verification could not occur.  Oral Arg. Tr. 25:7–8.  Counsel for Shakti confirmed that there was no discussion of a virtual verification on the record but expressed "doubts about how well virtual verification would work" and reiterated that, in Shakti's view, the vast amounts of data collected via questionnaires were "equivalent to verification."  *Id.* at 52:2–3, 53:13, 56:11–12.  Counsel for Plaintiffs noted, in support of their argument that Shakti would have been capable of participating in a virtual verification, that much

of Shakti's leadership appeared at a teleconference hearing during the administrative investigation.  *Id.* at 65:15–23.

Given the similarities between this dispute and that of *Ellwood City Forge*, No. 21-0007, in which Commerce recently requested a voluntary remand, the Court ordered Commerce to consult with relevant officials and file either a motion for voluntary remand or an explanation as to why Commerce would not seek a voluntary remand in this case.  Oral Arg. Tr. 70:22–25, 71:1–4; *see Ellwood City v. United States*, No. 21-0007, ECF No. 28 (CIT Oct. 29, 2021) (order granting Government's Motion for Voluntary Remand).  Commerce filed a letter respectfully declining to seek voluntary remand, arguing that sufficient differences exist between the present case and *Ellwood City Forge* to justify different treatment.  Def.'s Resp. to the Question of Voluntary Remand (Def.'s Letter) at 5–6, ECF No. 52.  Commerce invited the Court to "presume that Commerce considered" Plaintiffs' virtual verification argument if the Court considered Plaintiffs' contention that "Commerce did not expressly address that argument in the final determination." *Id.* at 9.

## JURISDICTION AND STANDARD OF REVIEW

This Court has exclusive jurisdiction over Plaintiffs' challenge to Commerce's Final Determination under 19 U.S.C. § 1516a(a)(2)(B)(i) and 28 U.S.C. § 1581(c), which grant the Court authority to review actions contesting final affirmative determinations, including any negative part of such determinations, in an antidumping order.  The Court must sustain Commerce's "determination, finding, or

conclusion" unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). If the determinations are neither supported by substantial evidence nor the law, the Court must "hold unlawful any determination, finding, or conclusion found." *Id.* This standard requires that Commerce thoroughly examine the record and "articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (internal quotation marks and citation omitted); *accord Tianjin Magnesium Int'l Co. v. United States*, 722 F.Supp.2d 1322, 1328 (CIT 2010). "[T]he question is not whether the Court would have reached the same decision on the same record[;] rather, it is whether the administrative record as a whole permits Commerce's conclusion." *See New American Keg v. United States*, No. 20-0008, 2021 WL 1206153, at *6 (CIT Mar. 23, 2021).

Reviewing agency determinations, findings, or conclusions for substantial evidence, the Court assesses whether the agency action is reasonable given the record as a whole. *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1351 (Fed. Cir. 2006); *see also Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951) ("The substantiality of evidence must take into account whatever in the record fairly detracts from its weight."). The Federal Circuit has described "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support

a conclusion." *DuPont Teijin Films USA v. United States*, 407 F.3d 1211, 1215 (Fed.

Cir. 2005) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

## DISCUSSION

### I.      Legal Framework

### A. Substantial Evidence

"By law, Commerce is required to 'verify all information relied upon in making

... a review and determination.'" *Rubberflex Sdn. Bhd. v. United States*, 59 F.Supp.2d

1338, 1344 (CIT 1999). But Congress does not provide specific guidance for how

verification should be accomplished. Thus, "when reviewing the procedures

Commerce uses at verification, the Court does not look to 'previously-set standards' .

. . . Rather, it 'review[s] verification procedures employed by Commerce in an

investigation for abuse of discretion.'" *Id.* (quoting *Micron Tech.*, 117 F.3d at 1396).

"The Court must be ever vigilant of abuse of discretion by the agency." *Wheatland

Tube Corp. v. United States*, 841 F.Supp. 1222, 1236 (CIT 1993).

