# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE STEPHEN A. VADEN, JUDGE

| | |
|---|---|
| BONNEY FORGE CORPORATION, and UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> SHAKTI FORGE INDUSTRIES PVT. LTD, <br><br> Defendant-Intervenor. | Court No. 20-03837 |

## DEFENDANT'S RESPONSE TO PLANTIFFS' BRIEF ON REMAINING ISSUES

|  |  |
|---|---|
|  | BRIAN M. BOYNTON <br> Principal Deputy Assistant Attorney General |
|  | PATRICIA M. McCARTHY <br> Director |
|  | CLAUDIA BURKE <br> Assistant Director |
| OF COUNSEL: <br> JONZACHARY FORBES <br> U.S. Department of Commerce <br> Office of Chief Counsel for <br> Trade Enforcement and Compliance <br> 1401 Constitution Avenue, N.W. <br> Washington, DC 20230-0001 <br> Telephone: (240) 449-5906 | KARA M. WESTERCAMP <br> Trial Attorney <br> U.S. Department of Justice <br> Civil Division <br> Commercial Litigation Branch <br> P.O. Box 480, Ben Franklin Station <br> Washington, DC 20044 |

Facsimile: (202) 482-8184  Telephone: (202) 305-7571
Email: JonZachary.Forbes@trade.gov  Fax: (202) 514-8624
Email: Kara.M.Westercamp@usdoj.gov

September 6, 2022  *Attorneys for Defendant*

# TABLE OF CONTENTS

**PAGES**

BACKGROUND ........................................................................................................2

    I.       The Administrative Determination Under Review......................................2

    II.      The Court's Remand Order ........................................................................3

    III.     Commerce's Remand Results ....................................................................4

ARGUMENT.............................................................................................................7

    I.       Standard Of Review....................................................................................7

    II.      Commerce Complied With The Court's Remand Order .............................7

CONCLUSION........................................................................................................13

# TABLE OF AUTHORITIES

**CASES**                                                                                                    **PAGES**

*Am. Alloys, Inc. v. United States*,
    30 F.3d 1469 (Fed. Cir. 1994) ................................................................................9

*Bonney Forge Corporation v. United States*,
    560 F. Supp. 3d 1303 (Ct. Int'l Trade 2022) .................................................. *passim*

*Dep't of Homeland Sec. v. Regents of the Univ. of Ca.*,
    140 S. Ct. 1891 (2020) .............................................................................................3

*Jinko Solar Co. Ltd. v. United States*
    229 F. Supp. 3d 1333 (Ct. Int'l Trade 2017) ...........................................................7

*MacLean-Fogg Co. v. United States*,
    100 F. Supp. 3d 1349 (Ct. Int'l Trade 2015) ...........................................................7

*Micron Tech., Inc. v. United States*,
    117 F.3d 1386 (Fed. Cir. 1997) ...............................................................................9

*PAM S.p.A. v. United States*,
    463 F.3d 1345 (Fed. Cir. 2006) .............................................................................11

**STATUTES**

19 U.S.C. § 1516a ................................................................................................................7

19 U.S.C. § 1677e(a)(2)(D) .................................................................................................2

19 U.S.C. § 1677m(i)(1) ............................................................................................ *passim*

**REGULATIONS**

19 C.F.R. § 351.309(c)(2) ..................................................................................................11

**ADMINISTRATIVE DETERMINATIONS**

*Forged Steel Fittings From India,*
    85 Fed. Reg. 66,306 (Dep't of Commerce Oct. 19, 2020) ......................................2

# UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE THE HONORABLE STEPHEN A. VADEN, JUDGE

|  |  |
|---|---|
| BONNEY FORGE CORPORATION, and UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> SHAKTI FORGE INDUSTRIES PVT. LTD, <br><br> Defendant-Intervenor. | Court No. 20-03837 |

## DEFENDANT'S RESPONSE TO PLAINTIFFS' BRIEF ON REMAINING ISSUES

Defendant, the United States, respectfully submits this response to the brief on remaining issues submitted by plaintiffs, Bonney Forge Corporation (Bonney Forge) and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union (USW) (collectively, plaintiffs), ECF No. 68, regarding the remand results filed by the Department of Commerce in accordance with this Court's decision and remand order in *Bonney Forge Corporation v. United States*, 560 F. Supp. 3d 1303 (Ct. Int'l Trade 2022). Final Results of Redetermination Pursuant to Court Order, June 30, 2022 (Remand Results), ECF No. 61 (APPX14326-14362). For the reasons set forth below, we respectfully request that the Court sustain Commerce's remand results and enter final judgment.

