Slip Op. No. 23-120

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| BONNEY FORGE CORPORATION and UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSRIAL AND SERVICE WORKERS INTERNATIONAL UNION,<br><br>*Plaintiffs,*<br><br>v.<br><br>UNITED STATES,<br><br>*Defendant,*<br><br>and<br><br>SHAKTI FORGE INDUSTRIES PVT. LTD.,<br><br>*Defendant-Intervenor.* | Before: Stephen Alexander Vaden, Judge<br><br>Court No. 1:20-cv-03837 |

## OPINION

[Remanding to Commerce to consider reliance interests and alternatives.]

Dated: August 21, 2023

*William Fennell*, Schagrin Associates, of Washington, DC, for Plaintiffs. With him on the brief was *Roger B. Schagrin*.

*Kara M. Westercamp*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for Defendant. With her on the brief were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Jeanne E. Davidson*, Director, Commercial Litigation Branch, *Claudia Burke*, Assistant Director, Commercial Litigation Branch, and *JonZachary Forbes*, Office of Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce.

*Aqmar Rahman*, Trade Pacific PLLC, of Washington, DC, for Defendant-Intervenor. With him on the brief was *Robert G. Gosselink*.

**Vaden, Judge:** Following this Court's remand order, *see Bonney Forge Corporation v. United States*, 560 F. Supp. 3d 1303 (CIT 2022) (*Bonney Forge I*), the Department of Commerce (Commerce) reconsidered its actions in the underlying proceeding. Commerce attempted to heed this Court's remand order and follow one of the two paths offered by the Supreme Court in *Department of Homeland Security v. Regents of the University of California (Regents)*. 140 S. Ct. 1891, 1907–08 (2020). Commerce chose the second path and sought to "'deal with the problem afresh' by taking *new* agency action." *Id.* at 1908; Final Results of Redetermination Pursuant to Court Remand (Remand Results) at 2, ECF No. 61. The new agency action Commerce took was determining "that the post-preliminary questionnaires issued by Commerce satisfy Commerce's verification requirements under section 782(i) of the Act." Remand Results at 2, ECF No. 61. Unfortunately, Commerce fell short of fulfilling all of *Regents*' requirements. Specifically, the agency failed to consider (1) the reliance interests implicated by its change of policy regarding verification and (2) alternative options to further verify the information on the record under current conditions. Therefore, the determination is **REMANDED** to Commerce for it to again reconsider its decision. *See Regents*, 140 S. Ct. at 1912–15.

## BACKGROUND

The Court presumes familiarity with *Bonney Forge I* but briefly summarizes the relevant facts. *See* 560 F. Supp. 3d at 1305–09. Commerce chose not to perform any kind of verification because of the constraints of the COVID-19 pandemic. *Id.* at 1307. Bonney Forge had suggested that Commerce perform a "virtual verification" in place of a traditional on-site verification. *Id.* Commerce did not respond to this suggestion. *Id.* at 1312. Instead, Commerce issued a series of supplemental questionnaires to respondent Shakti Forge. *Id.* at 1308. Commerce then determined that, although it could not verify Shakti's information, it would use the information Shakti provided as "facts available." *Id.*; *see* 19 U.S.C. § 1677e. Commerce relied on this unverified information in its determination. *Bonney Forge I*, 560 F. Supp. 3d at 1308. The Court remanded the decision to Commerce with instructions:

> On remand, Commerce may assess the current state of the COVID-19 pandemic, consider whether a virtual verification is possible, and act accordingly. Should Commerce determine that no verification method — virtual or otherwise — is possible, it must at a bare minimum explain on the record why it is not an abuse of discretion for the Government to determine that senior officials may galivant around the globe in-person but civil servants cannot even perform their statutory responsibilities virtually.

*Id.* at 1316.

Commerce returned its Remand Results to the Court on June 30, 2022. Remand Results, ECF No. 61. In the Remand Results, Commerce stated it took new agency action: It found that the questionnaires it issued and the responses it received

Case 1:20-cv-03837-SAV   Document 86   Filed 08/21/23   Page 4 of 14

Court No. 1:20-cv-03837                                                          Page 4

sufficiently verified Shakti's information. *Id.* at 2. Commerce additionally offered a "fuller explanation as to the option of a remote, real-time verification, and why a verification conducted in real time was not plausible during the investigation." *Id.*

