A-533-891<br>
Remand<br>
Slip Op. 23-120<br>
POI: 10/1/2018 – 9/30/2019<br>
<b>Public Document</b><br>
E&C/OVII:  MEH

***Bonney Forge Corporation and United Steel, Paper and Forestry, Rubber, Manufacturing and Service Workers International Union v. United States,***
**Court No. 20-03837, Slip Op. No. 23-120 (CIT August 21, 2023)**

**FINAL RESULTS OF REDETERMINATION
PURSUANT TO COURT REMAND**

**I.    SUMMARY**

The U.S. Department of Commerce (Commerce) prepared these final results of redetermination pursuant to the opinion and remand order of the U.S. Court of International Trade (the CIT or Court), issued on August 21, 2023.[1]  These final results of redetermination concern Commerce's final determination in the less-than-fair-value (LTFV) investigation of forged steel fittings (FSF) from India, covering the period October 1, 2018, through September 30, 2019.[2]  The plaintiffs are Bonney Forge Corporation and United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union (the petitioners).

Prior to the COVID-19 pandemic, following a preliminary determination, Commerce would generally conduct on-site verification of information submitted by mandatory respondent(s) at the party's facilities abroad.[3]  However, in the underlying investigation, Commerce was unable to conduct an in-person, on-site verification of the sole cooperative

---

[1] *See Bonney Forge Corporation and United Steel, Paper and Forestry, Rubber, Manufacturing and Service Workers International Union v. United States*, Court No. 20-3837, Slip Op. No. 23-120 (CIT August 21, 2023) (*Remand Order*).
[2] *See Forged Steel Fittings from India:  Final Affirmative Determination of Sales at Less Than Fair Value*, 85 FR 66306 (October 19, 2020) (*Final Determination*), and accompanying Issues and Decision Memorandum (IDM).
[3] *See* Memorandum, "Cancellation of Verification and Briefing Schedule," dated August 4, 2020, at 1.

mandatory respondent, Shakti Forge Industries Pvt. Ltd. (Shakti), due to the COVID-19 pandemic and ensuing restrictions.[4] As a result, Commerce issued Shakti post-preliminary questionnaires in lieu of a traditional, on-site verification and relied on "facts otherwise available" in reaching its *Final Determination*.[5] In its prior remand order, the Court remanded Commerce's decision, faulting Commerce for not directly addressing the petitioners' request for virtual verification in their case brief.[6] The Court also suggested that Commerce may wish to consider conducting an on-site or virtual verification of Shakti on remand to comply with its statutory verification obligation.[7]

In the redetermination submitted pursuant to the *Prior Remand Order*,[8] Commerce provided a fuller explanation as to why verification was not plausible at the time of the underlying investigation, specifically addressing the option of a remote, real time virtual verification.[9] However, Commerce explained ultimately it was making a new agency determination, on remand, that the post-preliminary questionnaires issued by Commerce did satisfy Commerce's verification requirements under section 782(i) of the Act.[10]

In the *Remand Order*, the Court held that Commerce had satisfactorily explained why verification had not taken place during the investigation:

> Commerce explained its view of why in-person, on-site verification in India was not possible during the original investigation in 2020. Commerce has also now

---

[4] *Id.*
[5] *See Final Determination* IDM at 2. In the *Final Determination*, Commerce cited section 776(a)(2)(D) of the Tariff Act of 1930, as amended (the Act), which provides that in situations where information has been provided, but the information cannot be verified, Commerce will use "facts otherwise available" in reaching the applicable determination.
[6] *See Bonney Forge Corporation v. United States*, 560 F. Supp. 3d 1303, 1311-13 (CIT 2022) (*Prior Remand Order*).
[7] *Id.* at 1316.
[8] *See Final Results of Redetermination Pursuant to Court Remand, Bonney Forge Corporation and United Steel, Paper and Forestry, Rubber, Manufacturing and Service Workers International Union v. United States*, Court No. 1:20-cv-03837, Slip Op. No. 22-8, dated June 30, 2022.
[9] *Id.* at 3-11, 14-15.
[10] *Id.* at 2.

2

explained its view of why a virtual verification was not possible in 2020, filling the gap identified by this Court in its prior decision.[11]

However, the Court also held that Commerce "failed to acknowledge Bonney Forge's reliance interests. The agency also refused to explain why no alternative actions to verify Shakti's information were needed either in 2020 or during the remand period."[12] Thus the Court remanded Commerce "to rectify these deficiencies."[13]

In compliance with the *Remand Order*, Commerce undertook an in-person, on-site verification of Shakti's information during the remand period provided by the Court.

