UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| BONNEY FORGE CORPORATION, and UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant, and<br><br>SHAKTI FORGE INDUSTRIES PVT. LTD,<br><br>Defendant-Intervenor.<br>. | Hon. Stephen A. Vaden<br>Ct. No. 20-03837<br><br>**NON-CONFIDENTIAL VERSION** |

## COMMENTS ON SECOND REMAND REDETERMINATION

Roger B. Schagrin
Elizabeth J. Drake
William A. Fennell
SCHAGRIN ASSOCIATES
900 Seventh Street NW
Washington, D.C. 20001
(202) 223-1700

*Counsel for Bonney Forge Corporation
and the United Steel, Paper and Forestry,
Rubber, Manufacturing, Energy, Allied
Industrial and Service Workers
International Union*

Dated:  March 25, 2024

**TABLE OF CONTENTS**

I. Introduction ........................................................................................................................ 1

II. Summary of Plaintiffs' Position ......................................................................................... 2

III. Commerce's Verification Provides No Support for Its Position that SFIPL's Processing Costs Were Accurately Allocated. ...................................................................................... 4

IV. SFIPL Has Admitted that It Processed Forgings Differently depending on the Targeted Market. ................................................................................................................................ 8

V. Conclusion ......................................................................................................................... 9

# TABLE OF AUTHORITIES

**Cases**

*Bomont Indus. v. United States*, 14 CIT 208, 733 F.Supp. 1507 (1990) ........................................ 7

*Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29 (1983) ................................................................................................................................................ 4

*Since Hardware (Guangzhou) Co., Ltd. v. United States*, 35 CIT 1670 (2011) ............................. 7

*Tianjin Magnesium Int'l Co. v. United States,* 34 CIT 980, 722 F.Supp.2d 1322 (2010) .............. 4

I. **INTRODUCTION**

In response to this Court's opinion in *Bonney Forge Corp. v. United States,* 47 CIT __, Slip Op. 23-120 (CIT 20-3837, Aug. 21, 2023) (ECF 86; APPX14363-14376 ("*Bonney Forge*"), the Department of Commerce ("Commerce") has filed a second remand redetermination with the Court. "Final Results of Redetermination Pursuant to Court Remand" (ECF No. 90) ("*Redetermination*") (APPX14541-14552). Per the Court's opinion and its revised scheduling order (ECF No. 88), Bonney Forge Corporation and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC (collectively, the "Petitioners") provide these comments in response.

In its second remand proceeding, Commerce undertook a verification in India of Shakti Forge Industries PVT. Ltd.'s ("SFIPL") sales and costs questionnaire responses from the original investigation. *See Redetermination* at 3 (APPX14543). Following verification, Commerce produced a "Sales Verification Report" and a "Cost Verification Report." *Id.* Commerce determined that pursuant to the results of verification, it was making no adjustments to the analysis or calculation of its original final determination. *Id.* at 4 (APPX14544). Nothing in either of Commerce's reports addressed the specific substantive issue raised by Petitioners at the agency below and in this litigation. *See* Plaintiffs' Comments on Draft Remand Redetermination at 4-6 (APPX92356-92358).

As we review below, Commerce has taken positions that are not supported by substantial evidence throughout these proceedings. The agency accepted an explanation of the cost reporting by the respondent SFIPL that did not make sense; it refused to verify SFIPL's information to determine its accuracy; and, after intervention by this Court, it sent its staff to

1

India to perform verifications that ignored the specific issue raised by Petitioners, *i.e.*, whether SFIPL had accurately reported its costs for products sold to traders in SFIPL's home market.

For the reasons below, we respectfully request that this Court again remand to Commerce with instructions to reconsider the cost reporting issues identified by Petitioners and support its determination with substantial evidence including, if necessary, a verification of SFIPL's responses with respect to the specific issues Petitioners have repeatedly identified before the agency and the Court.

