# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE THE HONORABLE STEPHEN A. VADEN, JUDGE

| | |
|---|---|
| BONNEY FORGE CORPORATION, and UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, <br><br>　　　　　Plaintiffs, <br>　　v. <br><br>UNITED STATES, <br><br>　　　　　Defendant, <br><br>　　and <br><br>SHAKTI FORGE INDUSTRIES PVT. LTD, <br><br>　　　　　Defendant-Intervenor. | Court No. 20-03837 <br><br> Public Version <br> BPI on Page 7 |

## DEFENDANT'S RESPONSE TO PLAINTIFFS' COMMENTS ON SECOND REMAND REDETERMINATION

Defendant, the United States, respectfully submits this response to the comments submitted by plaintiffs, Bonney Forge Corporation (Bonney Forge), and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union (USW), Pls. Cmnts., ECF Nos. 96, 97, concerning the Department of Commerce's second remand redetermination filed in accordance with this Court's decision and remand order in *Bonney Forge Corporation v. United States*, Court No. 20-03837, Slip Op. No. 23-120, 2023 WL 5353699 (Ct. Int'l Trade 2023) (*Bonney Forge II*). *See* Final Results of Redetermination Pursuant to Court Order (Feb. 22, 2024), ECF No. 90 (Second Remand Redetermination), APPX14541-14552. The Court should sustain Commerce's second remand

redetermination because it complies with the remand opinion and is supported by substantial evidence and otherwise in accordance with law.

## BACKGROUND

### I.     The Administrative Determination Under Review And First Remand Order

The administrative determination under review is the final determination in the less-than-fair-value investigation covering forged steel fittings from India. *Forged Steel Fittings from India*, 85 Fed. Reg. 66,306 (Dep't of Commerce Oct. 19, 2020) (final LTFV determ.), APPX14186-14189, and accompanying Issues and Decisions Memorandum (Dep't of Commerce Oct. 13, 2020) (IDM), APPX14126-14148. The period of investigation is October 1, 2018, to September 30, 2019.

In the underlying review, Commerce selected Shakti Forge Industries PVT Ltd (Shakti) as one of the mandatory respondents. *See* Mandatory Respondents Selection, APPX2900-2905. But due to the ongoing Global Level 4 Travel Advisory preventing Commerce personnel from traveling, Commerce canceled on-site (or virtual) verification and confirmed it would be unable to conduct verification pursuant to 19 U.S.C. § 1677m(i)(1). *See* Cancellation of Verification and Briefing Schedule (Dep't of Commerce Aug. 4, 2020), APPX13906-13909. Commerce instead informed the parties that because information was provided that could not be verified as provided under section 1677m(i), it would use "facts otherwise available" in reaching its determination, relying on record information. *Id.*, APPX13906-13907.

On February 2, 2022, in its remand order, the Court remanded the final determination to Commerce to reconsider its decision "not to engage in verification, virtual or otherwise," and required Commerce on remand to "either do its job and perform some type of verification or explain why its decision to fail to verify is both legal *and* not an abuse of discretion." *Bonney*

2

*Forge Corp. v. United States*, 560 F. Supp. 3d 1303, 1316 (Ct. Int'l Trade 2022) (*Bonney Forge I*) (emphasis in original). On remand, the Court set forth two options for Commerce: (1) to "offer a fuller explanation of its reasoning at the time of the action it defends;" or (2) "it may take new agency action." *Id.* at 1313 (citing *Dep't of Homeland Sec. v. Regents of the Univ. of Ca.*, 140 S. Ct. 1891, 1907-08 (2020)). Considering that "Commerce did not initially offer *any* explanation of its reasoning," the Court explained that it "doubts very much whether Commerce can in fact provide a 'fuller' explanation of its decision to forego virtual verification in this case." *Id.* (emphasis in original). Rather, the Court explained that "{a} new decision based on *current* conditions is most likely required." *Id.* (emphasis in original).

In the first remand redetermination, Commerce made a new determination, finding that the post-preliminary questionnaires that Commerce had issued Shakti in-lieu of onsite verification fulfilled Commerce's verification requirements under 19 U.S.C. § 1677m(i), and were consistent with Commerce's current procedures. First Remand Redetermination at 23-24, APPX14348-14349. Commerce explained that it "is no longer maintaining its position" from the final determination that "verification was not possible, and instead is concluding on remand that verification has already been completed in this investigation," such that "consideration of current verification practices and possibilities appears unnecessary." *Id.* at 23, APPX14348.

