Slip Op. No. 25-56

## UNITED STATES COURT OF INTERNATIONAL TRADE

BONNEY FORGE CORPORATION and
UNITED STEEL, PAPER AND
FORESTRY, RUBBER,
MANUFACTURING, ENERGY,
ALLIED INDUSTRIAL AND SERVICE
WORKERS INTERNATIONAL
UNION,

     *Plaintiffs,*

v.

UNITED STATES,

     *Defendant,*

  *and*

SHAKTI FORGE INDUSTRIES PVT
LTD.,

     *Defendant-Intervenor.*

Before: Stephen Alexander Vaden,
Judge

Court No. 1:20-cv-03837 (SAV)

## <u>OPINION</u>

[Sustaining Commerce's Remand Determination.]

Dated: May 6, 2025

*William A. Fennell*, Schagrin Associates of Washington, DC, for Plaintiffs Bonney Forge Corporation and United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union. With him on the brief were *Roger B. Schagrin* and *Elizabeth J. Drake*.

*Kara M. Westercamp*, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice of Washington, DC, for Defendant United States. With her on the brief were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Patricia McCarthy*, Director, *Claudia Burke*, Deputy Director, and

Court No. 1:20-cv-03837 (SAV)                                                    Page 2

*JonZachary Forbes*, Attorney, U.S. Department of Commerce, Office of the Chief Counsel for Trade Enforcement & Compliance.

*Sezi Erdin*, Trade Pacific PLLC of Washington, DC, for Defendant-Intervenor Shakti Forge Industries Pvt Ltd. With her on the brief were *Robert G. Gosselink* and *Aqmar Rahman*.

     **Vaden, Judge**: Before the Court is the third installment in a case about Indian forged steel fittings. This saga began at the end of 2019 when the Department of Commerce (Commerce) initiated an antidumping investigation and selected an Indian producer, Defendant-Intervenor Shakti Forge Industries Pvt Ltd. (Shakti), as a mandatory respondent. Domestic petitioners Bonney Forge Corporation (Bonney Forge) and United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union (collectively, Plaintiffs) challenged Commerce's decision not to conduct an in-person verification of Shakti's information. This Court found merit in Plaintiffs' objections and remanded to Commerce. *Bonney Forge Corp. v. United States* (*Bonney Forge I*), 46 CIT __, 560 F. Supp. 3d 1303, 1316 (2022). On remand, Commerce claimed to take new agency action but failed to follow the necessary procedural steps. This Court remanded for a second time. *Bonney Forge Corp. v. United States* (*Bonney Forge II*), 47 CIT __, Court No. 1:20-cv-03837, 2023 Ct. Intl. Trade LEXIS 125, at *16 (Aug. 21, 2023). Commerce then completed an in-person verification at Shakti's factory in India. The agency found no discrepancies in Shakti's reported costs. Plaintiffs now argue that, if Commerce had searched further, it would have found an error demonstrating Shakti's costs were inaccurate. The Court disagrees. Commerce's Second Remand Determination will be **SUSTAINED**.

## BACKGROUND

The Court presumes familiarity with this case's facts as described in its two previous opinions. *See Bonney Forge I*, 46 CIT __, 560 F. Supp. at 1305–09; *Bonney Forge II*, 47 CIT __, 2023 Ct. Intl. Trade LEXIS 125, at *2–6. This opinion recounts only those facts relevant to the Court's review of the Second Remand Determination.

### I. Procedural History

This case concerns Commerce's Final Determination in its antidumping investigation of Indian forged steel fittings. *See Forged Steel Fittings from India: Final Affirmative Determination of Sales at Less Than Fair Value* (Final Determination), 85 Fed. Reg. 66,306, 66,307–08 (Dep't of Com. Oct. 19, 2020). Commerce selected Shakti as a mandatory respondent. Decision Memorandum for the Preliminary Determination in the Less-Than-Fair-Value Investigation of Forged Steel Fittings from India (PDM) at 3, J.A. at 11,667, ECF No. 46. Shakti produces finished and unfinished fittings and sells them in both India and the United States. Shakti Section A Questionnaire Resp. at A-14–A-16, J.A. at 81,699–701, ECF No. 104. It has two types of customers: end users and traders or distributors. *Id.* at A-16, J.A. at 81,701. End users are retail consumers, while traders and distributors are middlemen that resell the merchandise to retail consumers.