Commerce has a statutory duty to "include in a final determination . . . an

explanation of the basis for its determination that addresses relevant arguments,

made by interested parties who are parties to the investigation or review . . .

concerning the establishment of dumping or a countervailable subsidy." 19 U.S.C. §

1677f(i)(3)(A). The Federal Circuit has thus found that the Court of International

Trade properly remanded determinations when Commerce "fail[ed] to consider all

relevant arguments" made by the parties. *Altx, Inc. v. United States*, 370 F.3d 1108,

1119–20 (Fed. Cir. 2004) (discussing how the CIT "reasonably was troubled by the failure" of Commerce to address the position of Japanese producers who were a party to the case). An agency decision is unsupported by substantial evidence when key issues "lack[] record support." *Strand v. United States*, 951 F.3d 1347, 1349 (Fed. Cir.), *cert. denied*, 141 S. Ct. 894 (2020). A decision by Commerce cannot be supported by substantial evidence if there is no indication that Commerce considered essential arguments or evidence in making its final determination. Indeed, when "there is nothing in the administrative record showing that Commerce considered (much less addressed)" a party's explanation or argument relating to an issue "essential to its analysis . . . the Court cannot sustain Commerce's decision." *Hung Vuong Corp. v. United States*, 483 F.Supp.3d 1321, 1367 (CIT 2020) (remanding a decision where Commerce failed to take into account a respondent's explanation related to factors of production before assigning adverse facts available).

## B. Remand

"Administrative agencies have considerable latitude to shape their remedies within the scope of their statutory authority and, where the infirmity is inadequacy of findings to show appropriateness of the choice made in the particular case, are ordinarily entitled to have the case remanded for further consideration." *Regal Knitwear Co. v. N.L.R.B.*, 324 U.S. 9, 13 (1945). Remands serve "an important function—to ensure the adequacy of agency explanation that is crucial to judicial review, including review of whether substantial evidence exists for the premises of

Commerce's exercise of discretion." *Diamond Sawblades Mfrs. Coal. v. United States*, 986 F.3d 1351, 1361 (Fed. Cir. 2021).  Unless the Court limits the scope of the remand, Commerce has "broad discretion to fully consider the issues remanded." *ABB, Inc. v. United States*, 273 F.Supp.3d 1186, 1199 n.14 (CIT 2017).   In similar contexts, the Federal Circuit has found limited remands to be improper when their scope prevents Commerce "from undertaking a fully balanced examination that might have produced more accurate results." *Am. Silicon Techs. v. United States*, 334 F.3d. 1033, 1039 (Fed. Cir. 2003).

Although the scope of issues Commerce may reconsider in its remand is typically broad, binding precedent limits the range of available actions it may undertake on remand.  The Supreme Court recently clarified an agency's options:

> First, the agency can offer a fuller explanation of the agency's reasoning *at the time of the agency action*. This route has important limitations. When an agency's initial explanation "indicate[s] the determinative reason for the final action taken," the agency may elaborate later on that reason (or reasons) but may not provide new ones. Alternatively, the agency can "deal with the problem afresh" by taking *new* agency action. An agency taking this route is not limited to its prior reasons but must comply with the procedural requirements for new agency action.

*Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1907– 08 (2020) (emphasis in original) (internal citations omitted).  Thus, while the scope of the remand may be unlimited, Commerce still only has two paths available to it:  It can expand on the original explanations offered for the chosen action, or it may take new agency action consistent with procedural requirements.  *Id.*

## II.    Analysis

### A. Summary

The Court cannot uphold an antidumping order that is not supported by "substantial evidence *on the record*."  19 U.S.C. § 1516a(b)(1)(B)(i) (emphasis added). If Commerce fails to provide an explanation for its actions, substantial evidence cannot exist to justify the Department's action.

Plaintiffs here have raised a host of legal challenges, both procedural and substantive, to actions undertaken by Commerce in this investigation.  The parties have argued at length about whether some of those challenges were adequately raised and preserved in the underlying administrative proceeding.  But one argument was clearly raised, and Commerce has all but conceded that it cannot meet its burden of substantial evidence with regard to that argument.  After the cancellation of verification and before the issuance of a final decision, Plaintiffs "urge[d] Commerce to engage in virtual verification."  J.A. at 91,588–89, ECF No. 45.  Commerce confirmed that there is "no discussion" or response to that argument in the record. Oral Arg. Tr.  25:7.