BACKGROUND

I.      The Administrative Determination Under Review

The administrative determination under review is the final determination in the less-than-fair-value investigation covering forged steel fittings from India. *Forged Steel Fittings from India: Final Affirmative Determination of Sales at Less Than Fair Value*, 85 Fed. Reg. 66,306 (Dep't of Commerce Oct. 19, 2020) (final determination) (APPX14186-14189), and accompanying Issues and Decisions Memorandum (Dep't of Commerce Oct. 13, 2020) (IDM) (APPX14126-14148). The period of investigation is October 1, 2018, to September 30, 2019. Commerce selected Shakti Forge Industries PVT. Ltd (Shakti) as a mandatory respondent to investigate, and it was the only selected company that did not withdraw from the proceeding. *See* Selection of Respondents for Individual Examination (Dep't of Commerce Jan. 2, 2020) (APPX2900-2905).

On August 4, 2020, after Commerce had received Shakti's responses to two post-preliminary determination questionnaires, Commerce notified the parties that, as a result of the ongoing Global Level 4 Travel Advisory preventing Commerce personnel from traveling, it would be unable to conduct verification pursuant to 19 U.S.C. § 1677m(i)(1). *See* Cancellation of Verification and Briefing Schedule (Dep't of Commerce Aug. 4, 2020) (APPX13906-13909). Commerce explained that, pursuant to 19 U.S.C. § 1677e(a)(2)(D), because information was provided that could not be verified as provided under section 1677m(i), it would use "facts otherwise available" in reaching its determination, relying on record information. *Id.* (APPX13906-13907). In the final determination, Commerce confirmed that it did not conduct verification as a result of the travel restrictions. *See* IDM at 2 (APPX14127).

Although plaintiffs had requested that Commerce conduct a "virtual" verification, Petitioners' Administrative Case Br. (Aug. 11, 2020) (APPX91570-91589), Commerce did not address that specific request in the final results, nor explain why a remote verification would not have been feasible. *See Bonney Forge*, 560 F. Supp. 3d at 1308.

II.     The Court's Remand Order

On February 2, 2022, in its remand order, the Court remanded the final determination to Commerce to reconsider its decision "not to engage in verification, virtual or otherwise," and required Commerce on remand to "either do its job and perform some type of verification or explain why its decision to fail to verify is both legal *and* not an abuse of discretion." *Id.* at 1316 (emphasis in original).

The Court explained that "{u}ntil recently, Commerce acknowledged that verification was a requirement imposed on it by Congressional enactment and its own regulations" and the "lack of verification is at the heart of every legal argument Plaintiffs bring before the Court . . . yet there is no answer in the record as to why Commerce rejected Plaintiffs' proffered verification method." *Id.* at 1312 (alterations added and citations omitted). Because "Commerce has frankly acknowledged that it did not address" plaintiffs' request for a virtual verification, the Court held that "{s}ubstantial evidence, therefore, does not exist to uphold Commerce's decision to bypass verification, virtual or otherwise." *Id.*

On remand, the Court set forth two options for Commerce: (1) to "offer a fuller explanation of its reasoning at the time of the action it defends;" or (2) "it may take new agency action." *Id.* at 1313 (citing *Dep't of Homeland Sec. v. Regents of the Univ. of Ca.*, 140 S. Ct. 1891, 1907-08 (2020)). Considering that "Commerce did not initially offer *any* explanation of its reasoning," the Court explained that it "doubts very much whether Commerce can in fact

provide a 'fuller' explanation of its decision to forego virtual verification in this case." *Id.* (emphasis in original). Rather, the Court explained that "{a} new decision based on *current* conditions is most likely required." *Id.* (emphasis in original).

And "{s}hould Commerce determine that no verification method – virtual or otherwise – is possible, it must at a bare minimum explain on the record why it is not an abuse of discretion for the Government to determine that senior officials may galivant around the globe in-person but civil servants cannot even perform their statutory responsibilities virtually." *Id.* at 1316.