After recounting the situation in India and the United States in the summer of 2020, Commerce responded to Bonney Forge's objections. First, Commerce argued that Plaintiffs raised the option of a virtual verification on August 11, 2020, which was too late for Commerce to acquiesce, *id.* at 13, and that Plaintiffs did not explain what a virtual verification was. *Id.* at 14. Second, Commerce noted that "alternative means of conducting verification under exceptional circumstances" have been approved by prior opinions of the Court of International Trade. *Id.* at 19. Commerce concluded that "the Post-Preliminary Questionnaires and responses thereto were a reasonable alternative to in-person, on-site verification or real-time, remote verification given the unique conditions caused by the COVID-19 pandemic, as well as other barriers specific to the case which impeded such means of virtual verification." *Id.* at 21. The agency explained that India had internal and international travel restrictions in 2020, making an on-site verification impossible. *Id.* at 13. With respect to virtual verification, Commerce noted that, during the investigation, (1) many employees of Shakti were confined to their homes without reliable internet access; (2) Shakti's accounting consultant could not travel to the company's facilities because of Indian COVID restrictions; (3) most of Shakti's records

were only in paper form; and (4) the significant time difference between India and the United States made scheduling a real-time teleconference difficult. *Id.* at 15.

Plaintiffs filed comments on the Remand Results with the Court on August 5, 2022, arguing that (1) Commerce's refusal to conduct on-site or virtual verification is contrary to law and the remand order; (2) Commerce's determination that it verified Shakti's information is unsupported by substantial evidence; and (3) Commerce's determination that Shakti's submitted cost information is accurate is unsupported by substantial evidence. Pls.' Br. on Remaining Issues (Pls.' Br.) at 2–14, ECF No. 78. Defendant Commerce and Defendant-Intervenor Shakti Forge responded to Plaintiffs' comments on September 6, 2022. Def.'s Resp. to Pls.' Br. on Remaining Issues, ECF No. 73; Def.-Int.'s Resp. to Pls.' Comments on Remand Results, ECF No. 72. In its response, Commerce argues that it complied with the remand order and that its decision is supported by substantial evidence. Def.'s Resp. at 7–12, ECF No. 73. Shakti Forge argues that Commerce complied with the remand order and that Commerce's actions in other investigations are not relevant to its actions here. Def.-Int.'s Resp. at 2–10, ECF No. 72.

The Court held oral argument on October 25, 2022, *see* ECF No. 80, and asked the Government where Commerce considered Plaintiffs' reliance interests in its decision. Oral Arg. Tr. (Tr.) at 43:12–16, ECF No. 82. Counsel pointed to the agency's discussion of why the record information was sufficient to constitute verification. *Id.* at 43:17–48:8. The Court also inquired whether the agency considered alternatives

in the Remand Results, as required by *Regents*. *Id.* at 35:17–36:5. The Government explained that doing a virtual or on-site verification "would be superfluous or that would be almost like a second verification because again what it had already done and considered constituted verification." *Id.* at 37:18–20. Thus, Commerce's answer to whether it had followed the necessary procedures on remand was to highlight its determination on the merits.

## STANDARD OF REVIEW

Although the scope of issues Commerce may reconsider on remand is broad, Supreme Court precedent limits the range of available actions it may take. An agency has two options on remand:

> First, the agency can offer a "fuller explanation of the agency's reasoning *at the time of the agency action*" . . . . This route has important limitations. When an agency's initial explanation "indicate[s] the determinative reason for the final action taken," the agency may elaborate later on that reason (or reasons) but may not provide new ones. Alternatively, the agency can "deal with the problem afresh" by taking *new* agency action. An agency taking this route is not limited to its prior reasons but must comply with the procedural requirements for new agency action.

*Regents*, 140 S. Ct. at 1907-08 (internal citations omitted); *accord SKF USA Inc. v. United States*, 254 F.3d 1022, 1028 (Fed. Cir. 2001) ("In the second situation, in which the agency seeks to defend its decision on grounds not previously articulated by the agency . . . . we generally decline to consider the agency's new justification for the agency action[.]"); *Timken Co. v. United States*, 894 F.2d 385, 389 (Fed. Cir. 1990)

("[A]gency action cannot be sustained on *post hoc* rationalizations supplied during judicial review.") (citations omitted).

"The court reviews remand determinations for compliance with the court's order." *Nakornthai Strip Mill Public Co. Ltd. v. United States*, 32 CIT 1272, 1274 (2008) (citations omitted); *accord Ad Hoc Shrimp Trade Action Comm. v. United States*, 992 F. Supp. 2d 1285, 1290 (CIT 2014), *aff'd*, 802 F.3d 1339 (Fed. Cir. 2015). "Deviation from the court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review." *Sullivan v. Hudson*, 490 U.S. 877, 886 (1989). The Court may also issue a further remand order when the remand results are not supported by substantial evidence or otherwise in accord with the law. *See Nippon Steel Corp. v. ITC*, 494 F.3d 1371, 1379 (Fed. Cir. 2007).