## II.    BACKGROUND

On November 1, 2023, Commerce issued sales and cost verification agendas to Shakti.[14] From November 6 through 11, 2023, the verification took place at Shakti's facilities in Rajkot, Gujarat, India.[15] On January 9, 2024, Commerce placed verification reports on the record discussing the methods and results of the sales and cost verifications consistent with 19 CFR 351.307(c).[16] On January 16, 2024, Commerce issued draft results of redetermination.[17] On January 24, 2024, we received comments on the Draft Remand from the petitioners and Shakti.[18] No other comments were received. After reviewing the comments received, we have made no

---

[11] *Remand Order* at 8.
[12] *Id.* at 13.
[13] *Id.*
[14] *See* Memorandum, "Sales Verification Agenda," dated November 2, 2023; and Memorandum, "Cost Verification Agenda," dated November 1, 2023.
[15] *Id.*
[16] *See* Memorandum, "Sales Verification Report," dated January 9, 2024; and Memorandum, "Cost Verification Report," dated January 9, 2024 (Cost Report).
[17] *See Bonney Forge Corporation and United Steel, Paper and Forestry, Rubber, Manufacturing and Service Workers International Union v. United States*, Court No. 20-03837, Slip Op. No. 23-120 (CIT August 21, 2023), Draft Results of Redetermination Pursuant to Court Remand, issued January 16, 2024 (Draft Remand).
[18] *See* Bonney Forge's Letter, "Comments on Draft Remand Redetermination," dated January 24, 2024 (Bonney Forge Comments); and Shakti's Letter, "Comments on Commerce's Draft Results of Redetermination Pursuant to Court Remand," dated January 24, 2024 (Shakti Comments).

3

changes to the Draft Remand. The Draft Remand's analysis is restated below with no modification. Following the discussion of our analysis, we address all comments received.

### III. FINAL RESULTS OF REDETERMINATION

Commerce has now undertaken and completed an in-person, on-site verification of Shakti's sales and cost information, as described above. As such, the verification methods undertaken pursuant to the *Remand Order* are consistent with the general verification practice of Commerce prior to the onset of the COVID-19 pandemic. As Commerce's in-person verification on remand of Shakti's sales and cost information pursuant to section 781(i) of the Act is consistent with Commerce's longstanding general verification practice, we find it is no longer necessary to consider any potential reliance interests of the petitioners that may be implicated by conducting an alternative type of verification under section 781(i) of the Act as identified by the Court.

Moreover, pursuant to the results of verification, Commerce is making no adjustments to the analysis or calculations of the *Final Determination*.[19] Therefore, upon redetermination, Commerce continues to determine that Shakti made no sales at LTFV during the period of investigation.

### IV. COMMENTS

*Bonney Forge Comments*

- The cost verification exhibits and the Cost Report show that Commerce failed to conduct a meaningful verification that would address and resolve concerns raised earlier by the petitioners. The petitioners' position throughout these proceedings and litigation, as articulated in their original case brief and in briefs filed at the CIT, has been that the

---

[19] *Id.*

    power and labor costs reported by Shakti are inconsistent with its description of its production process.[20]

- In its description of its production processes, Shakti included extensive language that distinguished between the processing performed for FSF sold to traders in the home market and FSF sold to end-users/original equipment manufacturers (OEMs) in the home market and for export. Shakti stated in multiple questionnaire responses that "computer numerical control" (CNC) machine finishing was performed only on finished FSF sold either in the home market to end-users or to the export market in the U.S.[21] In their case brief, the petitioners demonstrated that Shakti's reporting of costs did not conform to its description of its actual processing for different markets.[22]

- Shakti attempted to back out of its inconsistent processing descriptions by asserting that it had been mistaken and that when it spoke of not processing its products on CNC machines, it was actually only referring to its unfinished forgings.[23] Yet, the distinction in the second stage of processing (machining process and packing) could only be applied to finished FSF as it had to do with finishing performed on unfinished FSF and, as Shakti has said, no finishing was performed on unfinished FSF. Despite the fact that Shakti's explanations made no sense, Commerce accepted them and relied on Shakti's reported costs for its dumping analysis.[24]