**II.     SUMMARY OF PLAINTIFFS' POSITION**

In the 56.2 brief that Plaintiffs filed at the Court of International Trade ("CIT") in the litigation leading to this remand, we explained our challenge to the Department of Commerce's ("Commerce") final determination:

> SFIPL reported finishing costs on CNC machines for the fittings that it sold to [               ], and it conversely failed to report finishing costs on CNC machines for fittings sold to [          ]. Both of these were contrary to SFIPL's narrative description of its manufacturing processes, in which SFIPL stated that it performed CNC machine finishing for fittings sold in the United States but not for fittings sold to traders in the home market. This erroneous reporting had the effect of [
> 
>                                                                                                                  ].

Plaintiffs' 56.2 Brief at 8 (ECF No. 25).

In its description of its production processes, SFIPL included extensive language that distinguished between the processing performed for fittings sold to traders in the home market and those sold to end-users/OEMs in the home market and for export. SFIPL stated in multiple questionnaire responses that CNC machine finishing was performed only on finished steel forgings sold either in the home market to end-users or to the export market in the U.S. *See* SFIPL Section A Questionnaire Response at Exhibit A-10(a) (Feb. 5, 2020) ("*SFIPL Sec. A*

2

*QR*") (APPX3636-3639); *see also* SFIPL Rebuttal Comment on Petitioner Second and Third Post Preliminary Comment at 8-9 (July 13, 2020) (APPX12136-12137).  For example, it said regarding one of the steps in the second stage of processing (the "Machining Process & Packing" stage):

> Boring & End Connection preparation
>
> After drilling, forged steel fitting's inside bore is turn-machined, then threaded or socket prepared as per design standard. In process of Machining there is major difference in Domestic trader's order and export orders. There will be no boring after drilling and socket preparation will be done in conventional laths in domestic orders.
>
> However in export orders each fittings will be machined 100% Boring and end preparation with CNC Machines.

*SFIPL Sec. A QR* at Exhibit A-10(a) (APPX3638).

This language indicates that different processing was performed on finished fittings for domestic traders' orders and finished fittings for export: the latter are not bored and the socket preparation performed on them is done on conventional lathes while the boring and end preparation for export fittings is done entirely on CNC machines. In their case brief, Petitioners demonstrated that SFIPL's reporting of costs did not conform to its description of its actual processing for different markets.  Petitioners' Case Brief at 11-12 (Aug. 11, 2020) (APPX91580-91581).

SFIPL attempted to back out of its inconsistent processing descriptions by asserting that it had been mistaken, and that when it spoke of not processing the products sold to traders on CNC machines, it was actually only referring to its unfinished forgings.  *See* SFIPL Fourth Supplemental Questionnaire Response at 1-4 (Apr. 27, 2020) (APPX86494-86497).  Yet, the distinction in the second stage of processing (Machining Process & Packing) could only be applied to finished fittings as it had to do with the finishing performed on finished fittings, and,

as SFIPL has said, no finishing was performed on unfinished fittings. Despite the fact that SFIPL's explanations made no sense, Commerce accepted them and relied on SFIPL's reported costs for its dumping analysis. *See* Plaintiffs' 56.2 Brief at 23-24.

The substantial evidence standard of review requires that Commerce "articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Tianjin Magnesium Int'l Co. v. United States,* 34 CIT 980, 982, 722 F.Supp.2d 1322, 1328 (2010) (*quoting Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983)). As Petitioners have shown in their briefs, SFIPL's assertion that it was actually distinguishing the processing performed on unfinished versus finished forgings is not relevant to its discussion of the processing it performed on finished forgings. *See* Plaintiffs' 56.2 Brief at 22-24 (ECF No. 25) and Plaintiffs' Reply Brief at 13-17 (ECF No. 41). Thus, there is no rational connection between the facts of record and Commerce's conclusion that SFIPL did not process forgings differently depending on market of sale.