II. **The Court's Second Remand Order And Commerce's Second Remand Redetermination**

On August 21, 2023, the Court remanded the first remand determination to Commerce to again reconsider its decision on verification, consistent with the Court's opinion. *See Bonney Forge II*, 2023 WL 5353699. First, the Court held that "Commerce denied the legitimacy of Bonney Forge's reliance interests, which are rooted in Commerce's consistent past practice of performing on-site or in-person verifications." *Id.* at *4. And "{g}iven its admitted past practice

3

of on-site or in-person verification and the deviation from that practice in the Remand Results, Commerce was obligated to acknowledge Bonney Forge's reliance interests and explain why this departure from past practice would not unduly harm those interests{,}" with "{n}o such discussion" in the remand redetermination.  *Id.*

Second, the Court held that the "Remand Results also fall short in their consideration of alternatives during the remand period" because although Commerce "explained why it could not perform on-site verification in 2020 and why virtual verification might not have been feasible during the pandemic . . . there is no discussion of why the agency refused to take further steps to verify the information during the remand period{.}" *Id.* at *5.  Thus, the Court held that "Commerce must explain what other steps closer to an on-site or in-person verification it has considered — now and in 2020 — and why it rejected those alternatives in favor of questionnaires." *Id.*

Consistent with *Bonney Forge II*, in the second remand redetermination, Commerce conducted in-person and on-site sales and cost verifications at Shakti's facilities in Rajkot, Gujarat, India.  Second Remand Redetermination at 3, APPX14543.  Commerce later placed post-verification reports on the record providing a factual report of the procedures performed and results obtained during the verification consistent with 19 C.F.R. § 351.307(c).  *See* Sales Verification Report, APPX14455-14466; Cost Verification Report, APPX92888-92913.  After completing an in-person and onsite verification of Shakti's sales and cost information consistent with the general verification practice of Commerce prior to the COVID-19 pandemic, Commerce did not discover anything warranting adjustments to its analysis or calculations from the original final determination.  Second Remand Redetermination at 4, APPX14544.

# ARGUMENT

## I.  Standard Of Review

In remand proceedings, the Court will sustain Commerce's determination if it is "in accordance with the remand order," and are "supported by substantial evidence and otherwise in accordance with law." *See MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349, 1355 (Ct. Int'l Trade 2015) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)).

## II.  Commerce Complied With The Court's Second Remand Order

In its second remand order, the Court held that Commerce failed to consider plaintiffs' reliance interests in an on-site verification and failed to explain consideration of alternative methods of verifying Shakti's information, and remanded to Commerce to reconsider its decision on verification. *Bonney Forge II*, 2023 WL 5353699, at *5.

Consistent with the Court's opinion, Commerce considered alternative methods of verification and took new agency action when it determined to conduct an in-person, onsite verification at Shakti's facilities in India. *See id.*; Second Remand Redetermination at 3, APPX14543.  Commerce further found that conducting an in-person, onsite verification was consistent with its general practice prior to the COVID pandemic such that it was no longer necessary to consider any potential reliance interest the Court had identified in its second remand order. *Id.* at 4, APPX14544.  Thus, the Court should hold that Commerce has complied with the Court's second remand order. *See Bonney Forge II*, 2023 WL 5353699, at *5.

## III.  Commerce's Second Remand Redetermination Is Supported By Substantial Evidence And In Accordance With Law

Commerce's second remand redetermination, specifically the documents it reviewed at verification and its determination to not apply facts available with an adverse inference, are

5

supported by substantial evidence and in accordance with law.  Second Remand Redetermination at 7-12, APPX14547-14552.  Bonney Forge's arguments to the contrary are meritless.

Commerce is afforded wide latitude in determining the parameters of verification and it is not required to comply with a request for a specific type of verification process.  *See Micron Tech., Inc. v. United States*, 117 F.3d 1386, 1396 (Fed. Cir. 1997) (citing *Am. Alloys, Inc. v. United States*, 30 F.3d 1469, 1475 (Fed. Cir. 1994) (noting that "the statute gives Commerce wide latitude in its verification procedures").  As verification is intended to be a "spot check," *NTN Bearing Corp. of America v. United States*, 186 F. Supp. 2d 1257, 1296 (Ct. Int'l Trade 2002), Commerce also has "no requirement to verify all information submitted by a respondent." *U.S. Steel Corp. v. United States*, 953 F. Supp. 2d 1332, 1348 (Ct. Int'l Trade 2013).  The Court "will not supersede Commerce's conclusions so long as it applies a reasonable standard to verify material submitted and the verification is supported by such relevant evidence as a reasonable mind might accept."  *NTN*, 186 F. Supp. 2d at 1296.

First, plaintiffs argue that Commerce failed to conduct a meaningful verification because it did not review certain documentation for processing costs for a specific product.  Pls. Cmnts. at 4-8.  However, it is incorrect to conclude that Commerce did not conduct a meaningful verification.  Commerce conducted a weeklong verification reviewing both Shakti's sales and cost information, and plaintiffs do not identify any error in verification that occurred with respect to any other aspect of Shakti's reporting.  *See generally* Sales Verification Report; Cost Verification Report.