Commerce sent questionnaires to Shakti asking for data about its production processes and costs. Request for Information, J.A. at 2,906, ECF No. 45. Shakti described its multi-step production process as occurring in two stages — the forging stage and the machining and packaging stage. Shakti Section A Questionnaire Resp., Ex. A-10(a), J.A. at 81,905–09, ECF No. 104. Shakti reported that it uses different

machining processes depending on a product's intended customer. *Id.* at 81,908–09.

It said:

> In process of Machining there is major difference in
> Domestic trader's order and export orders. There will be
> no boring after drilling and socket preparation will be done
> in conventional laths in domestic orders. However in
> export orders each fitting[] will be machined 100% Boring
> and end preparation with [computer numerical control]
> Machines.

*Id.* at 81,908 (grammatical errors in original). In short, Shakti stated that it uses its
most sophisticated machines — known as computer numerical control machines — to
complete the finishing on products sold in the United States. *Id.* It uses less
sophisticated conventional lathes to complete the finishing on products sold to traders
in India. *Id.* Computer numerical control machines require greater labor and energy
costs than conventional lathe machines. Oral Arg. Tr. at 12:1-13, ECF No. 113.
Shakti also reported that it does not usually perform heat treatment and surface
finishing on products sold to traders in India. Shakti Section A Questionnaire Resp.,
Ex. A-10(a), J.A. at 81,907, ECF No. 104. These processes add costs, as well.

Shakti submitted cost sheets for its merchandise at Commerce's request. Pls.'
R. 56.2 Br. at 4, ECF No. 25. For certain products sold to Indian traders, Shakti
reported costs for time spent on computer numerical control machines. *Id.* at 8.
Shakti similarly reported surface finishing and heat treatment costs for domestic
Indian sales despite earlier stating that it does not usually perform these processes
on products sold to traders in India. Shakti Section A Questionnaire Resp., Ex. A-
10(a), J.A. at 81,908, ECF No. 104.

Commerce originally chose not to verify Shakti's questionnaire responses because of the COVID-19 pandemic. Cancellation of Verification and Briefing Schedule, J.A. at 13,906, ECF No. 46. Plaintiffs suggested that Commerce perform a virtual verification in place of a traditional on-site verification. Pls.' Administrative Br. at 19–20, J.A. at 91,588–89, ECF No. 45. Commerce did not respond to this request. Issue and Decision Memorandum for the Final Determination in the Less-Than-Fair-Value Investigation of Forged Steel Fittings from India (Final IDM) at 1–23, J.A. at 14,126–48, ECF No. 46; Oral Arg. Tr. 25:7–8, ECF No. 53 (Ms. Westercamp: "There is no discussion [in the record] about why a virtual verification would not have been feasible."). Instead, it issued a series of supplemental questionnaires to Shakti. *See, e.g.*, Suppl. Questionnaire (Mar. 20, 2020), J.A. at 6,022, ECF No. 46; Sections A–D Suppl. Questionnaire (Apr. 16, 2020), J.A. at 8,183, ECF No. 46. Commerce then determined that, although it could not verify Shakti's information, it would use the information Shakti provided as "facts available" in making its determination. Final IDM at 16–20, J.A. at 14,141–45, ECF No. 46; *see also* 19 U.S.C. § 1677e(a)(2)(D) ("If … an interested party … provides such information but the information cannot be verified … [Commerce] shall … use the facts otherwise available in reaching the applicable determination …."). It assigned Shakti a dumping margin of zero percent. Final Determination, 85 Fed. Reg. at 66,307.