Commerce has completely failed to address Plaintiffs' request for virtual verification.  As this Court has found before, here, "the absence of evidence is indeed evidence of absence." *Saha Thai Steel Pipe Pub. Co. v. United States*, No. 20-133, ___ F.Supp.3d ___, 2021 WL 4593382 at *16 (CIT Oct. 6, 2021).  The Court thus cannot uphold Commerce's decision and remands the case in full for a period of 150 days to

allow Commerce to reconsider its previous decision and undertake new agency action consistent with this opinion.

### B. Failure to Provide Substantial Evidence

The substantial evidence standard requires that Commerce thoroughly examine the record and "articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *State Farm Mut. Auto. Ins. Co.*, 463 U.S. at 43 (internal quotation marks and citation omitted); *accord T-Mobile S., LLC v. City of Roswell*, 574 U.S. 293, 301–02 (2015); *Tianjin*, 722 F.Supp.2d at 1328. It stands to reason that no explanation cannot be "a satisfactory explanation." Indeed, this Court has recently explained that a failure to address an essential argument in making a final decision is sufficient grounds for remand. *See Hung Vuong Corp.*, 483 F.Supp.3d at 1367. Nor can the Court consider the explanations offered by Government counsel after-the-fact: *Post hoc* rationalizations similarly do not satisfy the substantial evidence standard. *Regents of the Univ. of California*, 140 S. Ct. at 1908 (explaining that an agency decision cannot be "upheld on the basis of impermissible '*post hoc* rationalization.'").

In this case, Plaintiffs raised, in writing, an argument relevant to an essential issue when they "urge[d] Commerce to engage in virtual verification." J.A. at 91,588–89, ECF No. 45. Commerce must "address[] relevant arguments, made by interested parties who are parties to the investigation or review." *See* 19 U.S.C. § 1677f(i)(3)(A). But, as counsel for the Government confirmed at oral argument, "[t]here is no

discussion about why a virtual verification would not have been feasible." Oral Arg. Tr. 25:7–8. Until recently, Commerce acknowledged that verification was a requirement imposed on it by Congressional enactment and its own regulations. *See, e.g.*, 19 U.S.C. § 1677m(i)(1) ("The administering authority shall verify all information relied upon in making . . . a final determination in an investigation"); 19 C.F.R. § 351.307(b)(1)(i) (2021) ("[T]he Secretary will verify factual information upon which the Secretary relies in: . . . a final determination in a[n] . . . antidumping investigation."). The lack of verification is at the heart of every legal argument Plaintiffs bring before the Court, *see* Compl. ¶¶ 13–27, ECF No. 9; Pls.' Mot. at 7–13, ECF No. 23, yet there is no answer in the record as to why Commerce rejected Plaintiffs' proffered verification method.

Commerce asks the Court to "presume that Commerce considered" Plaintiffs' virtual verification argument. Def.'s Letter at 9. Even were that possible, the Court may not "presume" an answer for Commerce. The Court reviews answers Commerce actually gave for substantial evidentiary support. *See* 19 U.S.C. § 1516a(b)(1)(B)(i). It does not draft answers Commerce never gave from the available record information before the Department. *Accord State Farm Mut. Auto. Ins. Co.*, 463 U.S. at 43 ("We may not supply a reasoned basis for the agency's action that the agency itself has not given.").

Commerce has frankly acknowledged that it did not address Plaintiffs' argument in the final determination. Oral Arg. Tr. 25:7–8 ("There is no discussion

[in the record] about why a virtual verification would not have been feasible."). Substantial evidence, therefore, does not exist to uphold Commerce's decision to bypass verification, virtual or otherwise. *See Hung Vuong*, 483 F.Supp.3d at 1367 (remanding case to Commerce where there was "nothing in the administrative record showing that Commerce considered (much less addressed)" the issue raised); *see also Diamond Sawblades Mfrs. Coal.*, 986 F.3d at 1361 (sustaining the CIT's remand order and explaining that remands "ensure the adequacy of agency explanation that is crucial to judicial review, including review of whether substantial evidence exists for the premises of Commerce's exercise of discretion"). The Court must **REMAND** Commerce's determination for it either to explain why it believes even a virtual verification is impossible or to perform some form of verification.