III. Commerce's Remand Results

Consistent with the Court's remand order, Commerce made a new determination, finding that the post-preliminary questionnaires that Commerce issued Shakti in-lieu of onsite verification fulfilled Commerce's verification requirements under 19 U.S.C. § 1677m(i), and were consistent with Commerce's current procedures. Remand Results at 23-24 (APPX14348-14349); *see also Bonney Forge*, 560 F. Supp. 3d at 1313-1316. Additionally, Commerce explained that it "is no longer maintaining its position" from the final results that "verification was not possible, and instead is concluding on remand that verification has already been completed in this investigation," such that "consideration of current verification practices and possibilities appears unnecessary." Remand Results at 23 (APPX14348). In other words, "Commerce reasonably crafted a methodology to achieve the substantive goals of verification to the best of its ability given the numerous complicating and rapidly changing circumstances," and in a new decision, "Commerce now considers that the Post-Preliminary Questionnaires satisfy the verification requirement of {19 U.S.C. § 1677m(i)}, consistent with Commerce's recent practice during the COVID-19 pandemic." *Id.* at 36 (APPX14361).

Specifically, Commerce explained that "{t}he record demonstrates that Commerce fully considered the petitioners' concerns with the reliability of {Shakti's} responses" and also "verif{ied} the reliability of Shakti's reporting via the Post-Preliminary Questionnaires." *Id.* at 16 (APPX14341). Having made so many requests of Shakti about the "allegations of misreporting concerning its sales and cost databases and {to} provide documentation to support its answers," Commerce explained that "{t}hese are the same types of requests made during a traditional verification" and Shakti's response of nearly 2,000 pages of "source documentation and explanation {} *exceeded* the volume of documentation typically provided and examined during a traditional verification." *Id.* at 17 (APPX14342) (emphasis added).

Indeed, Commerce determined that "conducting verification via questionnaire does not preclude Commerce or any other interested party from identifying missing information" and "{t}hat neither Commerce nor the petitioners identified missing information in Shakti's voluminous Post-Preliminary Questionnaire Responses speaks to the completeness of Shakti's reporting, not to any party's ability to identify missing information." *Id.*; *see also id.* at 18 (explaining that plaintiffs had never submitted deficiency comments about Shakti's post-preliminary questionnaire responses) (APPX14343). And while Commerce had not "specifically characterize{d} the Post-Preliminary Questionnaires as 'verification,' due to the more narrow understanding of verification at the time," in this new determination, Commerce determined that the post-preliminary questionnaires satisfied the statutory requirement for verification. *Id.*; *id.* at 23 (explaining the "underlying investigation represents the *earliest* instance of Commerce issuing questionnaires in lieu of on-site verification") (APPX14348) (emphasis added).

Finally, Commerce rejected plaintiffs' argument that it should nonetheless conduct "an analysis of verification possibilities under current conditions," because, as Commerce explained,

5

consistent with the remand order, it "has taken new agency action, and now concludes that verification has taken place, in accordance with the requirements of an investigation." *Id.* at 22-23 (APPX14347-14348). To wit, "{t}he fact that verification was conducted in a manner distinct from the petitioner's concept of what verification should look like, does not detract from the fact that Shakti demonstrated, to Commerce's satisfaction, that its reported information was accurate and complete." *Id.* at 23 (APPX14348); *see id.* (explaining that "petitioners have not identified any specific issues in their {administrative} remand comments with Shakti's reported information that calls into question the accuracy or completeness of its reporting"). In other words, concerning verification, "a key factor in authenticating a response is the consistency of what is presented; the more information a party places on the record the more difficult it becomes for the party to manipulate a response, because each answer must comport with the existing record evidence." *Id.* at 27 (APPX14352). "Further, conducting verification via questionnaire does not preclude Commerce or any other interest party from identifying missing information," and here, no party "identified missing information in Shakti's voluminous Post-Preliminary Questionnaire Responses." *Id.*

Relatedly, while plaintiffs continued to insist that a "real time" verification was necessary, Commerce explained that Shakti's "extensive responses" had deadlines that were "significantly shorter" than a typical questionnaire. *Id.* at 28 (APPX14353). And while Commerce "did not issue a verification report," Commerce determined that was not necessary "{g}iven the transparent nature of the verification questionnaires and responses" which were placed on the record. *Id.* at 29 (APPX14354).