## DISCUSSION

### Commerce Failed to Comply with the Procedural Requirements of New Agency Action

Commerce acknowledges that it has a consistent past practice of performing in-person, on-site verification whenever possible. *See Remand Results* at 20, ECF No. 61 (noting that "Commerce has a documented history of verifying information to the fullest extent possible"); *see also id.* at 19 (detailing Commerce's actions in three other cases with substantial verification hurdles where Commerce arranged in-person verification at alternative locations); *id.* at 7 nn.35–36 (citing instances in which in-person, on-site verification was impossible so that substitute procedures were used

but none in which in-person, on-site verification was possible but was not done). In the Remand Results, Commerce explained its view of why in-person, on-site verification in India was not possible during the original investigation in 2020. *Id.* at 3–4. Commerce has also now explained its view of why a virtual verification was not possible in 2020, filling the gap identified by this Court in its prior decision. *Id.* at 13–15; *see Bonney Forge I*, 560 F. Supp. 3d at 1316 ("Record review requires a record. Because Commerce has failed to make one concerning its decision not to engage in verification, virtual or otherwise, its decision may not stand."). Commerce did a thorough job explaining the conditions in the United States and India in 2020 and how those conditions made on-site verification as well as an alternative virtual verification impractical. *See* Remand Results at 3–11, 14–15, ECF No. 61. Unlike the previous examples Plaintiffs cite — where world events impacted only travel to the foreign company and Commerce could designate an alternative in-person verification site — pandemic travel restrictions made travel difficult regardless of location. *Id.* at 19–21. There was no clear alternative location where both parties could meet. *Compare Polyethylene Terephthalate Resin from Pakistan: Final Determination of Sales at Less Than Fair Value*, 83 Fed. Reg. 48,281, 48,282 (Sept. 24, 2018) (conducting a verification with representatives of a Pakistani company in Washington, DC, when Commerce determined that travel in Pakistan was not possible because of a State Department travel advisory), *with* Remand Results at 20, ECF No. 61 (explaining that "in 2020, there were global travel bans in place, including

a ban on travel to India by U.S. citizens and travel to the United States by Indian nationals"). Shakti faced many hardships from India's lockdown policies, which prevented its employees from accessing its facilities and left them with irregular online access, making virtual verification difficult. *Id.* at 15.

Despite this explanation, two flaws mar Commerce's redetermination. First, Commerce denied the legitimacy of Bonney Forge's reliance interests, which are rooted in Commerce's consistent past practice of performing on-site or in-person verifications. *See id.* at 26 (claiming that all that mattered was whether Commerce was satisfied that the information was accurate). Second, the agency refused to address whether any additional steps were warranted to verify the information on the record given current conditions. *See id.* at 22 ("We disagree with the petitioners that an analysis of verification possibilities under current conditions is required to comply with the *Remand Order*."). *Regents* gives an agency two paths on remand: (1) the agency can offer a fuller explanation of its reasoning at the time it made the decision in question; or (2) the agency can take new agency action and provide new reasoning for that action. 140 S. Ct. at 1907–08. When taking new agency action, an agency "is not limited to its prior reasons but must comply with the procedural requirements for new agency action." *Id.* at 1908. For example, "when an agency rescinds a prior policy its reasoned analysis must consider the 'alternative[s]' that are 'within the ambit of the existing [policy].'" *Id.* at 1913 (quoting *Motor Vehicle Mfrs. Assn. of United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983))

(alterations in original). And when deviating from a consistent past practice or policy, an agency "must be cognizant that longstanding policies may have 'engendered serious reliance interests that must be taken into account.'" *Id.* (quoting *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2126 (2016) (quoting *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009))).

Given its admitted past practice of on-site or in-person verification and the deviation from that practice in the Remand Results, Commerce was obligated to acknowledge Bonney Forge's reliance interests and explain why this departure from past practice would not unduly harm those interests. No such discussion can be found. The agency never uses the term "reliance interests" once. When pressed at oral argument to show where in the Remand Results the agency considered reliance interests, the Government pointed to the Remand Results' discussion of why the questionnaire was sufficient to fulfill Commerce's statutory mandate to gather accurate and reliable information. *See* Tr. at 43:17–48:8, ECF No. 82; Remand Results at 26–28, ECF No. 61. However, Commerce's discussion effectively denied the existence of Bonney Forge's reliance interests. According to Commerce, "the purpose of verification is to corroborate information reported by the respondents earlier in the proceeding, and establish, *to Commerce's satisfaction*, that such information is accurate and reliable for purposes of making a final determination." Remand Results at 26, ECF No. 61 (emphasis in original). Bonney Forge's reliance

interests are irrelevant because the agency's satisfaction with the verification procedure is all that matters.