---

[20] *See* Bonney Forge Comments at 2 (citing *Bonney Forge v. United States,* Court No. 20-03837 (CIT); Plaintiffs' 56.2 Brief, dated April 26, 2021 (Plaintiffs' 56.2 Brief), at 14).
[21] *Id.* at 3 (citing Shakti's Letter, "Response for Section A Questionnaire Response," dated February 5, 2020, at Exhibit A-10(a)).
[22] *Id.* at 4 (citing Petitioners' Letter, "Submission of Case Brief," dated August 11, 2020 (Petitioners Case Brief), at 11-12).
[23] *Id.* (citing Shakti's Letter, "Response for 4th Supplemental Questionnaire Response," dated April 27, 2020, at 1-4).
[24] *Id.* (citing Plaintiffs' 56.2 Brief at 23-24).

- Given the salience of this issue both during the investigation and at the CIT, the Commerce cost verification team should have focused on it.[25]

- In order to address the processing issue raised by the petitioners, one would have expected Commerce to examine documentation for an order of products being sold to traders in the home market, which apparently never happened.[26]

- The Cost Report notes only that "{a}ccording to company officials, all export and domestic sales pass through the forging and machining processes" and that "for domestic sales to traders and end-users that were 'forged,' they do not pass through the finishing process."[27]

- At the CIT, counsel for Shakti filed a response brief that distinguished "other machining processes (*i.e.*, boring & socket preparation ) where {Shakti} provided the distinction between processes performed on the CNC machine and lathe machine based on market" from the threading and drilling steps.[28] Shakti has thereby admitted that the petitioners' position is correct: the company did bore and prepare the sockets for forgings destined for different markets differently such that, as demonstrated in the exhibits to the petitioners' case brief, Shakti has misreported its processing costs.[29]

- As no process documentation for FSF sold to traders in the home market was verified, the cost reporting relied upon in the *Final Determination* remains unsupported and

---

[25] *Id.*
[26] *Id* at 5.
[27] *Id.* at 5-6.
[28] *Id.* at 6 (citing *Bonney Forge v. United States,* Court No. 20-03837 (CIT); Response Brief of Shakti Forge Industries Pvt. Ltd. to Plaintiffs' Rule 56.2 Motion for Judgment upon the Agency Record, dated July 2, 2021, at 11) (placed on the record of this segment on January 16, 2024)).
[29] *Id.* at 6 (citing Petitioners Case Brief at 6-12 and Exhibit 2).

unverified.  As a result, we continue to urge Commerce to rely on adverse facts available in its final remand redetermination.[30]

*Shakti Comments*[31]

- Pursuant to the Court's remand, Commerce fully complied with the Court's instructions and followed its longstanding general verification practice and conducted on-site verification in this case of Shakti's sales and cost information.  In its final results of redetermination pursuant to court remand, Commerce should continue to make the same determinations as in its preliminary draft results of redetermination.

**Commerce Position:**  Commerce disagrees with petitioner that it should rely on facts available with an adverse inference for purposes of this remand redetermination.  Commerce addressed the petitioners' concerns with Shakti's cost reporting in detail in the *Final Determination*.  Specifically, we stated:[32]

> Shakti explained that the cases where it was mentioned that several steps are not undertaken for sales to home market distributors are pertaining only to unfinished forged fittings.  Since these fittings are not fully finished, these several steps are not required to be performed.[33]  Shakti identified the unfinished fittings as those CONNUMs {control numbers (CONNUMs)} that start with "2" that do not require finishing costs.  CONNUMs that start with "1" are finished fittings that require finishing costs, hence processing costs were assigned to those CONNUMs sold in the home market.  The products that the petitioners included in their "exception" report were sold to traders in the home market that were found to have processing costs refer to finished fittings, "1," and are expected to have finishing costs.  We note some products produced that were identified as having no finishing costs reported in "Jobwork1" schedule for third party tollers were done in-house and therefore, the finishing costs are allocated in the fields labor and power.[34]
>
> In the case of products sold to end users in the home market and for export found to be without processing costs, and those products that were produced in-house,

---

[30] *Id.* at 7.
[31] *See* Shakti Comments at 2.
[32] *See Final Determination* IDM at 19.
[33] *See* Shakti's Letter, "Full Response for 4th Supplemental Questionnaire Response," dated May 4, 2020, at 1-2.
[34] *See Final Determination* IDM at 19.

but found to be without power costs, we disagree with the petitioners that the appropriate costs were not allocated for these products. We were able to confirm that, as Shakti explained, the processing costs are allocated under either one of the three processing steps/costs the product went through for finishing.[35] An item can undergo any of the three processes or in combination of above three processes, depending upon the market (domestic or export) where the product is sold and depending upon the availability of machines where the product is produced as per the actual experience of Shakti.[36]