### III. COMMERCE'S VERIFICATION PROVIDES NO SUPPORT FOR ITS POSITION THAT SFIPL'S PROCESSING COSTS WERE ACCURATELY ALLOCATED.

The verification that Commerce undertook in the context of remand from this Court provided an opportunity for the agency to address the issues raised by Petitioners and resolve them. Yet both the cost verification exhibits and Commerce's cost verification report show that it failed to conduct a meaningful verification that would have allowed it to do so.

In its *Redetermination*, Commerce stated that it "is making no adjustments to the analysis or calculations of the *Final Determination*" and "continues to determine that Shakti made no sales at LTFV during the period of investigation." *Redetermination* at 4 (APPX14544) (footnote omitted). The record in this proceeding warrants a different result. Petitioners' position

4

throughout these proceedings and litigation, as articulated in its original case brief before Commerce and in briefs filed at the Court of International Trade, has been that the power and labor costs reported by SFIPL are inconsistent with its description of its production process. *See* Plaintiffs' 56.2 Brief at 14. This means that Commerce should not have relied on SFIPL's reported costs for its dumping determination. Nothing in Commerce's cost verification supports any contrary position. In fact, there is information in the verification report that supports the conclusion that Commerce should not have relied on SFIPL's cost information.

Given the salience of this issue both during the investigation and before this Court, the Commerce cost verification team should have focused on it. What is in the record does show that the Commerce verifiers could easily have determined whether or not SFIPL had misreported its costs. SFIPL includes in its cost verification exhibits a [

] SFIPL Verification Exhibits, Exhibit CVE-4, p. 13 (Nov. 13, 2023) (APPX91869).

These [

] Apparently, this did not happen. The first sets of SFIPL's [

] *See id.* Exhibit CVE-4, pp. 14-20 (APPX91870-91876). The next group of the [

] *Id.* at Exhibit CVE-4, pp. 21-35 (APPX91877-91891). The set concludes with [

] *Id.* at Exhibit CVE-4, pp. 36-40 (APPX91892-91896). Thus, there is no order-specific documentation for the actual [

] In sum, there is no documentation demonstrating what processes were performed on the selected order, much less an order from a [            ]

Commerce asserts in its *Redetermination* that the CONNUMs it "selected for review during verification were comprised of FSF that were sold to the United States and to both traders and end-users in the home market." *Redetermination* at 11 (APPX14551). In support of this statement, Commerce cites to its Cost Report at 5-6 and to SFIPL's sixth supplemental questionnaire response at Exhibits S5-6, S5-7, and S5-8. *Id.* at n.53. In fact, Commerce's Cost Verification Report makes no reference to the market in which the products it examined were sold on either page 5 or on page 6 of the cited report. Commerce Verification of the Cost Response of Shakti Forge Industries Pvt. Ltd. Pursuant to Court-Ordered Remand Redetermination of Forged Steel Fittings from India at 7 (Dec. 29, 2023) (APPX92333) ("*Cost Verif. Rpt.*"). The two CONNUMs that Commerce reviewed were [

6

]. *Id.* at 2 (APPX92328). These two [

] *See, e.g.,* SFIPL's Sixth Supplemental Questionnaire Response at Exhibit S-5-6 (APPX90565). In fact, as Petitioners showed in their case brief, these products were [

] *See* Petitioners' Case Brief at Exhibit 2 (APPX91628). Thus, contrary to its assertion, Commerce chose not to examine any CONNUMs [                    ]

This is surprising, as Commerce had an opportunity to address the issue raised by Petitioners in their Case Brief and in this litigation simply by requiring that SFIPL provide documentation that showed CNC processing performed on products sold by SFIPL to a [        ].

Commerce's remand cost verification report does not further elucidate this issue, noting only that "{a}ccording to company officials, all export and domestic sales pass through the forging and machining processes" and that "for domestic sales to traders and end-users that were 'forged', they do not pass through the finishing process." *Cost Verif. Rpt.* at 7 (APPX92333).