For the specific issue that plaintiffs identify, Commerce verified cost buildup and supporting documentation for certain CONNUMs, or control numbers.[1] *See* Cost Verification Report at 2, APPX92889. The two CONNUMs covering merchandise under consideration selected by Commerce for review were [ ▮▮▮▮▮▮▮▮▮▮ ] and [ ▮▮▮▮▮▮▮▮▮▮ ], which were the CONNUMs with the largest quantity of product sold to the home market and U.S. market, respectively. *Id.*; *see also* Shakti Section D Questionnaire Resp. at Exs. D-21, D-22 (demonstrating that these CONNUMs were the highest quantity for the respective market), APPX84203-84208. Accordingly, Commerce reviewed CONNUMs that were sold to the United States and home market end-users and traders, which can be demonstrated by looking at Shakti's home market sales database by selecting CONNUM [ ▮▮▮▮▮▮▮▮▮▮ ] and looking to [ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ] showing sales labeled for end-users and traders. *See* Shakti Revised Home Market Sales Database, APPX92922-93161; Second Remand Redetermination at 11, APPX14551. The CONNUM with the largest quantity of product sold to the home market comprised orders destined for [ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ]; therefore, the selected order to specifically review machining process was not one intended for a domestic order. *See* Second Remand Redetermination at 11, APPX14551. However, Commerce "discussed with Shakti officials the specific production process that the particular product passes through" and "did not identify any discrepancies between {its} observations during the plant tour, where {Commerce} observed all

---

[1] Under 19 U.S.C. § 1677(16), Commerce looks to a descending hierarchy of preferential modes that Commerce must select for matching purposes. To identify such merchandise, Commerce uses a "model-match" methodology consisting of a hierarchy of product characteristics used to sort products into groups, which are then assigned a unique control number, or CONNUM. *See e.g.*, *Bohler Bleche GmbH & Co. KG v. United States*, 324 F. Supp. 3d 1344, 1347 (Ct. Int'l Trade 2018).

steps in the production process, and the information in Shakti's response." *Id.* (citing Cost Verification Report Ex. CVE-10, APPX92631-92668).

Here, Commerce verified an extensive amount of Shakti's reporting and identified no discrepancies with its reported information. Second Remand Redetermination at 4, APPX14544. Indeed, Commerce is not obligated to review a specific type of transaction for it to fulfill its obligations under 19 U.S.C. § 1677m(i). *See Am. Alloys*, 30 F.3d at 1475. And beyond the alleged inconsistent narrative description of Shakti's production process that plaintiffs argue should be the basis for applying an adverse inference, plaintiffs do not identify any discrepancies in the information Shakti provided at verification or challenge that Commerce's verification procedures were irregular under its general obligations pursuant to 19 U.S.C. § 1677m(i). *See generally* Pls. Cmnts. Given the wide discretion afforded Commerce in conducting verification, the fact that Commerce may not have reviewed a specific-type of a singular order is not sufficient, as plaintiffs suggest, to demonstrate that Commerce has failed to conduct a verification under 19 U.S.C. § 1677m(i). Accordingly, after concluding its in-person, onsite verification at Shakti's facilities in India and reviewing an extensive amount of information related to Shakti's sales and cost reporting, Commerce fulfilled its obligations to verify record information under 19 U.S.C. § 1677m(i).

Second, plaintiffs contend that Commerce should have applied an adverse inference because Shakti was "inconsistent" in how Shakti described its processing of forgings depending on the market for sale. Pls. Cmnts. at 2-4, 8. In conducting the on-site verification on remand, Commerce verified both the sales and cost information Shakti had submitted and reviewed a large amount of information over the course of the week-long verification. *See generally* Sales Verification Report; Cost Verification Report. Specifically, Commerce reviewed cost

8

information including complete trails of calculations with supporting documentation for reported cost of manufacturing, Shakti's financial accounting and cost accounting systems, cost reconciliations, reported per-unit costs, selling, general, and administrative expense reporting, financial expense reporting, etc. *See generally* Cost Verification Report. After this extensive verification of Shakti's reporting, Commerce did not find any inconsistencies or errors that would warrant the application of facts available with an adverse inference or a need to adjust its calculations from the final determination. Second Remand Redetermination at 4, APPX14544. Indeed, plaintiffs do not identify anything in the Cost Verification Report that would be a basis for the application of facts available with an adverse inference. *See generally* Pls. Cmnts.