## The Remands

Plaintiffs timely filed suit.  Compl., ECF No. 9.  They alleged that Commerce improperly ignored Plaintiffs' request for a virtual verification, and the agency should have rejected Shakti's processing costs for being inconsistent with its earlier claims. *Id.* ¶¶ 14–18, 25–27.  The Court remanded to Commerce with instructions to "assess the current state of the COVID-19 pandemic, consider whether a virtual verification is possible, and act accordingly." *Bonney Forge I*, 560 F. Supp. 3d at 1316.  Commerce then claimed to take new agency action:  It found that Shakti's answers to the supplemental questionnaires verified the necessary information.  Final Results of Redetermination Pursuant to Ct. Remand (First Remand Determination) at 2, ECF No. 61.  Commerce also offered a "fuller explanation as to the option of a remote, real-time verification and why a verification conducted in real time was not plausible during the investigation." *Id.*

The Court remanded to Commerce a second time. *Bonney Forge II*, 47 CIT __, 2023 Ct. Intl. Trade LEXIS 125, at *15–16.  It explained that, under *Department of Homeland Security v. Regents of the University of California*, 591 U.S. 1 (2020), an agency has two possible paths on remand:  "It may offer a fuller explanation of its reasoning at the time of the action it defends, or it may take new agency action." *Bonney Forge II*, 47 CIT __, 2023 Ct. Intl. Trade LEXIS 125, at *15 (citing *Regents*, 591 U.S. at 20–21).  An agency "is not limited to its prior reasons but must comply with … procedural requirements" when it takes new action. *Id.* at *11 (quoting *Regents*, 591 U.S. at 21).  For example, "when an agency rescinds a prior policy its

reasoned analysis must consider the 'alternative[s]' that are 'within the ambit of the
existing [policy].'" *Regents*, 591 U.S. at 30 (quoting *Motor Vehicle Mfrs. Assn. of
United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 51 (1983))
(alterations in original).  And when deviating from a past practice or policy, an agency
"must be cognizant that longstanding policies may have 'engendered serious reliance
interests that must be taken into account.'"  *Id.* (quoting *Encino Motorcars, LLC v.
Navarro*, 579 U.S. 211, 222 (2016)).

Though Commerce claimed it had taken "new agency action," it did not explain
why it refused to take any further steps to verify Shakti's information during the
remand period.  *Bonney Forge II*, 47 CIT __, 2023 Ct. Intl. Trade LEXIS 125, at *14.
Commerce also did not account for how its past practice of conducting in-person
verifications may have created reliance interests for domestic petitioners like Bonney
Forge.  *Id.* at *12–13.  The Court directed Commerce to comply with *Regents*'
requirements for new agency action by considering (1) Bonney Forge's reliance
interests implicated by the agency's change of policy regarding verification and (2)
alternative options to further verify the information on the record under current
conditions.  *Id.* at *15.

## II. Present Dispute

In response to the Court's Second Remand Order, Commerce completed an in-
person verification at Shakti's factory in Rajkot, India, from November 5-10, 2023.
Sales Verification Report at 1, J.A. at 14,455, ECF No. 104.  Commerce toured
Shakti's factory and reviewed sales and cost records for Shakti's highest-selling

products.  Cost Verification Report at 5, 12, J.A. at 92,892, 92,899, ECF No. 104.  Its

Second Remand Determination again calculated a zero percent dumping margin for

Shakti.  Final Results of Redetermination Pursuant to Ct. Remand (Second Remand

Determination) at 12, ECF No. 90.

Commerce found that Shakti satisfactorily explained the finishing costs

discrepancy Plaintiffs identified.  *Id.* at 10–12.  Shakti clarified that "finished

products could undergo" one of three finishing processes or a combination of the

processes "based on the availability of the machine."  Cost Verification Report at 22,

J.A. at 92,909, ECF No. 104.  When conventional lathes are unavailable, Shakti might

use a computer numerical control machine to complete the finishing.  Commerce

observed the different finishing machines were "adjacent to each other" in the factory

and concluded that Shakti's explanation was reasonable.  Second Remand

Determination at 11, ECF No. 90 (citing Sales and Cost Verification Ex., Ex. CVE-4,

J.A. at 92,440, 92,442, ECF No. 104).