### C. Options on Remand

As the *Regents* Court noted, Commerce has two options on remand. *See Regents of the Univ. of California*, 140 S. Ct. at 1907–08. It may offer a fuller explanation of its reasoning at the time of the action it defends, or it may take new agency action. *Id.* If Commerce chooses the latter course, it "is not limited to its prior reasons but must comply with the procedural requirements for new agency action." *Id.* Because Commerce did not initially offer *any* explanation of its reasoning, the Court doubts very much whether Commerce can in fact provide a "fuller" explanation of its decision to forego virtual verification in this case. A new decision based on *current* conditions is most likely required. Nevertheless, the decision on how to

proceed, consistent with this and the Supreme Court's opinion in *Regents*, remains with Commerce.

In any new decision, if Commerce wishes to maintain its position that verification of any type is impossible, it must explain why now, in 2022, Department representatives cannot travel in person to India *or* conduct some form of virtual verification.  It would be relevant to consider recent policy changes and the travel of other U.S. officials in recent months.  The Court notes that, since the period of the initial investigation, cross-border travel conditions have changed substantially.  In October 2021, just before oral argument in this case, President Biden lifted travel restrictions on India, among other nations, and revoked country-specific limitations on entry for noncitizens effective November 8, 2021.  Proclamation No. 10,294, 86 Fed. Reg. 59,603 (Oct. 25, 2021).  The CDC's current advisory for India is "Level 3: COVID-19 High."  It therefore recommends full vaccination or regular testing for U.S. citizens visiting the subcontinent.  INDIA COVID-19 TRAVEL INFORMATION, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://wwwnc.cdc.gov/travel/destinations /traveler/none/india?s_cid=ncezid-dgmq-travel-single-001 (last visited Feb. 2, 2022).  Under President Biden's September 9, 2021 mandate, nearly all Department of Commerce employees are presumably fully vaccinated, precluding the necessity of onerous testing.  *See* Exec. Order No. 14,043, 86 Fed. Reg. 50,989 (Sept. 14, 2021) (federal employee vaccination or testing mandate).  *But see Feds for Medical Freedom v. Biden*, No. 3:21-cv-356, 2022 U.S. Dist. LEXIS 11145 (S.D. Tex. Jan. 21, 2022)

(enjoining the Government's enforcement of the vaccine mandate on federal employees).  Despite these evolved conditions, as of November 2021, Commerce "is still . . . not conducting on site verifications."[3]  Oral Arg. Tr.  8:18–19.  Circumstances are continuously changing, and travel possibilities have changed yet again since the time of oral argument; but that does not change the Government's obligation to answer on the record Plaintiff's request for a virtual verification.  *Compare* Suspension of Entry as Immigrants and Nonimmigrants of Certain Additional Persons Who Pose a Risk of Transmitting Coronavirus Disease 2019, 86 Fed. Reg. 68,385 (Dec. 1, 2021), *with* Revoking Proclamation 10,315, 87 Fed. Reg. 149 (Jan. 3, 2022).

Commerce asserts that it decides whether to verify the information in each investigation on a "case-by-case basis."  Def.'s Letter at 4, ECF No. 52 (emphasis omitted).  Commerce's continuing blockade on verification, despite its prior practice of verifying the information presented to it, seems curious in light of recent in-person trips to India by other senior administration officials.  For example, Deputy Assistant Attorney General Arun G. Rao of the Department of Justice's Civil Division — the

---

[3] Indeed, the conditions in India on the date of oral argument were *better* than they currently are. India COVID-19 Travel Information, Centers for Disease Control and Prevention, https://web.archive.org/web/20211001150702/https://wwwnc.cdc.gov/travel/destinations/traveler/none/india?s_cid=ncezid-dgmq-travel-single-001 (showing that between August 16, 2021 and November 15, 2021, the CDC's travel advisory was "Level 2: COVID-19 Moderate"); India COVID-19 Travel Information, Centers for Disease Control and Prevention, https://web.archive.org/web/20211126175706/https://wwwnc.cdc.gov/travel/destinations/traveler/none/india?s_cid=ncezid-dgmq-travel-single-001 (showing that ten days after oral argument, on November 15, 2021, the CDC's travel advisory for India dropped to "Level 1: COVID-19 Low").