In conclusion, Commerce determined that, consistent with the remand order, while it had not conducted a "traditional on-site verification," *id.* at 36 (APPX14361), it "re-examined the

6

steps {it} took in this investigation and f{ound} that {its} use of Post-Preliminary Questionnaires in lieu of an in-person, on-site verification and Commerce's subsequent analysis of the information collected via the questionnaires" satisfied the statutory requirements and constituted a verification. *Id.* at 11 (APPX14336).

## ARGUMENT

I. Standard Of Review

In remand proceedings, the Court will sustain Commerce's determination if it is "in accordance with the remand order," and are "supported by substantial evidence and otherwise in accordance with law." *See MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349, 1355 (Ct. Int'l Trade 2015) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)).

II. Commerce Complied With The Court's Remand Order

The Court should sustain Commerce's remand results because Commerce complied with the Court's remand order. The Court ordered Commerce to offer a fuller explanation of its initial reasoning, or to take a new action. *Bonney Forge*, 560 F. Supp. 3d at 1313. In its remand results, Commerce chose to take new agency action by determining that, consistent with its practice which has evolved during the pandemic, Commerce had, in fact, completed verification of the submitted factual information through the issuance of post-preliminary questionnaires and its subsequent analysis of the information collected in the responses to those questionnaires. Remand Results at 2-3, 25 (APPX14327-14328, APPX14350). As Commerce explained in the remand results, these post-preliminary questionnaires were designed to corroborate information that Shakti had reported earlier in the proceeding and to achieve the goals of verification; thus, on remand Commerce reasonably determined that such procedures satisfy the requirements under 19 U.S.C. § 1677m(i). *Id.* at 25-29 (APPX14350-14354). By providing a new agency

determination on verification, Commerce has complied with the Court's remand order.

Plaintiffs contend that Commerce was required to conduct a separate verification again on remand. Plaintiffs Br. at 3-6. However, as Commerce explained, it determined that the record information it had relied upon in the final determination had been verified in accordance with 19 U.S.C. § 1677m(i), and therefore, Commerce was not obligated to verify the very same information a second time under the statute. Remand Results at 23 (APPX14348). "The fact that verification was conducted in a manner distinct from the petitioners' concept of what verification should look like, does not detract from the fact that Shakti demonstrated, to Commerce's satisfaction, that its reported information was accurate and complete." *Id.* In fact, to go back and conduct a more traditional "spot check" verification, when all of the relevant information has already been placed on the record for review by all parties—something that far exceeds the level of access normally provided parties—is counterintuitive to the goals not just of verification, but of the entire exercise of calculating accurate antidumping duty margins.

Next, plaintiffs contend that Commerce has "completely reversed" itself by newly determining on remand that evaluation of the questionnaire responses constitutes verification, and that even if it was a new verification, the post-preliminary questionnaires did not examine all elements that Commerce was allegedly obligated to examine. *See* Plaintiffs Br. at 7-9. We agree with plaintiffs that Commerce has taken a new agency action in making this new determination. *See, e.g.*, Plaintiffs Br. at 3 ("Commerce's new determination. . . cannot be considered an expansion 'on the original explanations offered for the chosen action'"); *id.* at 6 ("Commerce's new determination"). As noted above and by this Court, Commerce was permitted to make a new determination—but the Court did not dictate to Commerce the contours of that new determination, nor did it order Commerce to perform a new verification. *See Bonney Forge*, 560

F. Supp. 3d at 1313; Remand Results at 23, 36 (APPX14348, APPX14361).

Indeed, Commerce explained that it "is not arguing that the verification conducted in the underlying investigation is identical to an on-site verification{, i}nstead, based upon its reexamination of the Post-Preliminary Questionnaires and responses, Commerce has recognized that its exercise of discretion in choosing to conduct verification via Post-Preliminary Questionnaires is reasonable given the multiple complicating case-specific circumstances." Remand Results at 28 (APPX14353); *see also Micron Tech., Inc. v. United States*, 117 F.3d 1386, 1396 (Fed. Cir. 1997) (holding that verification procedures employed by Commerce in an investigation are reviewed under an abuse of discretion standard and that Commerce may derive verification procedures *ad hoc*); *Am. Alloys, Inc. v. United States*, 30 F.3d 1469, 1475 (Fed. Cir. 1994) (noting that "the statute gives Commerce wide latitude in its verification procedures").