But Commerce may not ignore Bonney Forge's legitimate reliance interests engendered by Commerce's consistent policy of conducting on-site or in-person verifications. *See Regents*, 140 S. Ct. at 1913 (holding that reliance interests "must be taken into account") (citations omitted). The agency tries to dodge this responsibility by explaining that its Remand Results are in line with a two-year policy during the pandemic of using questionnaires in lieu of on-site verification. Remand Results at 23–24, ECF No. 61. Citing an expired pandemic policy is insufficient to avoid Commerce's obligation to acknowledge Bonney Forge's reliance interests in the prior policy of on-site or in-person verification. Although agencies have flexibility to change policy, they "must be cognizant that longstanding policies may have 'engendered serious reliance interests that must be taken into account.'" *Regents*, 140 S. Ct. at 1913 (quoting *Encino Motorcars*, 136 S. Ct. at 2126) (quoting *Fox Television*, 556 U.S. at 515). Commerce's Remand Results claim that it is only Commerce's interests that matter. *See* Remand Results at 26, ECF No. 61 (stating that "the purpose of verification is to corroborate information reported by the respondents earlier in the proceeding, and establish, *to Commerce's satisfaction*, that such information is accurate and reliable"). Because ignoring Plaintiffs' reliance interests ignores Supreme Court precedent, Commerce's determination must again return to the agency.

The Remand Results also fall short in their consideration of alternatives during the remand period. The agency explained why it could not perform on-site verification in 2020 and why virtual verification might not have been feasible during the pandemic. Remand Results at 3–4, 13–21, ECF No. 61. This was helpful; but there is no discussion of why the agency refused to take further steps to verify the information during the remand period — when the agency took "*new* agency action." *Regents*, 140 S. Ct. at 1908. The agency insisted that it need not consider doing anything further at all during the remand period, stating "{a}n attempt by Commerce to conduct additional verification of Shakti's responses via a virtual web conference or other methodology the petitioners might have suggested would be unnecessary as the information had already been verified under section 782(i)(1) of the Act." Remand Results at 23, ECF No. 61 (alteration in original). Commerce's explanation is essentially that, because what the agency did in 2020 was sufficient, the agency need not consider doing anything further. *Id.*; *see also id.* at 28 (explaining that using the questionnaire fulfilled many of the same functions as on-site verification). *But see id.* at 7 nn.35–36 (citing instances in which in-person, on-site verification was impossible so that substitute procedures were used but none in which in-person, on-site verification was possible but was not done). Again, the agency conflates the merits question with a procedural question. Commerce must explain what other steps closer to an on-site or in-person verification it has considered — now and in 2020 — and why it rejected those alternatives in favor of questionnaires. *See Regents*, 140 S. Ct.

at 1913 (requiring that an agency analyze the alternatives within the scope of the existing policy when changing longstanding practices).

As the *Regents* Court noted, Commerce has two options on remand. 140 S. Ct. at 1907–08. It may offer a fuller explanation of its reasoning at the time of the action it defends, or it may take new agency action. *Id.* Commerce here correctly decided to take new agency action but failed to acknowledge Bonney Forge's reliance interests. *See id.* at 1913. The agency also refused to explain why no alternative actions to verify Shakti's information were needed either in 2020 or during the remand period. To rectify these deficiencies, the case is **REMANDED** to Commerce for further explanation.

## CONCLUSION

Past practice is not an inescapable straitjacket. Commerce may deviate from it, provided that it places a reasoned explanation on the record in compliance with *Regents*. Because it has not done so, the Court must remand for further reconsideration. Accordingly:

The Court **REMANDS** the case for up to 150 days for Commerce to reconsider its decision on verification, consistent with this opinion, and place its reasons supporting its decision on the record; and it is

**ORDERED** that, at the conclusion of 150 days, Commerce should file its Second Remand Redetermination with the Court. It is also

**ORDERED** that Defendant shall supplement the administrative record with all documents considered by Commerce in reaching its decision in the Second Remand Redetermination; and it is further

**ORDERED** that Plaintiffs shall have 30 days from the filing of the Second Remand Redetermination to submit comments to the Court;

**ORDERED** that Defendant shall have 15 days from the date of Plaintiffs' filing of comments to submit a response; and

**ORDERED** that Defendant-Intervenor shall have 15 days from the date of Defendant's filing of comments to submit a response.

/s/ Stephen Alexander Vaden
Stephen Alexander Vaden, Judge

Dated: August 21, 2023
New York, New York