Although raised by the petitioners in their brief before the Court,[37] the Court has not yet addressed Commerce's conclusions on this issue. Rather, the Court held that, despite Commerce's satisfaction with the accuracy of Shakti's information, Commerce denied the legitimacy of the petitioners' reliance interests, rooted in a past practice of on-site, in-person verifications, and refused to address whether additional steps were warranted to verify the information on the record.[38] The Court then ordered Commerce to reconsider its decision on verification.[39]

As stated in the analysis above, Commerce has complied with the Court's order by conducting on-site, in-person, sales and cost verifications consistent with its past practice. Moreover, because Commerce has conducted verification consistent with its past practice, the petitioners' reliance interests are no longer implicated. Part of Commerce's past practice is the wide latitude Commerce has in determining what topics to address at verification, the procedures for verifying, and when it is satisfied with the information presented at verification. For example, the Court of Appeals for the Federal Circuit has stated that 1) "The statute gives

---

[35] *See* Shakti's Letter, "Response for 6th Supplemental Questionnaire Response," dated July 23, 2020, at Exhibits S5-6, S5-7, and S5-8.
[36] *See* Shakti's Letter, "SFIPL's Rebuttal Comments on Petitioner Second and Third Post Preliminary Comment," dated July 13, 2020, at 8-9.
[37] *See Remand Order* at 5. "Plaintiffs filed comments on the Remand Results with the Court . . . arguing that . . . Commerce's determination that Shakti's submitted cost information is accurate is unsupported by substantial evidence."
[38] *See, e.g., Remand Order* at 9.
[39] *See Remand Order* at 13.

8

Commerce wide latitude in its verification procedures;"[40] 2) "Congress has implicitly delegated to Commerce the latitude to derive verification procedures ad hoc;"[41] and, 3) "The statute gives Commerce wide latitude in its verification procedures."[42]  Further, the CIT has held that, "The decision to select a particular methodology rests solely within Commerce's sound discretion;"[43] and, that "Congress intended that {Commerce} have latitude in its verification procedures and that it not be required to comply with *all requests for specific types of investigation*."[44]

Thus, Commerce has wide latitude in determining whether to verify specific matters at verification and in determining when a matter has been adequately verified to Commerce's satisfaction, barring an abuse of discretion by the agency.  This discretion is underscored when Commerce has already determined that the specific concerns raised by the petitioners have been adequately addressed through the questionnaire responses and briefs of Shakti, as Commerce concluded in the *Final Determination*, quoted above.

Nevertheless, Commerce provides the following explanation of how its verification addressed the concerns highlighted by the petitioners.  During verification, Commerce verifiers reviewed and discussed with Shakti officials the methodologies used to account for and to allocate materials, labor, and overhead to each of the products produced.[45]  In addition, Commerce officials discussed with company officials the production process for FSF and conducted a tour of Shakti's production facilities to observe each of the processing steps.

---

[40] *See American Alloys, Inc. v. United States*, 30 F.3d 1469. 1475 (Fed. Cir. 1994) (concluding that Commerce's verification in combination with an examination of questionnaire responses constituted substantial evidence in support of Commerce's position).
[41] *See Micron Technology, Inc. v. United States*, 117 F.3d 1386, 1396 (Fed. Cir. 1997) (citing *Torrington Company v. United States*, 68 F.3d 1347, 1351 (Fed. Cir. 1995) ("{A}gencies with statutory enforcement responsibilities enjoy broad discretion in allocating investigative and enforcement resources.")).
[42] *See American Alloys, Inc. v. United States*, 30 F.3d 1469 (Fed. Cir. 1994).
[43] *See Hercules Inc. v. United States*, 673 F. Supp. 454, 469 (CIT 1987).
[44] *See Kerr-McGee Chem. Corp. v. United States*, 739 F. Supp. 613, 628 (CIT 1990) (emphasis added).
[45] *See* Cost Report at 5-7.