As this Court has said, "{v}erification is the process by which Commerce confirms the truth and accuracy of information and materials in a respondent's questionnaires." *Since Hardware (Guangzhou) Co., Ltd. v. United States*, 35 CIT 1670, 1679-80 (2011) (citing *Bomont Indus. v. United States*, 14 CIT 208, 209, 733 F.Supp. 1507, 1508 (1990) ("Verification is like an audit, the purpose of which is to test information provided by a party for accuracy and completeness.")).

Commerce could have resolved this issue at verification but failed to do so: Commerce failed to obtain any documentation that supported its acceptance of SFIPL's cost reporting, and

Commerce failed to request any documentation to support SFIPL's position that it actually processed forgings sold to traders on CNC machines.

Commerce's verification failed to adequately address these issues or provide necessary support for Commerce's final results, as no process documentation for fittings sold to traders in the home market was requested or verified. Thus, the cost reporting relied upon in the final results remains unsupported and unverified.

### IV. SFIPL HAS ADMITTED THAT IT PROCESSED FORGINGS DIFFERENTLY DEPENDING ON THE TARGETED MARKET.

In addition to the failures identified above, the record now contains an admission by SFIPL that it did process forgings for different markets differently. Before this Court, counsel for SFIPL filed a response brief that distinguished "other machining processes (i.e. boring & socket preparation) where SFIPL provided the distinction between processes performed on the CNC machine and lathe machine based on market" from the threading and drilling steps. Response Brief of Shakti Forge Industries Pvt. Ltd. to Plaintiffs' Rule 56.2 Motion at 11 (July 2, 2021) (ECF No. 38) (emphasis added). SFIPL has thereby admitted that Petitioners' position is correct: the company did bore and prepare the sockets for forgings destined for different markets differently (*i.e.*, on CNC machines) such that by reporting CNC finishing costs for [

], SFIPL has misreported its processing costs. *See* Petitioners' Case Brief at 6-12 (APPX91575-91581) and *e.g.* Exhibit 2, report 1(b) (APPX91641-91642). As Petitioners also explained in their case brief, Commerce should address SFIPL's misreporting by relying on facts available with an adverse inference for its costs and determine a revised dumping margin for the company. *See* Petitioners' Case Brief at 17 (APPX91586).

8

## V. CONCLUSION

Bonney Forge and its workers have to date been denied the relief they are entitled to under the law. Commerce has thwarted their attempt to obtain relief by accepting information that is unsupported by substantial evidence, by refusing to verify that information, and now by undertaking a verification that did not even attempt to address the issues that Petitioners have raised.

For these reasons, Petitioners respectfully request that this Court remand to Commerce with instructions to reconsider the cost reporting issues identified by Petitioners and support its determination with substantial evidence including, if necessary, a verification of SFIPL's responses with respect to the specific issues Petitioners have repeatedly identified before the agency and the Court.

Respectfully submitted,

/s/ William Fennell

Roger B. Schagrin
Elizabeth J. Drake
William A. Fennell
SCHAGRIN ASSOCIATES
900 Seventh Street NW
Washington, D.C. 20001
(202) 223-1700
*Counsel for Bonney Forge Corporation, and United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union*

NON-CONFIDENTIAL VERSION

## WORD COUNT CERTIFICATE OF COMPLIANCE

      In accordance with the Chambers Procedures of the United States Court of International Trade, the undersigned certifies that his brief complies with the word limitations set forth in the Chambers Procedures. Specifically, excluding those exempted portions of the brief, as set forth in 2 B (1) of the Chambers Procedures, I hereby certify that this brief contains 2,513 words. In accordance with the Chambers Procedures, this certified word count is based on the word count feature in the word processing system (Microsoft Word) used to prepare this brief.

                                                /s/ William Fennell
                                                 William Fennell