Instead, plaintiffs argue that during the investigation and subsequent litigation, Shakti made certain inconsistent statements about how it processes fittings based on the destination market compared to its reporting of processing costs. *Id.* at 2-4, 8. In other words, Bonney Forge argues that Shakti's reporting "indicates that different processing was performed on finished fittings for domestic traders' orders and finished fittings for export," and that Shakti's "explanations made no sense." *Id.* at 3-4. However, in the final determination and again in the second remand redetermination, Commerce pointed to reporting by Shakti stating:

> An item can undergo any of the three processes or in combination of above three processes, depending upon the market (domestic or export) where the product is sold and depending upon the availability of machines where the product is produced as per the actual experience of Shakti.

IDM at 19, APPX14144 (citing Shakti Rebuttal Comment on Petitioner Second and Third Post Preliminary Comment at 8-9, APPX12136-12137); Second Remand Redetermination at 7-8, APPX14547-14548. Commerce reasonably found Shakti's explanation satisfactory that an item may undergo any of the reported machining processes, *i.e.*, drilling machine, traditional lathe,

9

and computer numerical control machining, depending on the destination market or *upon the availability of the machines*.  Second Remand Redetermination at 11, APPX14551.  Therefore, Commerce reasonably concluded that there was nothing in Shakti's cost allocation that warranted the application of facts available with an adverse inference or that directly contradicted Shakti's reporting.  *Id.* at 11-12, APPX14551-14552.

However, plaintiffs do not challenge Commerce's reasonable determination that Shakti's cost reporting is consistent with its explanation that a fitting may undergo *any* of the three machining processes based on the availability of the machine, regardless of market destination.  *See* Pls. Cmnts.  Nor have plaintiffs articulated how Shakti failed to cooperate by not acting to the best of its ability within the meaning of 19 U.S.C. § 1677e(b)(1) to warrant the application of adverse inferences.  *Id.*  Indeed, during the tour of Shakti's production facilities, Commerce verified that the different machines were adjacent to each other, supporting Shakti's explanation.  *Id.* at 11, APPX14551 (citing Cost Verification Report at Ex. CVE-4 at 9, 11, APPX92326, APPX92328).  Commerce further found that all finished forgings had reported machining costs associated with the three types of machining processes performed in-house or by the tollers.  *Id.* (citing Cost Verification Report at 5-6, APPX92829-92830).  Thus, this Court should sustain Commerce's determination to not apply facts available with an adverse inference.  Second Remand Redetermination at 7-12, APPX14547-14552.

## CONCLUSION

For these results, we respectfully request that the Court sustain Commerce's second remand redetermination and enter judgment for the United States.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

10

|  |  |
|---|---|
|  | PATRICIA MCCARTHY<br>Director<br><br>/s/Claudia Burke<br>CLAUDIA BURKE<br>Deputy Director<br><br>/s/ Kara M. Westercamp<br>Kara M. Westercamp |
| OF COUNSEL:<br>JonZachary Forbes<br>Attorney<br>Office of the Chief Counsel<br>for Trade Enforcement and Compliance<br>U.S. Department of Commerce<br>Washington, D.C. | Trial Attorney<br>U.S. Department of Justice<br>Civil Division<br>Commercial Litigation Branch<br>P.O. Box 480<br>Ben Franklin Station<br>Washington, D.C. 20044<br>Telephone: (202) 305-7571<br>Fax:         (202) 514-8624<br>E-mail: Kara.M.Westercamp@usdoj.gov |
| April 9, 2024 | Attorneys for Defendant |

## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE THE HONORABLE STEPHEN A. VADEN, JUDGE

|  |  |
|---|---|
| BONNEY FORGE CORPORATION, and UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION,<br><br>          Plaintiffs,<br>  v.<br><br>UNITED STATES,<br><br>          Defendant,<br><br>  and<br><br>SHAKTI FORGE INDUSTRIES PVT. LTD,<br><br>          Defendant-Intervenor. | Court No. 20-03837 |

## **ORDER**

Upon consideration of plaintiffs' comments regarding the United States Department of Commerce's (Commerce) second remand redetermination, defendant's response thereto, and all other pertinent papers, it is hereby

ORDERED that Commerce's second remand redetermination are sustained.

Dated: _____          _____
       New York, New York                              Judge

CERTIFICATE OF COMPLIANCE

      I hereby certify, pursuant to section 2(B)(1) of the Standard Chambers Procedures of this Court, that this brief contains 2,655 words, excluding the table of contents, table of authorities, any addendum containing statutes, rules or regulations, any certificates of counsel, and counsel's signature, as calculated by the word processing system used to prepare this brief (Microsoft Word).

                                             s/ Kara M. Westercamp
                                          KARA M. WESTERCAMP
                                                  Trial Attorney
                                          Department of Justice
                                              Civil Division