Commerce also verified the two control numbers[1] representing the products

sold at the highest volume in both the Indian and U.S. markets and reviewed

paperwork demonstrating what processes those products underwent.  Def.'s

Corrected Resp. to Pls.' Comments on Second Remand Results (Def.'s Comments) at

---

[1] "Control number," often referred to by the contraction "CONNUM," denotes a unique product based on relevant physical characteristics.  To ensure that Commerce is comparing like products in the home and U.S. markets, it asks respondents to sort merchandise according to key differentiating categories with each number in the product's control number corresponding to physical characteristics particular to the merchandise under review.  *Xi'an Metals & Minerals Imp. & Exp. Co. v. United States*, 45 CIT __, 520 F. Supp. 3d 1314, 1321 n.4 (2021).  As a simple shorthand, a reader may substitute "product" any time he reads "control number" or "CONNUM."

7, ECF No. 102. Both control numbers included sales to domestic and U.S. customers, but neither covered a product sold exclusively to Indian traders. *Id.* at 7. Commerce found no discrepancies in the documentation it reviewed for the two control numbers. *Id.* at 9. Having verified Shakti's cost data to its satisfaction, Commerce made no adjustments to Shakti's dumping margin. *Id.* at 4. Plaintiffs now argue that the Second Remand Determination is not based on substantial evidence because Commerce "failed to conduct a meaningful verification" of Shakti's reported finishing costs. Pls.' Corrected Comments on Second Remand Determination (Pls.' Comments) at 4, ECF No. 96. Plaintiffs are particularly concerned that Shatki, contrary to its original claim, did not limit use of the more expensive computer numerical control machines to products bound for the United States. *Id.* at 2. They imply that Shakti could have manipulated its dumping margin by shifting costs from some products to others. *Id.* Plaintiffs argue that Commerce did not do enough to verify Shakti's costs in light of these errors so that its decision not to apply an adverse inference is unsupported by substantial evidence. *Id.* at 8.

The Government responds that Commerce fully complied with the Court's Second Remand Order. Def.'s Comments at 5, ECF No. 102.[2] Commerce argues it has wide latitude in deciding how to conduct verification. *Id.* at 8 (citing *Am. Alloys, Inc. v. United States*, 30 F.3d 1469, 1475 (Fed. Cir. 1994)). It also notes that Plaintiffs have not claimed that Commerce's verification revealed any errors. *Id.* Commerce spent a week conducting verification, including a factory tour and review of

---

[2] Shakti "concurs with the arguments provided by the Defendant." Def.-Int.'s Resp. to Pls.' Comments on Second Remand Determination at 1, ECF No. 103.

documentation.  *Id.*  Nothing reviewed indicated errors in Shakti's cost reporting.  *Id.*
The agency argues that "just keep looking" is not a valid objection.  *Id.* at 6.

The Court held oral argument on November 12, 2024.  ECF No. 110.  Plaintiffs
raised for the first time an argument that the Government's brief misquoted language
Shakti put on the record.  They alleged this error changed the meaning of Shakti's
statements.  Oral Arg. Tr. at 10:20–11:24, ECF No. 113.  The statements once again
concerned what processes Shakti uses on certain products.  Plaintiffs argued that, by
misquoting Shakti, Commerce covered up the gravity of this inconsistency.

## JURISDICTION AND STANDARD OF REVIEW

This Court has exclusive jurisdiction over Plaintiffs' challenge to Commerce's
Final Determination under 19 U.S.C. § 1516a(a)(2)(B)(i) and 28 U.S.C. § 1581(c),
which grant the Court authority to review actions contesting final affirmative
determinations, including any negative part of such determinations, in an
antidumping order.  The Court must sustain Commerce's "determination, finding, or
conclusion" unless it is "unsupported by substantial evidence on the record, or
otherwise not in accordance with law[.]"  19 U.S.C. § 1516a(b)(1)(B)(i).  Substantial
evidence "means such relevant evidence as a reasonable mind might accept as
adequate to support a conclusion."  *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229
(1938) (citations omitted).  "The court reviews remand determinations for compliance
with the court's remand order."  *Nakornthai Strip Mill Pub. Co. Ltd. v. United States*,
32 CIT 1272, 1274 (2008) (citations omitted).