same Department of Justice representing Commerce here — traveled to New Delhi in October to discuss consumer protection with Indian officials.  Press Release, U.S. Dep't of Justice, Readout of Meeting between Department of Justice and the Central Bureau of Investigation of Government of India (Oct. 21, 2021), https://www.justice.gov/opa/pr/readout-meeting-between-department-justice-and-central-bureau-investigation-government-india.   His trip presents a strange contradiction, given that Department of Justice policy permits only "mission-critical" travel, which is the same standard applicable to the Department of Commerce. DEP'T OF COMMERCE, *All Hands: Coronavirus Update (3-16-2020)* https://www.commerce.gov/sites/default/files/2020-03/AllHandsCoronavirusUpdate 3-16-20.pdf  (detailing how travel is only permissible if it is "mission-critical and pre-approved by senior bureau leadership").   Under the Government's explanation of this standard, it is "mission critical" for political appointees to take discretionary trips to India; but it is not "mission critical" for Commerce Department civil servants to travel to India, *virtually* or otherwise, to carry out their *statutory* responsibilities.  *See* 19 U.S.C. § 1677m(i) ("The administering authority *shall* verify all information relied upon in making . . . a final determination in an investigation.") (emphasis added); 19 C.F.R. § 351.307(b)(1)(i) (2021) ("[T]he Secretary *will* verify  factual information upon which the Secretary relies in: . . . a final determination in a[n] . . . antidumping investigation.") (emphasis added).

Even more relevant to the matter at hand, United States Trade Representative Katherine Tai held a November meeting with Indian leaders in person in New Delhi to discuss U.S.-India Trade Policy.    Press Release, Office of the U.S. Trade Representative, Ambassador Tai to Travel to Japan, South Korea, and India (Oct. 29, 2021),          https://ustr.gov/about-us/policy-offices/press-office/press-releases/2021/ october/ambassador-tai-travel-japan-south-korea-and-india.    Ambassador Tai's responsibilities are to open new markets overseas for American products and to ensure that American corporations are not subjected to unfair trade practices.  *See* 19 U.S.C. § 2171(c) (describing the responsibilities of the Trade Representative).  It is Commerce's job to enforce these guarantees through the antidumping and countervailing duty statutes.  Their responsibilities are thus complimentary, but their travel standards clearly are not.  It is apparently currently safe to conduct high-level negotiations but not safe to ensure the terms of those deals are actually enforced, despite the destinations[4] being the same.  Verification procedures are fact-specific inquiries and will require fact-specific review by the Court as circumstances continue to change and new variants spread.  But that is precisely why it is so critical for

---

[4] The Government declared at oral argument on November 5, 2021, that Commerce was "still . . . not conducting on site verifications." Oral Arg. Tr.  8:18–19.  Deputy Assistant Attorney General Rao's in-person trip to India took place the week of October 17, 2021.  *See* Press Release, U.S. Dep't of Justice, Readout of Meeting between Department of Justice and the Central Bureau of Investigation of Government of India (Oct. 21, 2021) (describing the trip as occurring "this week"), https://www.justice.gov/opa/pr/readout-meeting-between-department-justice-and-central-bureau-investigation-government-india.  Ambassador Tai's in-person visit took place the week of November 21, 2021.  *See* Press Release, Office of the U.S. Trade Representative, Comprehensive Trip Guidance and Week Ahead for November 22, 2021 – November 26, 2021 (Nov. 21, 2021), https://ustr.gov/about-us/policy-offices/press-office/press-releases/2021/november/comprehensive-trip-guidance-and-week-ahead-november-22-2021-november-26-2021.

Commerce to articulate its reasons and for those reasons to be preserved in the record for the Court's review.