As to the *content* of the verification, Commerce explained in the remand results that the purpose of verification is to corroborate information reported earlier in the proceeding to Commerce, and establish, to Commerce's satisfaction, that such information is accurate and reliable for purposes of making its final determination. Remand Results at 16 (APPX14341); *see also Jinko Solar Co. Ltd. v. United States*, 229 F. Supp. 3d 1333, 1356 (Ct. Int'l Trade 2017) (holding that the purpose of verification is "to verify the accuracy and completeness of submitted factual information"). Commerce also has "broad discretion in determining what constitutes verification, including Commerce's discretion to determine *what* information to verify, *which* tests to perform, and *how* to perform them." Remand Results at 26 (APPX14351) (emphasis added). Here, Commerce's post-preliminary questions were not designed to solicit new information from Shakti, similar to ordinary questionnaires issued by Commerce, but rather, were specifically meant to *corroborate and verify* the information that Shakti had previously

9

submitted. *See* Remand Results at 26-28 (APPX14351-14353); *see also* Shakti 5th Supplemental Questionnaire (Dep't of Commerce June 15, 2020) (APPX89114-89118); Shakti 6th Supplemental Questionnaire (Dep't of Commerce July 2, 2020) (APPX11816-11819). And as the "purpose of verification is to corroborate information reported by {Shakti} earlier in the proceeding, and establish, *to Commerce's satisfaction*, that such information is accurate and reliable for purposes of making a factual determination{,}" here, in this new determination, Shakti demonstrated to Commerce's satisfaction that its reported information was reliable for purposes of Commerce's final determination, and thus the verification requirement has been satisfied." Remand Results at 26 (APPX14351) (emphasis in original).

Relatedly, although plaintiffs contend that, should the Court allow Commerce's issuance and evaluation of its post-preliminary questionnaires and responses to constitute verification, the Court would be handing Commerce "virtually unlimited ability to assert that it has verified any information it receives that it decides to rely upon," Plaintiffs Br. at 11, this argument is unfounded and ignores a plain reading of the statute. "As a result of the ambiguity of the statute and latitude afforded to Commerce, the methodology and means by which Commerce verifies information may vary, and often does, by case, as in the circumstance of the COVID-19 pandemic." Remand Results at 25 (APPX14350).

Indeed, plaintiffs acknowledge that the post-preliminary questionnaires were more similar to questions asked at verification, *see* Plaintiffs Br. at 12, in that the goal of the post-preliminary questionnaires was to corroborate the information Shakti had already reported, in line with Commerce's statutory obligation to verify submitted factual information. *See also* Remand Results at 26-29 (APPX14351-14354). Although this was not an on-site verification, Commerce explained that plaintiffs have access to much more information here, because

10

Commerce made "the same types of requests" to Shakti as "during a traditional verification" and Shakti provided "nearly two-thousand pages of source documentation and explanation, which exceeded the volume of documentation typically provided and examined during a traditional verification". *Id.* at 17 (APPX14342). Contrary to plaintiffs' characterization, Commerce has not argued that *any* particular action may constitute verification within the meaning of 19 U.S.C. § 1677m(i); rather, Commerce has consistently maintained that during an unprecedented global pandemic where Commerce and the parties were faced with travel restrictions, among other things, it was reasonable and lawful to issue and evaluate the responses to specialized, voluminous post-preliminary questionnaires designed to achieve corroboration of the information a respondent has already reported in the course of the proceeding, as is required by the statute. *Id.* at 16 (APPX14341).

Further, because the post-preliminary questionnaires were robust and Shakti placed its responses on the record, plaintiffs' argument that Commerce was obligated to issue a verification report under 19 C.F.R. § 351.307(c), Plaintiffs Br. at 12, is without merit. Commerce can "relax or modify" regulatory requirements if there is no substantial prejudice to any party. *PAM S.p.A. v. United States*, 463 F.3d 1345, 1348 (Fed. Cir. 2006). Given the inherently *more* transparent nature of the post-preliminary verification questionnaires and the subsequent responses submitted directly on the record, the petitioners had *direct* knowledge of the procedures and methods of verification, and a formal verification report was not required, thus, no party was prejudiced. Remand Results at 29 (APPX14354).