Commerce verifiers conducted a thorough review of Shakti's allocation methodologies for all cost elements, including the processing costs at issue.[46] In particular, Commerce verifiers traced the quantities and values Shakti used to calculate the submitted processing costs for the unique products included in selected CONNUMs to Shakti's accounting system and to the underlying source documents (*e.g.*, payroll records, invoices, *etc.*).[47]

With regard to the machining process, we disagree with the petitioners that Shakti provided unreasonable explanations for its prior inconsistent statements when it explained lack of processing on CNC machines, and we disagree that Shakti only referred to its unfinished forgings. Shakti stated that several processing steps are not undertaken for sales of unfinished forged fittings to traders in the home market.[48] We find reasonable Shakti's later explanation that when it clarified its position on the un-forged fittings, it did not mean to suggest that it does not process products broadly on CNC machines. The unfinished fittings were marked as "forged" in Shakti's cost worksheets submitted to Commerce. We walked through these worksheets with Shakti officials during verification and found that no machining costs assigned were associated with these "forged" fittings in the direct labor/power or jobwork1 schedule.[49] The below discussion addresses those products with allocated CNC machining costs.

We disagree with the petitioners that Shakti admitted that the petitioners were correct that Shakti necessarily did machining for forgings differently for different markets and that it therefore misreported its costs. In asserting this, the petitioner failed to include all of Shakti's explanations that an item can undergo any of the three reported processes (1) machining time and

---

[46] *See* Cost Report at 17-22.
[47] *Id.*
[48] *See* Shakti's Letter, "Forged Steel Fittings from India: Response for 4th Questionnaire, dated April 27, 2020 ,at 1-4; *see also* Shakti's Letter, "Forged Steel Fittings from India; Submission of Rebuttal Case Brief," dated August 24, 2020, at 14.
[49] *See* Cost Report at 7 and Exhibit CVE-4 page 7; *see also* Shakti's Letter, "Forged Steel Fittings from India: Response for 6th Supplemental Questionnaire," dated July 23, 2020 (SDQR6), at Exhibits S5-6, S5-7, and S5-8.

high speed drilling machine, (2) machining time for conventional lathe and (3) machine time of CNC machines), or in combination of above three processes "depending upon the market (domestic or export)" but also "depending upon the availability of machine."[50] During the plant tour, we observed the machining process and observed that the machines are adjacent to each other[51] and then we walked through the cost allocation worksheets with Shakti's officials. We found that all finished forgings had reported machining costs either in process 1, 2, or 3 (in-house) or jobwork1 (tollers).[52] We therefore continue to find Shakti's clarification reasonable that an item can undergo any of the three reported processes depending upon the availability of the machine, per Shakti's experience.

The CONNUMs that Commerce selected for review during verification were comprised of FSF that were sold to the Unites States and to both traders and end-users in the home market.[53] During our verification of Shakti's processing costs, while we did not specifically select for review the machining process on production order details for a sale intended for a domestic order, we did review the details and cost allocation for one of Shakti's production orders that was destined for the U. S. market. In doing so, we discussed with Shakti officials the specific production process that the particular product passes through. We did not identify any discrepancies between our observations during the plant tour, where we observed all steps in the production process, and the information in Shakti's response.[54] Based on our review of the selected U.S. production order, we determined that the costs were allocated reasonably to that product and that Shakti had properly reported the relevant processing costs of the specific

---

[50] *See* Shakti's Letter, "Forged Steel Fittings from India, Response Brief of Shakti Forge Industries Pvt. Ltd. To Plantiffs' Rule 56.2 Motion for Judgment upon the Agency Record," dated July 2, 2021, at 13.
[51] *See* Cost Report at Exhibit CVE-4 pages 9 and 11.
[52] *See* Cost Report at 5-6; *see also* SDQR6 at Exhibits S5-6, S5-7, and S5-8.
[53] *Id.*
[54] *See* Cost Report at Exhibit CVE-10.

11

processes that the reviewed production order passed through.[55] Based on the procedures and testing Commerce officials undertook during the on-site cost verification, Commerce did not identify in its report any discrepancies either with Shakti's narrative representations as to its production processes or with the company's submitted cost data.[56]

## V.  FINAL RESULTS OF REDETERMINATION

Upon redetermination, pursuant to verification and our review of the comments received concerning the Draft Remand, Commerce continues to determine that Shakti made no sales at LTFV during the period of investigation.

2/22/2024

X _____

Signed by: RYAN MAJERUS

_____
Ryan Majerus
Deputy Assistant Secretary
  for Policy and Negotiations,
  performing the non-exclusive functions and duties
  of the Assistant Secretary for Enforcement and Compliance

---

[55] *See* Cost Report at 17-22.
[56] *See* Cost Report at 2 (No exceptions noted on the first page of the report).