## DISCUSSION

In *Bonney Forge II*, the Court ordered Commerce to consider (1) the reliance interests implicated by its change of policy regarding verification and (2) alternative options to further verify the information on the record under current conditions. Now that the agency has completed an in-person verification, Commerce has satisfied both *Regents* requirements. Plaintiffs' only remaining argument is that Commerce's verification was deficient because it failed to address inaccuracies in Shakti's finishing costs. This Court is unconvinced. Commerce has complied with both *Regents* requirements and supported its Second Remand Determination with substantial evidence. The Second Remand Determination is **SUSTAINED**.

## I.

First, Commerce addressed any issues arising from Bonney Forge's reliance on Commerce's past practice. When deviating from a consistent past practice or policy, an agency "must be cognizant that longstanding policies may have 'engendered serious reliance interests that must be taken into account.'" *Regents*, 591 U.S. at 30 (quoting *Encino Motorcars*, 579 U.S. at 222). Here, Commerce acknowledged that it has a practice of performing in-person, on-site verification whenever possible. First Remand Determination at 20, ECF No. 61. Bonney Forge therefore had a reliance interest rooted in this past practice that Commerce needed to consider. *See Regents*, 591 U.S. at 30. By conducting an in-person verification in India, Commerce gave the parties the same treatment they would have received but-for the pandemic. *See* Second Remand Determination at 4, ECF No. 90 ("Commerce's in-person verification

on remand … is consistent with Commerce's longstanding general verification practice[.]").  There can be no harm to Bonney Forge stemming from its reliance interests because Commerce has returned to its past practice.  No party disputes that Bonney Forge's reliance interests have been met.  Oral Arg. Tr. at 4:10–20, ECF No. 113 (counsel for Bonney Forge and Shakti stating that they do not object).  The Court therefore finds that Commerce satisfied the first *Regents* requirement by returning to its past practice and conducting an in-person verification.

Second, Commerce satisfied the other *Regents* requirement by reconsidering if it had any alternative options for verification and explaining its reasoning.  *Bonney Forge II*, 47 CIT __, 2023 Ct. Intl. Trade LEXIS 125, at *15.  Commerce answered by conducting an in-person verification and reviewing information related to Shakti's production costs.  Second Remand Determination at 4, ECF No. 90.  Because Commerce returned to its past practice of performing in-person verifications, there is no need for it to consider an alternative path that would be closer to Commerce's past practice.  No party objects to Commerce's decision.  *See* Oral Arg. Tr. at 4:10–20, ECF No. 113.  The Court therefore finds that Commerce appropriately "deal[t] with the problem afresh."  *Regents*, 591 U.S. at 21 (quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 201 (1947)).

## II.

With procedure finally being vanquished, the Court can turn to the merits.  Plaintiffs complain that Commerce did not search deeply enough when conducting its in-person verification.  Pls.' Comments at 4–8, ECF No. 96; Oral Arg. Tr. at 19:8–9,

ECF No. 113 (Mr. Fennell: "[Commerce's] verification did not get far enough …."). They assert that the agency should have verified specific documents related to Shakti's sales of subject merchandise to traders in India.  Pls.' Comments at 7–8, ECF No. 96.  Absent that, Plaintiffs say Commerce should apply facts available with an adverse inference to the finishing costs for such sales.  *Id.* at 8.  The Government responds that Commerce is not bound by such strict verification requirements.  Def.'s Comments at 5–10, ECF No. 102.

Commerce "shall verify all information relied upon in making … a final determination in an investigation."  19 U.S.C. § 1677m(i)(1).  But the law does not require Commerce to turn over every stone.  *See PMC Specialties Grp., Inc. v. United States*, 20 CIT 1130, 1134 (1996) (quoting *Monsanto Co. v. United States*, 12 CIT 937, 944 (1988)) ("Verification … is not intended to be an exhaustive examination of the respondent's business."); *Kerr-McGee Chem. Corp. v. United States*, 14 CIT 344, 362 (1990) ("Congress intended that [Commerce] … not be required to comply with all requests for specific types of investigation.").  Instead, "verification is a spot check" in which Commerce "has considerable latitude in picking and choosing which items it will examine in detail."  *PMC Specialties Grp.*, 20 CIT at 1134 (quoting *Monsanto*, 12 CIT at 944).  The Federal Circuit has held that Commerce enjoys "wide latitude in its verification procedures."  *Am. Alloys*, 30 F.3d at 1475.