The Court cannot review an explanation not given. And the summary of recent events above explains why courts may not "presume" an agency has considered an argument or allow for *post hoc* rationalizations to carry the day. *Cf.* Def.'s Letter at 9, ECF No. 52. The law requires agencies to explain their actions "on the record" to prevent inconsistency, hypocrisy, and irrationality from governing agency decision making. *See Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962) ("The agency must make findings that support its decision, and those findings must be supported by substantial evidence" by demonstrating a "rational connection between the facts found and the choice made."). The need to prevent inconsistency is especially strong where, as here, Commerce has previously demonstrated its ability to conduct verification in unique circumstances:

> Commerce has, in the past, found a way to conduct verification, even under exceptional circumstances. *See, e.g.*, *Polyethylene Terephthalate Resin From Pakistan: Final Determination of Sales at Less Than Fair Value*, 83 Fed. Reg. 48,281 (Sep. 24, 2018) (conducting a verification using "standard verification procedures, including an examination of relevant accounting and production records, and original source documents" with representatives of a Pakistani company in Washington, D.C. when Commerce determined that travel in Pakistan was not possible due to a State Department travel advisory); *Notice of Final Determination of Sales at Less Than Fair Value: Stainless Steel Bar From Italy*, 67 Fed. Reg. 3,155 (Jan. 23, 2002) (tolling the final determination deadline in this and companion investigations of SSB from Germany, France, the United Kingdom, and Korea in order to conduct a modified verification that "met the {verification} standard" in the wake of "security concerns and logistical difficulties brought about by the events of September 11 {2001}"); *Brake Rotors From the People's Republic of China: Rescission of Second New Shipper Review and Final Results and Partial Rescission of First Antidumping*

*Duty Administrative Review*, 64 Fed. Reg. 61,581 (Nov. 12, 1999) (conducting an off-site verification at a Beijing hotel rather than on-site verification at the respondent's production facilities due to security concerns associated with travel in China following a NATO bombing of the Chinese Embassy in Belgrade, Yugoslavia).

Plaintiff's Rule 56.2 Mot. for J. on the Agency R. at 21–22, *Ellwood City v. United States*, No. 21-00007, ECF No. 21 (CIT July 19, 2021).

Under Commerce's current theory of the case, the decision about whether and how to conduct verification is governed by the abuse of discretion standard. Oral Arg. Tr. 50:1–2; Def.'s Resp. at 8, ECF No. 35. On remand, Commerce may assess the current state of the COVID-19 pandemic, consider whether a virtual verification is possible, and act accordingly. Should Commerce determine that no verification method — virtual or otherwise — is possible, it must at a bare minimum explain on the record why it is not an abuse of discretion for the Government to determine that senior officials may galivant around the globe in-person but civil servants cannot even perform their statutory responsibilities virtually. *See Wheatland Tube Corp. v. United States*, 841 F. Supp. 1222, 1236 (CIT 1993) (explaining that this Court will remain "ever vigilant of abuse of discretion by the agency."). Plaintiff and Defendant-Intervenor will have the appropriate opportunities to raise any and all arguments with specificity that arise from any new decision. And after remand, this Court will consider those issues that remain.

## CONCLUSION

Record review requires a record.  Because Commerce has failed to make one concerning its decision not to engage in verification, virtual or otherwise, its decision may not stand.  Commerce may either do its job and perform some type of verification or explain why its decision to fail to verify is both legal *and* not an abuse of discretion.

Accordingly, it is:

**ORDERED** that Plaintiffs' Motion for Judgment on the Agency Record is **GRANTED**;

The Court **REMANDS** the case for up to 150 days initially for Commerce to reconsider its decision on verification, consistent with this opinion, and place its reasons supporting its decision on the record, and it is

**ORDERED** that at the conclusion of 150 days, Commerce should either file its remand results with the Court or file a motion for extension of time if a longer period is necessary. It is also

**ORDERED** that within 10 days of Commerce's filing the remand redetermination, the parties shall confer and file a proposed briefing schedule with the Court on any remaining issues.

/s/      Stephen Alexander Vaden
Stephen Alexander Vaden, Judge

Dated:   February 2, 2022
         New York, New York