Separately, the plaintiffs request that the Court take judicial notice of Commerce's verification practice in other administrative proceedings involving different countries and at different times, long after this investigation's period of review. *See* Plaintiffs' Br. at 16-17. The

Court should decline to take judicial notice of the various ongoing (and not yet final) administrative proceedings plaintiffs have cited and attached to their remand comments, as plaintiffs could have, instead, explained how these administrative proceedings could be relevant in their remand comments. Although the Court has expressed its skepticism that Commerce's verification decisions can lawfully be made on a case-by-case basis, *Bonney Forge*, 560 F. Supp. 3d at 1314, the fact remains that the administration's response to the global pandemic has evolved over the last two and a half years. Reference to other cases, from other countries, with other verification situations simply does not explain whether the information Commerce possesses in this proceeding can constitute a verification under the statute.

Finally, because Commerce made a new determination that Shakti's voluminous Post-Preliminary Questionnaire responses constituted verification and "reasonably satisfies the verification requirement" under 19 U.S.C. § 1677m(i), Remand Results at 37 (APPX14362), Commerce did not, and nor do we address here the issue of international travel by Commerce personnel. *See Bonney Forge*, 560 F. Supp. 3d at 1313-14.

Based on the above, the Court should find that Commerce's new remand determination that the post-preliminary questionnaires it had issued to Shakti, the responses thereto, and Commerce's evaluation of that information, constituted verification, and that this determination is supported by substantial evidence and in accordance with law. *See* Remand Results at 35-36 (APPX14360-14361). Moreover, should the Court sustain Commerce's new determination with respect to verification, then we respectfully request that the Court further sustain Commerce's final determination with respect to the cost reporting issues, as well. *See* Gov't Response Br. at 15-20.

## CONCLUSION

For the foregoing reasons, we respectfully request that the Court sustain Commerce's remand redetermination and enter judgment for the United States.

          Respectfully submitted,

          BRIAN M. BOYNTON
          Principal Deputy Assistant Attorney General

          PATRICIA MCCARTHY
          Director

          /s/Claudia Burke
          CLAUDIA BURKE
          Assistant Director

| | |
|---|---|
| OF COUNSEL: | /s/ Kara M. Westercamp |
| JonZachary Forbes | Kara M. Westercamp |
| Attorney | Trial Attorney |
| Office of the Chief Counsel | U.S. Department of Justice |
| for Trade Enforcement and Compliance | Civil Division |
| U.S. Department of Commerce | Commercial Litigation Branch |
| Washington, D.C. | P.O. Box 480 |
| | Ben Franklin Station |
| | Washington, D.C. 20044 |
| | Telephone: (202) 305-7571 |
| | Fax:      (202) 514-8624 |
| | E-mail: Kara.M.Westercamp@usdoj.gov |
| September 6, 2022 | Attorneys for Defendant |

## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE THE HONORABLE STEPHEN A. VADEN, JUDGE

|  |  |
|---|---|
| BONNEY FORGE CORPORATION, and UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, <br><br>       Plaintiffs, <br>v. <br><br>UNITED STATES, <br><br>       Defendant, <br><br>and <br><br>SHAKTI FORGE INDUSTRIES PVT. LTD, <br><br>       Defendant-Intervenor. | Court No. 20-03837 |

## **ORDER**

Upon consideration of defendant-intervenor's comments regarding the United States Department of Commerce's (Commerce) remand redetermination, defendant's response thereto, and all other pertinent papers, it is hereby

ORDERED that Commerce's remand results are sustained.

Dated: _____        _____
     New York, New York                                Judge

CERTIFICATE OF COMPLIANCE

      I hereby certify, pursuant to section 2(B)(1) of the Standard Chambers Procedures of this Court, that this brief contains 3,255 words, excluding the table of contents, table of authorities, any addendum containing statutes, rules or regulations, any certificates of counsel, and counsel's signature, as calculated by the word processing system used to prepare this brief (Microsoft Word).

s/ Kara M. Westercamp

KARA M. WESTERCAMP

Trial Attorney

Department of Justice

Civil Division