Here, Commerce acted within the bounds of that latitude.  Commerce conducted its verification with Plaintiffs' objections in mind.  It observed the close proximity of the different types of finishing machines at issue while touring Shakti's

factory. Cost Verification Report at 5, J.A. at 92,892, ECF No. 104. Based on those observations, Commerce found Shakti's explanation — that it uses computer numerical control machines when other, less sophisticated machines are not available — to be reasonable. Second Remand Determination at 10–11, ECF No. 90. Commerce also reviewed records related to the two highest-volume control numbers, which were representative of sales to end users and traders in the home and export markets. It did not find a single inaccuracy. Cost Verification Report at 12, J.A. at 92,899, ECF No. 104. Commerce would have had a more difficult time meeting the substantial evidence standard if it did not conduct an in-person verification. Only a factory visit could confirm the machines' placement. The record reflects a comprehensive, one-week, in-person verification; and Commerce acted within its discretion. *See Am. Alloys*, 30 F.3d at 1475.

Commerce did not have to keep searching through more data at the chance of finding an error. Verification is a spot check, *PMC Specialties Grp.*, 20 CIT at 1134, and here, Commerce reasonably selected the two highest-volume control numbers. Cost Verification Report at 12, J.A. at 92,899, ECF No. 104. The agency did not find a single error in the documentation it reviewed related to those two products. *Id.*; Second Remand Determination at 7–8, ECF No. 90. Plaintiffs concede that the data Commerce reviewed were correct. *See* Oral Arg. Tr. at 7:7–11, ECF No. 113 (The Court: "Is there any error that you believe is present in the record that [Commerce] missed with regard to the transactions … they actually verified?" Mr. Fennell: "No, Your Honor."). Moreover, what Commerce read in Shakti's paperwork matched what

it observed on the factory tour.  Second Remand Determination at 7–8, ECF No. 90.
Plaintiffs do not claim that anything about the factory or Shakti's machines changed
between the investigation and the in-person verification — which would raise
questions about the reliability of a later-in-time verification.  *See* Pls.' Comments at
5–8, ECF No. 96 (raising several issues with Commerce's verification but not alleging
that anything changed in the relevant time period).  Plaintiffs received Commerce's
verification agenda before the factory visit and knew what information Commerce
intended to review.  *See* Attach. to Def.'s Notice to the Ct., ECF No. 111; *see also* Oral
Arg. Tr. at 30:6–19, ECF No. 113.  They had the opportunity to submit pre-verification
comments reflecting any objections to the proposal but chose not to do so.  Def.'s
Notice to the Court Following Oral Arg. at 1-2, ECF No. 111.  And Plaintiffs have
been unable to cite any case law supporting their position.  *See* Oral Arg. Tr. at 14:23–
15:3, ECF No. 113 (The Court: "[A]re there any cases that you can cite to me … where
a court has ordered Commerce to look at additional transactions as part of the
verification process? … Mr. Fennell: "Not to my knowledge, Your Honor.").

    Plaintiffs ask for Commerce to apply facts available with an adverse inference
to Shakti's finishing costs.  Pls.' Comments at 8, ECF No. 96.  They misunderstand
the statutory scheme.  When Commerce is missing data necessary to calculate the
normal value of merchandise, the antidumping statute provides a two-part process to
fill the gap.  *See* 19 U.S.C. § 1677e(a)–(b).  The first part of that process allows
Commerce to use "facts otherwise available" in place of missing or unverifiable
information.  19 U.S.C. § 1677e(a); *see also* 19 C.F.R. § 351.308(a).  The second part

permits Commerce to apply an adverse inference when selecting from the facts available if "an interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information from [Commerce] …." *Id.* § 1677e(b)(1).

Plaintiffs' argument fails at part one. They claim the missing information is "accurate costs" for Shakti's finishing processes. *See* Oral Arg. Tr. at 41:18–20, ECF No. 113 (Mr. Fennell: "The gap that needs to be filled, which would be filled in another case that had more information, would be accurate costs."). Plaintiffs do not dispute that all the costs related to the selected control numbers verified. *Id.* at 17:23–18:1. They have failed to identify any missing or unverifiable information. Bonney Forge responds that Commerce's verification was deficient and that Commerce should apply facts available with an adverse inference to an undiscovered gap. That is not possible. *See* Oral Arg. Tr. at 42:5–9, ECF No. at 113 (The Court: "Do you have any case law to cite to me where there is a gap because of something Commerce chose not to verify?" Mr. Fennel: "I know of no such case, Your Honor."). Because the information Commerce chose to verify proved accurate, there is no gap in the record to fill. Without a gap to fill, there can be no adverse inference. *See* 19 U.S.C. § 1677e(a). Plaintiffs' requested relief is in contravention of the statute's plain text.

Plaintiffs' last ditch semantic argument fares no better. Plaintiffs cite to where Shakti described its production process during verification:

> an item can undergo … any of above three process or in combination of above three process depending upon the market (domestic or export)

where the product is sold *and* depending upon the availability of machines where the product is produced as per the actual experience of [Shakti].

Shakti's Rebuttal Comments, J.A. at 9,137, ECF No. 46 (emphasis added; grammatical errors included). The Government relied on this language for its claim that Shakti clarified any discrepancies related to finishing costs. Oral Arg. Tr. at 11:14–24, ECF No. 113. But Plaintiffs note that the Government substituted "or" for "and" when quoting Shakti's explanation. *Id.* at 11:14-15. Plaintiffs claim that this substitution is improper because it changes the meaning. *Id.* at 11:15–21. By using "and," a conjunctive, they say Shakti made any change in its normal finishing procedures contingent on both conditions — the market *and* the availability of machines — being met. Thus, Shakti could not switch to a computer numerical control machine just because the conventional lathe machines were unavailable; Shakti would also need to be producing product for the export market or end users in the home market. *Id.* The Government says it was paraphrasing Shakti's language, not misquoting it. *Id.* at 43:3–44:1 (Ms. Westercamp: "[I]f there's no challenge to the accuracy of the Commerce personnel visit to the Shakti plant and its explanation and the cost verification, then it's really whether I should have used and/or in my brief …."). Without more, the Government argues, Plaintiffs' concern about the particular words used does not undermine the existence of substantial evidence supporting Commerce's determination. *Id.* at 42:14-24.

The Government was paraphrasing Shakti, not quoting its statement. Commerce quoted the language at issue in full just one sentence prior, and that quote

accurately uses "and." Def.'s Comments at 9, ECF No. 102. Further, the term "and" does not always create a conjunctive list where every item in the list must be satisfied for the condition to be met. *See Pulsifer v. United* States, 601 U.S. 124, 136 (2024) (explaining that the phrase "I didn't like his mother and father" means "I didn't like his mother and I didn't like his father…" — not that the speaker liked either person on their own but not together). This is especially true when an introductory phrase — in this case "depending upon" — modifies the list. *Id.* at 134. In such a case, "and" can function as an "or," creating a list where only one of the listed conditions needs to be satisfied. *Id.* at 151 ("[C]onjunctions are versatile words, which can work differently depending on context."). Plaintiffs' argument therefore fails to raise any concern that the Government has misrepresented Shakti's finishing procedures. Substantial evidence supports Commerce's determination.

## CONCLUSION

The third time proved to be the charm. Commerce satisfied Plaintiffs' reliance interests by completing an in-person verification. Although Plaintiffs complain that Commerce could have found errors if it had continued searching, verification is not an unending haystack search for a needle. No statute or case law requires Commerce to continue digging after it has completed a spot check. Neither will this Court do so. Commerce's Second Remand Determination is **SUSTAINED**.

Stephen Alexander Vaden, Judge

Dated: May 6, 2025
       New York, New York